IN THE UNITED STATES DISTRICT COURT IN AND
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| Plaintiff | ) | C.A. No. 05-697-KAJ |
| v. | ) | |
| | ) | |
| BE&K ENGINEERING COMPANY | ) | |
| (subsidiary of BE&K, Inc.), | ) | |
| Defendant | ) | |

## COMPENDIUM OF UNREPORTED DECISIONS

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Margaret M. DiBianca
Teresa A. Cheek (Bar I.D. 2657)
Margaret M. DiBianca (Bar I.D. 4539)
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6676; 571-5008
Facsimile: (302) 576-3286; 576-3476
Email: tcheek@ycst.com; mdibianca@ycst.com
Attorneys for Defendant

LEXSEE

**THEODORE BROOKS, Plaintiff, -v.- LEAKE & WATTS ORGANIZATION, INC., Defendant.**

**02 Civ. 9865 (GEL)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2005 U.S. Dist. LEXIS 16229**

**August 1, 2005, Decided**
**August 2, 2005, Filed**

**DISPOSITION:** [*1] Defendant's motion for summary judgment granted. Plaintiff's complaint dismissed in its entirety.

**COUNSEL:** Darnell D. Crossland, Stamford, Connecticut, for plaintiff.

E. Johan Lubbe, Jackson Lewis LLP, White Plains, New York, for defendant.

**JUDGES:** GERARD E. LYNCH, United States District Judge.

**OPINIONBY:** GERARD E. LYNCH

**OPINION:**

**OPINION AND ORDER**

GERARD E. LYNCH, District Judge:

Plaintiff, Theodore Brooks, sues his former employer, Leake & Watts Services, Inc. ("Leake & Watts"), for age discrimination pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621-634. Plaintiff, who was 61 years old at the time of the events in question, alleges that Leake & Watts, a private nonprofit child care organization, fired him from his position as director of security, and then failed to hire him for a vacant position within the organization on account of his age. Defendant now moves for summary judgment dismissing plaintiff's complaint in its entirety. n1 The motion will be granted.

n1 Defendant also moves to dismiss plaintiff's claims for age discrimination under the New York State Human Rights Law for lack of subject matter jurisdiction pursuant to the election of remedies doctrine. See N.Y. Exec. Law § 297(9) (filing a complaint with any local commission on human rights waives right to file suit unless the commission has dismissed the complaint "on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled"). The Court does not read plaintiff's complaint to bring motion. In any event, defendant is clearly correct that to the extent plaintiff does bring state law claims, he has waived his right to do so by filing a complaint with the New York State Division of Human Rights in June 2000 (Lubbe Aff. Ex. K), a complaint which was not dismissed for any reason that would create an exception to the statutory waiver.

[*2]

**BACKGROUND**

In opposing this motion, plaintiff has neither provided a counterstatement of material facts as required under Local Rule 56.1(b), nor contested any of those facts contained in defendant's Local Rule 56.1 Statement. Although Local Rule 56.1(c) provides that non-controverted material facts in the moving party's statement are to be deemed admitted, Second Circuit caselaw requires the district court to confirm that statements are adequately supported by citations to evidence in the record and to disregard those which are unsupported. Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); Giannullo v. City of New York, 322 F.3d 139, 140-143 (2d Cir. 2003). Accordingly, a review of the record, guided by defendant's Local Rule 56.1 Statement, shows that the following facts are both undisputed and adequately supported. Citations

Page 1

to the record are provided for those facts most critical to the claims and defenses asserted here.

Leake & Watts, a nonprofit organization, provides schooling and housing for troubled children on its main campus in Yonkers, New York and in group homes in the surrounding community. The organization is [*3] divided into five divisions--Congregate Care Division, Foster Boarding Home and Adoption Division, Administrative Division, Clinical Services Department, and Education Department--each of which performs a different function within the organization and has its own budget. (Hairston Aff. P21.) Funding for Leake & Watts's programs and services is derived from a variety of sources, including state agencies and the City of New York, and because certain of these funding agencies prohibit commingling of funds, each program is treated as a separate "cost center." (Castro Aff. PP6-7.) So, for example, the Congregate Care Division, which is responsible for housing, after-school activities, and the general welfare of the children within Leake & Watts's care, is a separate cost center (with several constituent cost centers, id. P8), with a separate budget, from the Education Department, which employs teachers to provide instruction in the private schools it operates.

In August 1998, Brooks was hired by Leake & Watts in the position of director of security to establish and staff a newly-created Security Department, located within the Congregate Care Division. Responding to community complaints [*4] of alleged disorderly and criminal conduct, the Security Department was established to monitor the children within Leake & Watts's care both on and off-campus. (Brooks Dep., Lubbe Aff. Ex. C, at 49, 67.) At the time he was hired, Brooks, who was born on June 14, 1938 (Complaint P7), was sixty years old and the decision to hire him was made by James Campbell, the then sixty-one year old executive director of Leake & Watts (Hairston Aff. PP4, 23), on the recommendation of Paul Richer, the then sixty-four year old assistant executive director of Leake & Watts and head of the Congregate Care Division. (Id. PP6, 23.) Under Brooks's supervision, nine security guards and a deputy director of security, John Rivera, were hired. (Brooks Dep. 62-63, 77.) A tenth position was advertised in the fall of 1999, and one security guard resigned in October of that year, leaving a total of two vacant security guard positions within the department at the end of 1999. (Lubbe Aff. Ex. G, at 1-2.) Brooks's responsibilities also included founding and running an "administrator-on-duty" program, which ensured that a liaison was available during off hours to answer inquiries (Brooks Dep. 71), and oversight [*5] of a "critical response team," which consisted of residential counselors who intervened in non-criminal crisis issues, including physical altercations between children. (Id. at 67-70.)

Toward the end of 1999, the Finance Department at Leake & Watts predicted a deficit of close to $ 2 million for the 1999/2000 fiscal year. (Castro Aff. P19.) Richer, then head of the Congregate Care Division, was asked to suggest cost-cutting measures. (Id. P11.) When an initial round of cost-cutting proposals put forward by Richer in early December 1999 was rejected by senior management as insufficient, Richer subsequently proposed eliminating his position, that of Brooks, and all other positions within the security department. (Castro Aff. PP12-15; Exs. A, B.) Additionally, Brooks decided not to fill the two vacant positions within his department as one such cost-savings measure (Brooks Dep. 87), and also provided a memorandum to Willis Kettrell, then acting assistant executive director of the Congregate Care Division, detailing "Proposed Contingency Budget Cuts" within the Security Department. (Lubbe Aff. Ex. G.) Ultimately, Leake & Watts decided to eliminate Brooks's position (as well as [*6] Richer's), but not any of the security guard positions, claiming that while it could have saved an equivalent amount of money by cutting either Brooks's position or two security guard positions, it chose to eliminate Brooks's position because there were already multiple levels of supervision within the department and the resources of the department were already overstretched vis-a-vis those functions performed by the security guards, i.e., patrolling and monitoring. (Id. PP18-20; Hairston Aff. PP26, 29-30); see also Brooks Dep. at 77-78 (noting that the resources of the Security Department were stretched even with a department of nine or ten).) Management of the security department was transferred without any pay adjustment to another, existing director, Peter Nesbitt, who was about fifty-eight years old at the time. (Hairston Aff. PP31-32.) In all, twenty-seven positions were eliminated within the organization. (Id. P27.)

The decision to cut those twenty-seven positions was announced to all employees on January 21, 2000. After being informed that his position would be among those terminated, Brooks was supplied with a list of vacant positions within the organization [*7] (including the two vacant security guard positions within his own department), and encouraged to apply for a position of "Recruitment Manager" within the Human Resources department. (Brooks Dep. 92-95.) Brooks did apply for that position, and that position alone, but Rivera, his former deputy director, then fifty-one years old, whose position had also been eliminated, was hired instead. (Hairston Aff. P20, 35.) Brooks's last day of employment with Leake & Watts was February 3, 2000.

Brooks filed a charge of discrimination with the New York Division of Human Rights in June 7, 2000, but the complaint was dismissed after the agency found there was no probable cause to believe Brooks had been

2005 U.S. Dist. LEXIS 16229, *

discriminated against. Brooks's EEOC complaint was also dismissed and a right to sue letter was issued on September 15, 2002. The instant lawsuit was filed on December 15, 2002. Leake & Watts now moves for summary judgment dismissing the complaint in its entirety.

## DISCUSSION

### I. Legal Standards

#### A. Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that [*8] there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In turn, a "genuine issue as to any material fact" is established "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). "It is the movant's burden to show that no genuine factual dispute exists, and all reasonable inferences must be drawn in the non-movant's favor." Giannullo, 322 F.3d at 140 (2d Cir. 2003) (internal citations omitted); see United States v. Diebold, Inc., 369 U.S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962). A summary judgment motion will be defeated with respect to those claims that present such genuine issues of material fact.

To defeat summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). "Conclusory allegations or unsubstantiated speculation" will not suffice. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). [*9] Rather, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

#### B. ADEA Standards

The ADEA makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual . . . because of such individual's age." 29 U.S.C. § 621(a). ADEA claims are analyzed under the same burden-shifting framework used for Title VII claims, as articulated in McDonnell Douglas Corp. v Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000). Thus, plaintiff must first establish the "minimal" prima facie case by showing that: (1) he was within the protected age group; (2) he was qualified for the position;

(3) he was subject to an adverse employment decision; and (4) the adverse employment decision was made under circumstances giving rise to an inference of unlawful discrimination. See Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003); Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 101 (2d Cir. 2001); [*10] Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001). Meeting this test "creates a presumption that the employer unlawfully discriminated." Fisher v. Vassar College, 114 F.3d 1332, 1335 (2d Cir. 1997) (en banc). This presumption "places the burden of production on the employer to proffer a nondiscriminatory reason for its action." James v. New York Racing Ass'n, 233 F.3d at 154. If the employer fails to present such a reason, plaintiff prevails.

"On the other hand, once the employer 'articulates a non-discriminatory reason' for its actions, Fisher, 114 F.3d at 1336, the presumption completely 'drops out of the picture.' St. Mary's [Honor Ctr. v. Hicks], 509 U.S. [502,] 510-11, 125 L. Ed. 2d 407, 113 S. Ct. 2742 [(1993)]." Id. At that point, "the employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." Id. Evidence casting doubt on the employer's proffered justification "may--or may not--be sufficient" to provide this support. Fisher, 114 F.3d at 1333. Thus, when the employer has proffered an explanation and the plaintiff [*11] has attempted to refute it, the Court's responsibility is to "examine the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" Schnabel, 232 F.3d at 90 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000)).

### II. The Legal Standards Applied

Defendant has conceded that the first three elements of a prima facie case of discrimination have been met, but argues that the circumstances surrounding plaintiff's discharge and unsuccessful bid for the vacant Recruitment Manager position do not give rise to any inference of discrimination, and, thus, that plaintiff has failed to establish a prima facie case as to either of his claims. (D. Mem. 9-13.) In the alternative, defendant claims that even if plaintiff can establish a prima facie case, it has offered legitimate, nondiscriminatory rationales for its actions and plaintiff has failed to bring forward any evidence that these rationales are pretextual. (Id. 14-16.)

#### A. Wrongful Termination

In opposing defendant's motion as to his claim [*12] of wrongful termination, plaintiff has argued only that (1) the redistribution of other staff to vacant, higher pay-

Page 3

ing positions within the organization undercuts Leake & Watts's preferred budget shortfall rationale for his termination (P. Opp. Mem. 1-2), and (2) Leake & Watts has providing shifting explanations for Brooks's termination, oscillating between the temporary nature of plaintiff's position and the projected budget shortfall, again casting doubt on the legitimacy of its preferred explanation for his termination. (Id. at 2.) These arguments seem more directly aimed at poking holes in defendant's preferred explanation, skipping over the initial hurdle of pointing to particular circumstances which give rise to an inference of discrimination and collapsing the burden-shifting framework into a single inquiry.

As defendant points out, plaintiff does not claim any overtly discriminatory statements or conduct on the part of his supervisors (Brooks Dep. 103-04); two of the four department heads retained during the restructuring, Betty Winfield and Gene Brown, were over sixty years old (Hairston Aff. PP8-11), cf. Boise v. N.Y. Univ., 2003 U.S. Dist. LEXIS 18639, No. 00 Civ. 7844 (RWS), 2003 WL 22390792, [*13] at *5 (S.D.N.Y. Oct. 21, 2003) (no inference of discrimination where plaintiff, seventy-five year old professor, was one of at least a dozen faculty members over the age of seventy during the relevant time period); Paul Richer, who recommended hiring plaintiff when he was already over sixty years old, also recommended his termination, and was himself over sixty years old (Castro Aff. P15; Hairston Aff. P6, 23), see Grady v. Affiliated Cent. Inc., 130 F.3d 553, 560 (2d Cir. 1997) (where same actor hires and fired plaintiff, "it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire"); James v. New York Racing Ass'n, 76 F. Supp. 2d 250, 255 (E.D.N.Y. 1999) (inference of discrimination [where plaintiff is replaced by younger employee] weaker where plaintiff is within the protected class when first hired); and the ultimate decision to terminate plaintiff was made by the Executive Management Team, of which the two most senior members were also over sixty years of age in early 2000 (Castro Aff. PP13, 16; Hairston Aff. P4-5), see Grady, 130 F.3d at 560 (listing fact that decisionmaker [*14] was a year older than plaintiff as one of many supporting conclusion that case was bereft of evidence from which a factfinder could infer discrimination). Nor does the fact that Brooks's position was eliminated as part of the restructuring, while two more junior, security guard positions were retained within the department permit an inference of age discrimination absent any other indication that age played a role in the decision. See Holt v. Gamewell Corp., 797 F.2d 36, 38 (1st Cir. 1986) (using high salary as criteria for discharge to reduce payroll expenses during reduction-in-force, resulting in termination of manager instead of junior members of department, did not support inference of discrimination where no evidence that high salary was a

function of age). Nonetheless, the initial burden plaintiff carries on summary judgment is "minimal," Hicks, 509 U.S. at 506 (1993), and, accordingly, rather than simply dismiss plaintiff's claim at this preliminary stage of analysis, the Court assumes for purposes of deciding this motion that Brooks has established a prima facie case of discrimination.

The presumption of discrimination a prima facie case [*15] raises, however, completely drops out once the employer comes forward with a non-discriminatory reason for the adverse action. Here, Leake & Watts has clearly articulated as its reason for plaintiff's termination an anticipated budget shortfall within the Congregate Care Division, leading to the restructuring of the department and the elimination of twenty-seven positions, including that of Brooks. (Campbell Memo, Lubbe Aff. Ex. J, at 1; Castro Aff. P21; Hairston Aff. P27.) Moreover, Leake & Watts has explained its specific decision to terminate Brooks, while keeping two lower-paying security guard positions, as consistent with maintaining its capacity to patrol its facilities, an important priority even by Brooks's own estimation (Brooks Dep. 77-78), while eliminating an unnecessary level of supervision within the small department. (Castro Aff. PP16-20; Hairston PP28-31). This is adequate to shift the burden back to plaintiff to come forward with facts casting doubt on the legitimacy of this explanation.

Plaintiff fails to satisfy this burden. First, Brooks claims that the restructuring simply redistributed employees, "all younger than Brooks" to other positions--at times higher [*16] paying positions--and thus any alleged cost savings are fictional. (P. Opp. Mem. 1-2.) To be sure, a legitimate reorganization may nonetheless conceal a discriminatory termination where evidence exists that "in implementing such a reorganization or reduction, the employee has located new positions for younger, but not older, employees." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 204. But in his briefing, Brooks does not substantiate his allegation with any evidence showing that only younger employees were rehired; his only citation is to the list of vacant positions distributed to employees whose positions were terminated in the restructuring of the Congregate Care Division. (Vacancy List, Lubbe Aff. Ex. I, at 1.) This list does not contain any information as to the ages of those whose positions were eliminated, nor the age of those who were eventually hired to fill the vacant positions. The only evidence in the record appears to be to the contrary--Anthony Hairston, Leake & Watts's director of human resources, avers that the four other employees not rehired within the organization were fifty-one, fifty, thirty-seven, and thirty-two years old at the time of their [*17] termination (Hairston Reply Aff. P4)--but there is no actual evidence of the ages of the twenty-two employees who were re-

hired after their positions were eliminated which would permit an inference of any kind. n2

> n2 Brooks includes as an exhibit to his complaint a spreadsheet labeled "Attachment 7," captioned "Leake and Watts Services, Inc. Promotion Report from 1/1/2000-1/1/2002," and listing the name, positions promoted to and from, date of hire, date of promotion, date of birth, and salary information for various personnel actions. Brooks makes reference to this exhibit in connection to his allegations that "younger employees were promoted to higher positions subsequent to his termination [and] received remuneration commensurate to their new position, which in turn cost Leake & Watts more money that it would have to retain Brooks' [sic] services" and "Linda Cruz Packer, an employee, who was hired, trained and supervised by Brooks, was promoted, subsequent to Brooks' [sic] termination." (Complaint. PP18-19, Ex. 7.) The evidentiary value of this spreadsheet is non-existent. It reflects promotions within a two year period largely postdating the funding crisis Leake & Watts claims precipitated Brooks's termination; it fails to distinguish between promotions to positions within the Congregate Care Division, and those within other cost centers; and only one of the persons listed in this spreadsheet is one of the twenty-seven employees whose positions were terminated. That individual, Linda Cruz Packer, was younger than Brooks (the spreadsheet lists her date of birth as May 20, 1951, see Complaint Ex. 7), but this does not substantiate Brooks's assertion that the individuals rehired after their positions were terminated in the restructuring of the Congregate Care Division were all younger than Brooks, or even that they were primarily younger.

[*18]

Moreover, plaintiff's argument that Leake & Watts's explanation must be pretextual because the restructuring "simply distributed the budget shortfall from[] Congregate Care to Leake & Watts as [a] whole, while at the same time eliminating Brooks' [sic] position" fails to take into account the funding structure of the overall organization, which plaintiff has not disputed. Each program, including the Congregate Care Division, is maintained as a separate cost-center to prevent impermissibly comingling state funds. (Castro Aff. P7.) Accordingly, redistribution of the budget shortfall to other cost-centers (all but the two vacant security guard positions on the Vacancy List were located in other cost-centers, Castro Reply Aff. P3) is precisely the permissible goal of the

restructuring. Even if Brooks could show that the overall budget of Leake & Watts remained the same, or even increased, following the restructuring, this fact would be irrelevant under the unique circumstances presented by the funders' constraints on Leake & Watts; it could not serve as evidence that the proferred explanation for Brooks's termination is pretextual.

Plaintiff's second argument--that Leake [*19] & Watts has not provided a consistent explanation for his termination--is simply not substantiated by the record. Brooks claims that his termination was explained to the New York State Human Rights Division as resulting from his status as a temporary employee, whose term was set to expire, while at the time of his termination and now on this motion, Leake & Watts offered the anticipated budget shortfall as its rationale. (P. Opp. Mem. 2-3.) Plaintiff's argument is well-taken in the abstract: Had defendant providing a shifting rationale for his termination, even if both proferred rationales were non-discriminatory on their face, it might cast sufficient doubt on defendant's credibility to be probative of discrimination. See Reeves, 530 U.S. at 147 ("The trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.").

Here, however, there is simply no evidence of any dissembling. During his deposition, Brooks claimed that at a meeting with the director of the Human Rights Division, defendant portrayed its reason for firing Brooks as due to the temporary nature of the job, not a budget deficit. [*20] (Brooks Dep. 119.) While the Human Rights Division report does make reference to Brooks's having "completed the task and mission he was hired for," the report goes on to note the budget deficit faced by Leake & Watts: "Complainant had completed the task and mission he was hired for and Respondent was facing a budget deficit, and Respondent terminated his employment. Because of the budget deficit, Respondent terminated others, who ranged from age 31 to 57." (Lubbe Aff. Ex. L, at 1.) Moreover, the position paper provided by Leake & Watts to the Human Rights Division (Hairston Reply Aff. Ex. A, at 1-3) is in no way inconsistent with the arguments presented here or, indeed with the memorandum Brooks was provided on the day he was notified of his termination (Retrenchment Memo, Lubbe Aff. Ex. H, at 1), as to the necessity of terminating Brooks in light of financial difficulties. It is clear that the budget deficit rationale has been present and articulated by Leake & Watts since the decision to fire Brooks was first made. Accordingly, Brooks has failed to cast doubt on Leake & Watts's proferred rationale on the basis of a supposed "flip-flop."

Finally, the Court's own search of the record [*21] fails to yield any additional facts which might persuade a

Page 5

064649.1001

factfinder of plaintiff's claim. At his deposition, Brooks pointed to only three facts when asked why he thought his termination was discriminatory: (1) he was the only director within the Congregate Care Division terminated; (2) two vacant security guard positions were retained, while his position was eliminated; and (3) Brooks witnessed other people get promotions and new hirings shortly after his termination. (Brooks Dep. 104.) The first two facts lead nowhere. Of the four directors retained in the Congregate Care Division, two others were over sixty years of age (Hairston Aff. PP8-11) and, moreover, Brooks's responsibilities were transferred to another existing director, Peter Nesbitt, who was about fifty-eight years old at the time. (Hariston Aff. P32.) Cf. O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313, 134 L. Ed. 2d 433, 116 S. Ct. 1307 (1996) ("replacement of one worker with another worker insignificantly younger" does not support inference of discrimination). While Brooks may rely on the same evidence to establish both a prima facie case and to cast doubt on defendant's explanation, in the instant case, Brooks's repetition [*22] of the conceded fact that the security guard positions were retained while his was eliminated does nothing to advance his case. That fact has been explained by Leake & Watts as the product of a deliberate decisionmaking process about the best way to maximize the resources of the department to keep up what was perceived, even by Brooks, as its critical patrolling function while reducing expenses. Brooks has not pointed to any facts, other than mere speculation, which would put this explanation into dispute.

The third fact--the promotions and new hires Brooks claims to have witnessed after his termination--is simply not substantiated by any evidence in the record. The references Brooks made in a letter to the Human Rights Division (not submitted on summary judgment, but discussed during Brooks's deposition) to other employees Brooks believes were promoted or rehired after his termination within the Congregate Care Division, including a social worker, Sharon Billig, and an unnamed night crisis counselor (Brooks Dep. 111-112) are not substantiated by any admissible evidence of these personnel actions; Brooks testifies merely that "someone told me" about these events. (Id.) Meanwhile, [*23] most individuals displaced by the restructuring were undisputedly rehired for positions on the Vacancy List, but, as already stated above, all but the two security guard positions were located in other cost centers. Rehiring of displaced employees, promotions, and new hires taking place in other cost centers have no evidentiary value in determining whether Leake & Watts's stated rationale of eliminating its budget deficit within the Congregate Care Division is pretextual.

Indeed, the evidence in the record overwhelmingly exonerates the actions of Leake & Watts. Brooks was terminated as part of a larger restructuring effort to eliminate a documented, anticipated budget shortfall in his division. The decision to terminate him was recommended and ultimately taken by individuals of his approximate age, while all four other employees terminated as a result of the restructuring were younger than Brooks, including two employees in their thirties. Two other employees at the director-level who were over sixty years old were retained during the restructuring, while Brooks's responsibilities were transferred to an existing director, who was about four years younger and who did not receive a [*24] pay adjustment along with his new responsibilities. In light of all this and in the complete absence of any evidence that Leake & Watts's reasons for terminating Brooks's position were pretextual, Brooks would not be able to bear his burden of persuasion at trial, and accordingly summary judgment is granted for defendant as to plaintiff's claim of wrongful termination.

B. Failure to Hire

Plaintiff also argues that he was discriminated against when he was not hired by Leake & Watts for the position of Recruitment Manager. When Willis Kettrell, then acting assistant executive director, and Hairston met with Brooks to inform him of his termination, they also provided him with the Vacancy List described above, indicated that he would have the opportunity to apply for any of the positions on the list, and explicitly pointed out the position of Recruitment Manager (located within Human Resources) as one which "might fit more closely." (Brooks Dep. 92-95.) Although interviewed for the position by Hairston and an assistant director of Human Resources (id. at 96), Brooks was not hired, and the position went instead to John Rivera, who had been Brooks's deputy director within the Security [*25] Department and who was fifty-one years old in February 2000. (Hairston Aff. P20.)

Defendant argues that there are no circumstances present to give rise to an inference of discrimination, but that fact that Rivera was approximately ten years younger than Brooks is sufficient to meet the minimal burden plaintiff carries to show a prima facie case of discrimination. See Brennan v. Metro. Opera Ass'n, Inc., 192 F. 3d 310, 317 (2d Cir. 1999) ("The fact that the replacement is substantially younger than the plaintiff is a more valuable indicator of age discrimination, than whether or not the replacement was over forty."), citing O'Connor, 517 U.S. at 313. n3 Nonetheless, defendant has easily satisfied its burden of producing a legitimate, non-discriminatory reason for Rivera's hiring, namely what were in its estimation Rivera's better relevant experience and qualifications. As explained by Hairston, Leake & Watts believed that Rivera was a better candi-

Page 6

date for a position as a recruiter because (a) Rivera, unlike Brooks, had a college degree and could accordingly relate better to college graduates; (b) Rivera had management experience in fields outside the [*26] security and safety fields, while Brooks's management experiences were primarily within those fields; and (c) Rivera was "actively involved and very well connected in the local community," while when asked about community involvement, Brooks did not indicate any. (Hairston Aff. P35.) This is sufficient to satisfy defendant's burden of production and shift the burden to plaintiff to come forward with facts casting doubt on the legitimacy of this explanation.

n3 The Second Circuit recently held that "where a plaintiff relies on a substantial age discrepancy between herself and her replacement, she must adduce some evidence indicating defendants' knowledge as to that discrepancy to support the inference of discriminatory intent required by the fourth *prima facie* factor." Woodman v. WWOR-TV, Inc., 411 F.3d 69, 82-83 (2d Cir. 2005). "Where such knowledge is undisputed . . . a court need not specifically address this point; rather it may be assumed in considering whether the circumstances presented indicate intentional discrimination." Id. The holding in Woodman post-dates the briefing on this motion, but in any event, the Court does not understand defendant's knowledge of the relative age of Brooks and Rivera to be disputed, given that both men were already in defendant's employ at the time they were interviewed for the vacant Recruitment Manager position and Hairston's affidavit indicates that personnel records were kept by Leake & Watts in the regular course of business. (Hairston Aff. P3.)

[*27]

Once again, plaintiff cannot satisfy this burden. In opposing summary judgment, plaintiff argues only that Leake & Watts overlooked his qualifications for the Recruitment Manager position and that therefore "material issues of fact exist as to whether Brooks was qualified for the Recruitment Manager position, and whether he was better qualified than Rivera." (P. Opp. Mem. 3-4.) This argument misunderstands the applicable standards. First, Leake & Watts has conceded that Brooks was qualified for the Recruitment Manager position; that issue is no longer in dispute. Second, the task here is not an objective assessment of whether Leake & Watts erred in choosing Rivera over Brooks because it misjudged their respective qualifications. See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse

Servs., 165 F.3d 1321, 1330 (10th Cir. 1999) ("Our role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments.") (citations omitted); Fischbach v. D.C. Dep't of Corr., 318 U.S. App. D.C. 186, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (provided stated reason is not pretextual, employers must be allowed [*28] "unfettered discretion to choose among qualified candidates"). Rather, the Court must ask whether anything about that decision serves to "undermine the credibility of an employer's stated justification for an employment decision." Byrnie, 243 F.3d at 103. In particular, "when a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer . . . plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." Byrnie, 243 F.3d at 103 (internal quotation marks and citation omitted).

Brooks relies wholly on the respective qualifications of the two candidates to demonstrate pretext, but cannot meet the Brynie standard. While Brooks did have substantial management experience both prior to and during his tenure at Leake & Watts as documented in his original application for the position of director of security and in his deposition testimony (Lubbe Aff., Ex. F; Brooks Dep. 17-18, 26-31, 63-71), Leake & Watts [*29] justified its hiring of Rivera based on three specific factors: his college degree, broader management experience, including positions as a director of two homeless shelters and a methadone clinic (Hairston Aff. Ex. D), and community connections. (Hairston Aff. P35.) Rivera's college degree and community connections are undisputed and Brooks's management experience, in whatever quantum, does not undercut that Rivera had qualifications which Brooks did not and which Leake & Watts deemed relevant. Cf. Evans v. Port Auth. of New York and New Jersey, 192 F. Supp. 2d 247, 268 (S.D.N.Y. 2002) (no evidence of pretext where plaintiff claimed various advantages in general experience over individual hired, but defendant's stated reason was successful candidate's unique experience at a particular facility where the position was located, experience not shared by defendant). At most, Leake & Watts may have exaggerated the differences between the two candidates--Brooks had three years of university education, even though he did not obtain a degree, his management experience within the safety field was considerable, consisting of director of security positions at three different [*30] hospitals, and his management responsibilities at Leake & Watts extended beyond supervision of security officers--but Brooks's qualifications cannot be said to be so superior to those of Rivera that "no reasonable person . . . could

2005 U.S. Dist. LEXIS 16229, *

have chosen [Rivera] over [Brooks]" for the position of Recruitment Manager. Standing alone, the relative credentials of Brooks and Rivera alone are not probative of discriminatory intent, and plaintiff has not pointed to, nor has the Court found, any other evidence to support plaintiff's claim. Accordingly, defendant is also entitled to summary judgment as to plaintiff's failure to hire claim.

**CONCLUSION**

Defendant's motion for summary judgment is granted. Plaintiff's complaint is dismissed in its entirety.

SO ORDERED.

Dated: New York, New York

    August 1, 2005

    GERARD E. LYNCH

    United States District Judge

DB02:5498752.1

064649.1001

LEXSEE

**ALBERTA BURTON, Plaintiff, v. MBNA AMERICA BANK, N.A. Defendant.**

**C.A. No. 03-915 (GMS)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2005 U.S. Dist. LEXIS 12154**

**June 22, 2005, Decided**

**COUNSEL:** [*1] For Alberta Burton, Plaintiff, Pro se, Newark, DE; John M. LaRosa, Law Office of John M. LaRosa, Wilmington, DE.

For MBNA America Bank NA, Defendant: Sheldon N. Sandler, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM**

**I. INTRODUCTION**

Presently before the court is a motion for summary judgment (D.I. 27) filed by Defendant MBNA America Bank, N.A. ("MBNA") in the above-captioned action, in which Plaintiff Alberta Burton alleges that she was the victim of unlawful *quid pro quo* sexual harassment, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § § 2000e, *et seq.* After reviewing the record in its entirety, the court has determined that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). Therefore, the court will grant summary judgment in favor of MBNA and dismiss all counts of the complaint.

**II. JURISDICTION**

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (1993).

**III. [*2] STANDARD OF REVIEW**

Summary judgment is appropriate when there are no genuine issues of material fact. *See* Fed. R. Civ. P 56(c). A fact is material if it might affect the outcome of the case, and an issue is genuine if the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmovant. *See In re Headquarters Dodge, Inc.,* 13 F.3d 674, 679 (3d Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). When deciding a motion for summary judgment, the court must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Pacitti v. Macy's,* 193 F.3d 766, 772 (3d Cir. 1999). The nonmoving party, however, must demonstrate the existence of a material fact supplying sufficient evidence - not mere allegations - for a reasonable jury to find for the nonmovant. *See Olson v. GE Astrospace,* 101 F.3d 947, 951 (3d Cir. 1996) (citation omitted). To raise a genuine issue of material fact, the nonmovant "need not match, item for item, each piece of evidence [*3] proffered by the movant but simply must exceed the 'mere scintilla' [of evidence] standard." *Petruzzi's IGA Supermarkets, Inc. v Darling-Delaware Co.,* 998 F.2d 1224, 1230 (3d Cir. 1993) (citations omitted). The nonmovant's evidence, however, must be sufficient for a reasonable jury to find in favor of the party, given the applicable burden of proof. *See Anderson,* 477 U.S. at 249-50, 91 L. Ed. 2d 202, 106 S. Ct. 2505.

**IV. BACKGROUND**

Alberta Burton was originally hired by MBNA on October 28, 1996, as a Credit Analyst in the Unsecured Lending Department of MBNA's Customer Finance Division. (D.I. 29 at A10; Burton Dep. at 20:18-24.) On March 1, 1998, Burton was promoted to Loan Specialist (D.I. 29 at A10), and toward the end of 2000, she successfully applied for the position of Community Relations Specialist in the Community Relations Department of the MBNA Foundation. (Id. at A11.) At her new position in the Foundation, Burton worked under the supervision of Craig Marvel, Director of Community Relations. (Id.) From March 2001 through January 2002, Marvel engaged in a pattern of inappropriate conduct toward

Page 1