summary judgment on plaintiff's ERISA claims is granted.

## VI. CONCLUSION

For the aforementioned reasons, the court shall grant defendant's motion for summary judgment. An order shall issue consistent with this memorandum opinion.

LEXSEE 2004 U.S. APP. LEXIS 5694

**ALERO A. KIDD, Appellant v. MBNA AMERICA BANK, N.A., Appellee**

No: 02-4011

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

*93 Fed. Appx. 399; 2004 U.S. App. LEXIS 5694*

November 3, 2003, Submitted Pursuant to Third Circuit LAR 34.1(a)
March 25, 2004, Filed

**NOTICE:** [**1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the final order entered on September 30, 2002 in the United States District Court for the District of Delaware Civil Action. No. 01-205. District Court: The Hon. Sue L. Robinson. *Kidd v. MBNA Am. Bank, N.A., 224 F. Supp. 2d 807, 2002 U.S. Dist. LEXIS 18723 (D. Del., 2002)*

**DISPOSITION:** Affirmed.

**COUNSEL:** For ALERO A. KIDD, Appellant: Carol E. Taylor, Wilmington, DE.

For MBNA AMER BANK NA, Appellee: Laurence V. Cronin, Smith, Katzenstein & Furlow, Wilmington, DE.

**JUDGES:** Before: McKEE and SMITH, Circuit Judges and WEIS, Senior Circuit Judge.

**OPINIONBY:** McKEE

**OPINION:** [*400] McKEE, Circuit Judge.

Plaintiff, Alero Kidd appeals the district court's grant of summary judgement for the defendant, MBNA America Bank. Kidd sued her employer, MBNA, alleging that it denied her various promotions and transfers because of her race n1, sex, age and/or in retaliation for having raised discrimination claims. Kidd also alleged discriminatory harassment and a hostile work environment.

---

n1 In Kidd's original complaint, she based her charges of discrimination on national origin instead of race. For purposes of the motion for summary judgment, MBNA did not contest that Kidd had exhausted her administrative remedies with respect to her claims of racial discrimination.

---

[**2]
I.

Because we write only for the parties, it is not necessary to recite the facts of this case in detail. Our review of the district court's grant of summary judgment is plenary. We apply the same test the district court should have applied initially. *Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000)*. "We must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence." *Reeves v. Sanderson Plumbing Products, Inc. 530 U.S. 133, 135, 147 L. Ed. 2d 105, 120 S. Ct. 2097. (1986).*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56*; *see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. To be a genuine [**3] issue, the evidence must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*.

### II. Discrimination Claims

Disparate treatment claims brought under *Title VII* and the *ADEA* n2 are analyzed using the burden shifting analysis established in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*. Under this analysis, the plaintiff must first make a prima facie showing of discrimination by establishing that (i) she belongs to a protected class; (ii) she applied for and was qualified for a job the employer was trying to fill; (iii) though qualified, she was rejected; and (iv) circumstances give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class. *Jones v. School District of Philadelphia, 198 F.3d 403 (3d. Cir. 1999)*.

> n2 Although this analysis was originally formulated for cases brought under Title VII it has been adapted for use in ADEA cases as well. *See eg., Maxfield v. Sinclair International, 766 F.2d 788 (3d Cir. 1985)*

[**4]

Once the plaintiff has established a prima facie case of discrimination the burden shifts to the defendant "to articulate some [*401] legitimate nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green, 411 U.S. at 802*. The burden then shifts back to the plaintiff who must show that the nondiscriminatory reason articulated by the defendant is in fact a pretext for discrimination. *Id. at 804*.

To avoid summary judgment in a Title VII or ADEA action after the employer has proffered a legitimate, nondiscriminatory reason for an adverse employment action, the plaintiff must produce evidence which: (1) casts sufficient doubt upon each proffered reason so that a fact finder could reasonably conclude that each reason was fabrication, or (2) allows a fact finder to infer that discrimination was more likely than not a motivating or determinative cause of action. *See Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994)*. This burden is met through a demonstration that such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action are such [**5] that a reasonable factfinder could rationally find them 'unworthy of credence'" *Id*.

We find that Kidd only established a prima facie in one instance of denial of promotion; the S.A. Coach position. We agree with the district court's determination that Kidd failed to provide any evidence that similarly situated persons not in a protected class were treated more favorably in any of her other denials of promotion. Kidd is a member of a protected class, and was rejected for various positions, however, the circumstances do not give rise to an inference of discrimination even when viewed in a light most favorable to Kidd.

Although Kidd did establish a prima facie case of discrimination with regard to the S.A. Coach position, MBNA provided a legitimate nondiscriminatory business reason for its decision. *Fuentes v. Perskie 32 F.3d 759 (3rd Cir. 1994)*. MBNA explains her disparate treatment by asserting that it merely made a mistake and forgot to check the corrective action status for the employee promoted to the S.A. Coach position. Kidd fails to respond to that explanation with anything that would create an issue of fact as to pretext for discrimination.

Left unrebutted, [**6] the fact that MBNA claims it made a mistake on one employee's application does not suggest a weakness, implausibility or incoherency in MBNA's proffered explanation. Therefore, we find there is no genuine issue as to any material fact regarding MBNA's failure to promote Kidd.

### III. Retaliation Claim

Like discrimination claims brought under Title VII and the ADEA, in order to establish a prima facie case of retaliation, a plaintiff must demonstrate that: (i) she engaged in protected activity; (ii) the defendant took adverse employment action against her; and (iii) a causal link exists between the protected activity and the adverse action. *Kachmar v. Sungard Data System 109 F.3d 173 (3d Cir. 1999)*. In support of her claim, Kidd asserts that she overheard managers

discuss the complaint she made to the EEO. However, she failed to present any evidence to link these managers to MBNA's decision not to promote her. Accordingly, she did not show the required causal link between her complaint and MBNA's subsequent denials of promotion.

### IV. Hostile Work Environment

In order to establish her claim for employment discrimination due to a hostile work environment, [**7] Kidd had to establish, (1) that she suffered intentional discrimination because of race; (2) the discrimination [*402] was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondent superior liability. *See Aman v. Cort Furniture, 85 F.3d 1074, 1081 (3d. Cir. 1996), West v. Philadelphia Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995)*. In analyzing a hostile work environment claim, we must look at the totality of the circumstances including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the work performance of the employee. *Id.*

Kidd presents evidence that a male co-worker made several disparaging remarks to her which referenced her national origin and that he made other threatening comments including references to a gun.

The comments were certainly obnoxious and had no place in the work environment. However, these comments by a single coworker do not establish that discrimination was pervasive and regular. [**8] Although Kidd argues that the harassment she suffered was continuous and lasted until her co-worker was terminated, she only presented evidence of a few isolated incidents. That is insufficient to establish a cause of action for a hostile work environment under Title VII.

### III.

For the above reasons, we will affirm the ruling of the district court.

1 of 21 DOCUMENTS

ANTHONY T. MARIONE, JR., Appellant v. METROPOLITAN LIFE INSURANCE CO.

No. 05-2359

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

2006 U.S. App. LEXIS 19345

July 13, 2006, Submitted Under Third Circuit LAR 34.1(a)
July 31, 2006, Filed

**NOTICE:** [*1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the District of New Jersey. (D.C. Civil No. 03-cv-03034). District Judge: Honorable Garrett E. Brown, Jr.

**COUNSEL:** For ANTHONY T. MARIONE, JR., Appellant: Peter G. Loftus, Loftus Law Firm, Waverly, PA.

For METRO LIFE INS CO, Appellee: Steven Yarusinsky, Proskauer Rose, One Newark Center, Newark, NJ.

**JUDGES:** Before: SLOVITER, McKEE and RENDELL, Circuit Judges.

**OPINIONBY:** RENDELL

**OPINION:**

OPINION OF THE COURT

RENDELL, *Circuit Judge.*

Anthony Marione ("Marione") appeals the District Court's grant of summary judgment in favor of defendant Metropolitan Life Insurance Company ("MetLife") on Marione's claim that MetLife violated the Age Discrimination in Employment Act, *29 U.S.C. § 621*, when it terminated him in February 2002, during a reduction in force ("RIF"). In granting MetLife's summary judgment motion, the District Court concluded that Marione had not demonstrated, under the test articulated in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*, [*2] that MetLife's stated reasons for terminating his employment were a pretext for age discrimination. We agree and will affirm.

I.

Marione worked for MetLife in various capacities from 1968 to 2002. Originally hired as a management trainee, Marione held a number of at-will employment positions, eventually becoming a senior data administrator for the Data Analysis and Development ("DAD") Unit. The DAD Unit was a sub-unit of MetLife's Information Technology Department, responsible for providing technical support and services to various lines of business.

In late 2001, after being notified of a decrease in funding to the DAD Unit, MetLife determined there was a need to eliminate a number of employees. In December, the Unit's managers met to rank and rate their 29 employees, 19 of whom were senior data administrators. In the end, MetLife decided to terminate the five lowest-ranked individuals who were deemed non-essential to the department. Marione was one of the five. Employees were chosen for two reasons: 1) their primary responsibilities involved doing maintenance work relating to data analysis and modeling, rather than design and creation of new databases, and 2) they did not [*3] possess the skills sets that included the emerging technologies into which the DAD Unit was expanding.

Upon notification of his termination, Marione was given a Separation Agreement, which, if signed, would allow him to receive one year's salary ($ 81,501), a $2,000 bonus, and outplacement assistance. Although Marione had a number of questions about the agreement and had asked for an extension in signing it, he voluntarily executed the agreement on March 4, 2002. He then received one lump-sum check, which was one of the payment methods offered under the Agreement. Marione filed an unsuccessful age discrimination charge with the EEOC in May 2002 and, in June 2003, initiated this lawsuit. After the District Court granted summary judgment in favor of MetLife, Marione appealed.

## II.

This Court has jurisdiction pursuant to *28 U.S.C. § 1291*. We review a grant of summary judgment de novo, applying the same test as the district court. *Tomasso v. Boeing Co., 445 F.3d 702 (3d Cir. 2006)*. Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." [*4] *Fed. R. Civ. P. 56(c)*. An issue of material fact is genuine only when such evidence could cause a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. When the non-moving party bears the burden of proof, the moving party's burden may be discharged by showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. The burden then shifts to the non-moving party, who "may not rest on the mere allegations or denials of the adverse party's pleadings . . . but must set forth specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P 56(e)*. If the adverse party does not so respond, summary judgment shall be entered against the adverse party. *Id.*

## III.

When analyzing employment discrimination allegations arising under **ADEA**, we follow the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas*. First, a plaintiff must establish a *prima facie* case of discrimination. [*5] *McDonnell Douglas, 411 U.S. at 802*. The District Court determined, and the record supports, that Marione did establish a *prima facie* case. Therefore, this element has been satisfied and is not at issue on appeal.

Establishment of a *prima facie* case creates a presumption of discriminatory intent that a defendant has the burden to rebut by setting forth some legitimate, non-discriminatory reason for its actions. *Id.* Here, MetLife claims that the **RIF** was made necessary by cutbacks in the DAD Unit's budget. As a result, employees were selected for termination based on "a consensus assessment of their contributions to the DAD Unit within the past year and their abilities to perform emerging technologies." Appellee's Br. at 32. A MetLife manager testified that after learning of the budget cutbacks, she and the other managers engaged in a "lifeboat" exercise, assessing which individuals were most needed in order to accomplish the DAD Unit's goals for 2002.

We recognize that in a **RIF**, a company is often forced to terminate "the worst of the best," and therefore an adequate employee who is under-performing relative to his peers may still be chosen for termination. [*6] *Tomasso, 445 F.3d at 711 n.9*. We therefore find MetLife's stated reasons, which need only to be articulated, and need not be proven at this stage, to be legitimate. *St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)*. See also *Texas Dep't Of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)* ("The defendant need not persuade the court that it was actually motivated by the proffered reasons . . . [t]he explanation provided must be legally sufficient to justify a judgment for the defendant.").

After a defendant has stated legitimate, nondiscriminatory reasons for its actions, plaintiff must then be afforded a fair opportunity to show that defendant's reasons are in fact pretextual. *McDonnell Douglas, 411 U.S. at 804*. See also *Kautz v. Met-Pro Corp., 412 F.3d 463, 466-67 (3d Cir. 2005)*; *Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997)*; *Fuentes v. Perskie, 32 F.3d 759, 761-64 (3d Cir. 1994)*. The standard for evaluating whether a plaintiff has met his burden to demonstrate pretext at the summary judgment [*7] stage is well-established:

> [T]o defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

*Fuentes, 32 F.3d at 764*. Therefore, the relevant question on appeal is whether Marione has offered any evidence from which a fact finder could reasonably disbelieve MetLife's stated reasons for terminating Marione or find that MetLife was more likely than not motivated by discrimination.

To show that an employer's legitimate reasons should be disbelieved, a plaintiff must offer evidence that would allow a fact finder to reasonably infer that "*each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Id.* Furthermore, he must present "such weaknesses, [*8] implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable fact-finder could rationally find them unworthy of credence." *Id.*

Marione counters MetLife's stated reasons by criticizing the company's performance evaluation methods, disapproving of its management style, and disagreeing with MetLife's assessment of his potential in comparison to others. All of these arguments miss the mark. "To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." *Id. at 765*. See also *Keller, 130 F.3d at 1109* ("The question is not whether the employer made the best or even a sound business decision; it is whether the real reason is discrimination."); *Healy v. New York Life Ins. Co., 860 F.2d 1209, 1216 (3d Cir. 1988)* ("Our inquiry . . . is not an independent assessment of how we might evaluate and treat a loyal employee."); *Logue v. International Rehabilitation Associates, Inc., 837 F.2d 150, 155 n. 5 (3d Cir. 1988)* [*9] ("[O]ur task is not to assess the overall fairness of . . . [the] employer's actions."). Marione makes it clear that he objects to the way MetLife treated a loyal employee of more than 30 years. Although we sympathize with his situation, we find nothing that would lead us to believe that its actions or underlying motivations were based on improper considerations.

Additionally, Marione claims that because some younger, lower-ranked and "less qualified" employees were retained, MetLife's stated reasons for including him in the **RIF** were untrue. MetLife properly addressed these discrepancies with explanations supported by affidavits and testimony. For example, MetLife retained one younger, lower-ranked employee because he maintained an essential line of products. Three other younger employees were not ranked because they had been hired too recently to assess their performance. Additionally, they worked on emerging technologies and as repository administrators, performing different functions than those who were terminated. In short, Marione fails to point to any evidence that would lead a reasonable jury to believe that MetLife's behavior was inconsistent with its explanations.

Under [*10] *Fuentes*, Marione could succeed at the summary judgment stage if he were to offer evidence showing that discrimination was more likely than not a motivating factor. Specifically, Marione must "point to evidence that proves age discrimination in the same way that critical facts are generally proved - based solely on the natural probative force of the evidence." *Keller, 130 F.3d at 1111*. Marione claims that MetLife's age statistics show a pattern of discrimination. We disagree. Employees of all ages were terminated in the **RIF**, and employees of all ages were retained. The average age of the department remained essentially the same and, in fact, 22 out of 30 employees who remained were members of the protected class. Marione also claims that management revealed its discriminatory intent when it publicly awarded him for his years of service and discussed retirement options with him and another employee. Additionally, he proffers that MetLife purposely denied him training because of his age and rigged performance ratings to rank older employees lowest. The record does not support these accusations. Finally, Marione claims that MetLife made faulty disclosures under the [*11] Older Workers' Benefit Protection Act ("OWBPA"), *29 U.S.C. § 626(f)(1)(H)*, to "hide" the ages of workers who were laid off. However, the record shows that Marione quickly discovered the OWBPA disclosure to be incorrect, and the employees within the department easily learned who was included in the **RIF**. Because the mere existence of a faulty OWBPA disclosure, by itself, does not evidence age discrimination, and there is no evidence to support Marione's suspicions, his claim cannot be maintained.

IV.

The record contains no evidence that MetLife's actions were in any way discriminatory or that its proffered reasons were a pretext for discrimination. Therefore, we will affirm the order of the District Court.

LEXSEE

BELINDA MOSS, also known as BELINDA JONES, Plaintiff-Appellant, v.
AMERITECH SERVICES, INC., also known as SBC/AMERITECH, also known as
SBC SMART, Defendant-Appellee.

No. 05-1270

UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

166 Fed. Appx. 849; 2006 U.S. App. LEXIS 713

December 14, 2005, Argued
January 11, 2006, Decided

**NOTICE:** [**1] RULES OF THE SEVENTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Rehearing, en banc, denied by Moss v. Ameritech Servs., 2006 U.S. App. LEXIS 6378 (7th Cir. Ind., Mar. 14, 2006)

**PRIOR HISTORY:** Appeal from the United States District Court for the Southern District of Indiana, Evansville Division. No. 3:03-cv-80-RLY-VSS. Richard L. Young, Judge. Moss v. Ameritech Servs., 2005 U.S. Dist. LEXIS 7032 (S.D. Ind., Jan. 14, 2005)

**DISPOSITION:** AFFIRMED.

**COUNSEL:** For BELINDA MOSS, ALSO KNOWN AS BELINDA JONES, Plaintiff - Appellant: Joseph A. Yocum, Evansville, IN USA.

For AMERITECH SERVICES, INCORPORATED, also known as SBC/AMERITECH, also known as SBC SMART, Defendant - Appellee: Wayne C. Turner, John F. McCauley, MCTURNAN & TURNER, Indianapolis, IN USA.

**JUDGES:** Before Hon. KENNETH F. RIPPLE, Circuit Judge, Hon. TERENCE T. EVANS, Circuit Judge, Hon. ANN CLAIRE WILLIAMS, Circuit Judge.

**OPINION:**

[*849] **ORDER**

In January 2001, after working for Ameritech in Chicago for nearly three years, Belinda Moss was transferred to a supervisory position at Ameritech in Evansville, Indiana. The company discharged her in late 2002. After exhausting various administrative remedies, Moss sued Ameritech alleging that her termination was the result of race discrimination (she is African-American), sex discrimination, and retaliation [**2] in violation of Title VII, 42 U.S.C. § 2000e et seq.; age discrimination (she is over 50) in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; and disability discrimination (she has asthma) in violation of [*850] the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. After the district court dismissed her case on summary judgment, Moss filed this appeal which we resolve today.

Ameritech's motion for summary judgment included a list of 50 material facts supported by citations to four affidavits, Moss's deposition, and her EEOC complaint. It stated that Moss was laid off not because of any of the five bases of discrimination alleged, but due to a reduction in force ("RIF"). The RIF, according to Ameritech, required the company to eliminate one out of three managerial positions at the Evansville facility. Moss was laid off because she had the least amount of supervisory experience and the most performance and attendance problems.

In opposition to Ameritech's motion, Moss relied on numerous facts that, according to her, prove discrimination: she was replaced by a younger white [**3] male; a supervisor gave her an African-American Christmas treetop ornament; she was greeted with "hostility" at the Evansville facility; a fellow employee told her that computer data was "lost" when it was not; she was sent home for wearing a shirt exposing her midriff while white employees wearing equally revealing attire were not sent home; an Ameritech employee came to "check" on her while she was in the hospital; she had to pay her own moving expenses to Evansville while a white male em-

ployee was reimbursed for his expenses; her internal employment discrimination complaints were not resolved; and the climate of Evansville aggravated her asthma. Moss did not explain how these facts demonstrate unlawful discrimination and did not cite applicable law.

In granting summary judgment for Ameritech the district court held that Moss could not make out a prima facie case of race, sex, age, or disability discrimination because she failed to point to any similarly situated white, male, younger, or non-disabled employees that were treated more favorably than her. Further, the court found that the RIF was a legitimate, non-discriminatory reason for Ameritech's termination of Moss, and that [**4] she failed to show this reason was a pretext for discrimination. Regarding the disability discrimination claim, the district court additionally concluded that Moss's asthma did not render her disabled. Finally, the court held that because Moss did not even address Ameritech's arguments that she was not subject to retaliation, Ameritech was also entitled to summary judgment on the retaliation claim.

Moss's brief on appeal is somewhat unfocused. The following examples are representative of the brief as a whole: "The District Court erroneously, even to the point of bias, has required direct and beyond a reasonable doubt proof of everything involved," and "in fact, such a reading could very well require entry of judgment, sua sponte, on the issue of liability for Moss, leaving only the issue of damages open for trial." In any event, we have interpreted Moss's brief broadly and in the best possible light.

Moss argues that the district court either "totally ignored" or applied "a totally improper standard of proof to the evidence presented on the motion for summary judgment. Specifically, she argues that the district court did not properly consider portions of her deposition attached to [**5] Ameritech's motion and to her response. Further, she asserts that if the district court properly considered the deposition evidence she and Ameritech provided, "unlawful discrimination" would be shown. To support her argument that the court applied an "improper standard of proof," Moss cites to St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993), and Reeves v. [*851] Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), asserting that the standard to defeat a motion for summary judgment is low, and that all she needed to do was show that a jury "could" rule in her favor. She also quotes the proposition from Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), that evidence presented by the non-moving party "is to be believed."

We review a district court's grant of summary judgment de novo, viewing all facts in the light most favorable to the non-movant. See Cardoso v. Robert Bosch Corp., 427 F.3d 429, 432 (7th Cir. 2005). However, the non-movant still must set forth specific facts that demonstrate a genuine issue for trial. See Rozskowiak v. Vill. of Arlington Heights, 415 F.3d 608, 612 (7th Cir. 2005). [**6] Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) (internal quotation and citation omitted).

A claim for race, sex, age, or disability discrimination, or one for retaliation can survive summary judgment if the plaintiff provides direct or indirect evidence of discrimination or retaliation. Moss did not indicate to the district court in her opposition brief which method of proof she was employing, and the district court did not analyze her claim under the direct method. On appeal, Moss is similarly unclear. The only mention she makes of direct evidence in her appellate brief is her claim that, if the district court had properly examined the evidence, "even the requirements of direct evidence at the time of trial would have been met." But she does not develop this argument or cite to any legal authority. Even if Moss had used the direct method of proof, "direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus, [**7] " Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000). Moss has no such evidence.

To the extent that Moss proceeds under the indirect burden-shifting method of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), that argument is also undeveloped. While she cites three employment discrimination cases that use the indirect method, she neither sets out the elements of a prima facie case nor identifies facts and evidence establishing a prima facie case. See id. at 802; Little v. Ill. Dep't of Revenue, 369 F.3d 1007, 1011 (7th Cir. 2004). Even if Moss had argued her discrimination claims under the indirect method, she has not, as the district court correctly held, made out the fourth element of her prima facie case: similarly situated employees outside her protected class were not discharged. n1 See McDonnell Douglas, 411 U.S. at 802; Little, 369 F.3d at 1011; see also Bellaver v. Quanex Corp., 200 F.3d 485, 493-94 (7th Cir. 2000) (discussing prima facie case in context of reduction in force). It is the plaintiff's burden to present admissible evidence [**8] of a specific employee outside her protected class who was treated more favorably than she, Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 939 (7th Cir. 2003), and that employee must be [*852] "directly comparable to her in all material respects,"

Page 2

*Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir. 2002); *see Radue,* 219 F.3d at 618.

n1 To the extent that Moss is arguing that events other than her discharge from Ameritech--such as being sent home for wearing a shirt exposing her midriff, having an Ameritech employee come to "check" on her while she was in the hospital, not being reimbursed for moving expenses, or being told by a co-supervisor that data was lost when it was not--constitute adverse employment actions, her arguments fail. *See Traylor v. Brown,* 295 F.3d 783, 788 (7th Cir. 2002); *Tyler v. Ispat Inland, Inc.,* 245 F.3d 969, 972 (7th Cir. 2001).

Moss did not specifically identify much less present admissible evidence [**9] of -- any similarly situated employee who was white, male, significantly younger, not disabled, or who had not filed prior discrimination complaints and was not terminated during the RIF. The only time she mentions a potential similarly situated employee is in her opposition brief where she states, without citing to any evidence, that "she was replaced by a white male younger than she." Moss produced no evidence that this employee was comparable to her in all material aspects, *see Ezell v. Potter,* 400 F.3d 1041, 1049-50 (7th Cir. 2005), and her deposition testimony suggests that he had more experience than she. Moss's failure to satisfy the similarly situated prong is fatal to her prima facie case.

AFFIRMED.

DB02:5498752.1

064649.1001

LEXSEE

**CAROLYN ROOKS, Plaintiff-Appellant, v. GIRL SCOUTS OF CHICAGO, Defendant-Appellee.**

No. 95-3516

UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

1996 U.S. App. LEXIS 20389; 71 Fair Empl. Prac. Cas. (BNA) 736

June 11, 1996, Argued
August 9, 1996, Decided

**NOTICE:** [*1] RULES OF THE SEVENTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:**

Reported in Table Case Format at: 95 F.3d 1154, 1996 U.S. App. LEXIS 38196.

**PRIOR HISTORY:** Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 95 C 206. Charles P. Kocoras, Judge.

**DISPOSITION:** Judgment of the district court AFFIRMED. Girl Scouts's request for Rule 38 sanctions DENIED.

**COUNSEL:** For CAROLYN ROOKS, Plaintiff - Appellant: Vincent R. Jones, LaCoulton Walls, JONES & WALLS, Chicago, IL USA.

For GIRL SCOUTS OF CHICAGO, Defendant - Appellee: Patrick S. Casey, Lisa D. Freeman, SIDLEY & AUSTIN, Chicago, IL USA.

**JUDGES:** Before Hon. RICHARD D. CUDAHY, Circuit Judge, Hon. MICHAEL S. KANNE, Circuit Judge, Hon. DIANE P. WOOD, Circuit Judge

**OPINION:**

ORDER

Carolyn Rooks charges that her employer, the Girl Scouts of Chicago ("Girl Scouts"), violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § § 2000e et seq., and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § § 621 et seq., when it did not promote her to one of two newly created Associate Executive Director positions. The district court granted summary judgment in favor [*2] of the Girl Scouts, and Ms. Rooks now appeals. Because Ms. Rooks failed to show that the Girl Scouts's reasons for not promoting her were pretextual, we affirm the judgment of the district court.

**BACKGROUND**

Carolyn Rooks, an African American female born in 1952, has worked for more than twenty years with the Girl Scouts, a non-profit service organization dedicated to serving the needs of girls in the city of Chicago. Ms. Rooks's current position is Director of Membership Services, and she has held this position since 1991.

Ms. Rooks's direct supervisor is Brooke Wiseman, the Executive Director of the Girl Scouts. Ms. Wiseman is a white female who was born in 1949. As Executive Director, she is responsible for overseeing the overall operation and administration of the Girl Scouts, including fund development, membership development, finance, personnel, the cookie sale, and public relations. Before 1994, Ms. Wiseman directly supervised a management staff consisting of six individuals responsible for various operations: (1) Ms. Rooks, Director of Membership Services; (2) Bernetta Johnson, an African American female born in 1953, who was Director of Membership and Product Sales; [*3] (3) Thomas Galassini, a white male born in 1961, who was Director of Finance and Administration; (4) Susan Rakis, a white female born in 1957, who was Director of Membership and Membership Support; (5) Thelma Walker, an African American female born in 1952, who was Director of Communications; and (6) Barbara Vroman, a white female born in 1955, who was Director of Development.

In 1994, Ms. Wiseman decided to restructure the Girl Scouts's management staff by creating two new As-

Page 1