Case 1:05-cv-00697-MPT   Document 46-7   Filed 09/06/2006   Page 1 of 11

1996 U.S. App. LEXIS 20389, *; 71 Fair Empl. Prac. Cas. (BNA) 736

sociate Executive Director positions to oversee the day-to-day operations of the Girl Scouts. The Associate Executive Directors would directly supervise the other members of the management staff. One Associate Executive Director would be responsible for the Girl Scouts's business operations, including fundraising, finance administration, and public relations. The other Associate Executive Director would be in charge of membership, including membership recruitment and retention, product sales, programming, adult development, and activity centers.

Ms. Wiseman planned to promote two members of the management staff to fill these positions. At her deposition, she testified that in evaluating the six candidates for [*4] promotion, she considered each individual's (1) supervisory effectiveness, (2) ability to work with volunteers, (3) knowledge of the operational areas that the person would supervise, (4) interpersonal skill, (5) ability to accept additional responsibilities, and (6) ability to manage change and function in a fluid and uncertain environment.

Ms. Wiseman selected Barbara Vroman for the Associate Executive Director position that would oversee the business operations area of fundraising, finance administration, and public relations. Ms. Vroman had a degree in business supervision from Purdue University, was a member of the National Society of Fundraising Executives, and had attended several fundraising seminars for fund development professionals. Before joining the Girl Scouts in 1992, Ms. Vroman spent six years as the Director of Development for the South Cook County Girl Scout Council and two years as the Director of Development for the Southwest Cooperative Foundation, a service organization for disabled children. Moreover, Ms. Vroman's most recent job performance evaluation was superior to those of four of the other members of the management staff, including Ms. Rooks, and was equal [*5] to that of Bernetta Johnson.

Ms. Wiseman then named Bernetta Johnson to the other Associate Executive Director position to oversee membership recruitment and retention, product sales, programming, adult development, and activity centers. Ms. Johnson had performed many of these tasks during her fifteen-year-tenure with the Girl Scouts.

On July 1, 1994, Ms. Vroman and Ms. Johnson assumed their positions as Associate Executive Directors.

In August 1994, Ms. Rooks filed a charge of age and race discrimination with the Equal Employment Opportunity Commission ("EEOC"). The following month, the EEOC dismissed the charge because there was no evidence "to establish a violation of the statutes."

Ms. Rooks filed this lawsuit in January 1995, alleging that the Girl Scouts violated Title VII n1 and the ADEA n2 when it failed to promote her to one of the two newly created Associate Executive Director positions. In September 1995, the district court granted the Girl Scouts's motion for summary judgment. Ms. Rooks appeals.

n1 Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color." 42 U.S.C. § 2000e-2(a)(1).

[*6]

n2 The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against an individual on the basis of age. 29 U.S.C. § 623(a). The legislation protects workers, such as Ms. Rooks, who are between the ages of forty and seventy. 29 U.S.C. § 631(a).

**DISCUSSION**

We review a grant of summary judgment de novo, drawing all reasonable inferences in favor of the non-moving party. Fuka v. Thomson Consumer Electronics, 82 F.3d 1397, 1402 (7th Cir. 1996). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The summary judgment standard is applied with "added rigor in employment discrimination cases, where intent is inevitably the central issue." McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 370-71 (7th Cir. 1992).

To establish a prima facie case of discrimination for failure to promote under the burden-shifting [*7] framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), Ms. Rooks must show that (1) she was in the protected class; (2) she applied for and was qualified for the position sought; (3) the Girl Scouts rejected her for the position; and (4) the Girl Scouts promoted someone from outside the protected group with similar or lesser qualifications than Ms. Rooks. Sample v. Aldi Inc., 61 F.3d 544, 548 (7th Cir. 1995). If Ms. Rooks establishes a prima facie

Case 1:05-cv-00697-MPT   Document 46-7   Filed 09/06/2006   Page 2 of 11

1996 U.S. App. LEXIS 20389, *; 71 Fair Empl. Prac. Cas. (BNA) 736

case, a rebuttable presumption of discrimination arises, requiring the Girl Scouts to come forward with a legitimate, nondiscriminatory reason for its refusal to promote her. Once such a reason is provided, the presumption of discrimination dissolves, and Ms. Rooks must show that the proffered reason is pretextual. See Fuka, 82 F.3d at 1404. At all times, however, Ms. Rooks bears the ultimate burden of persuading the trier of fact that the Girl Scouts intentionally discriminated against her based upon her age or race. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); Weisbrot v. Medical College of Wisconsin, 79 F.3d 677, 681 (7th Cir. [*8] 1996).

The district court assumed n3 that Ms. Rooks had made out a prima facie case of discrimination under McDonnell Douglas, but concluded that the Girl Scouts had satisfied its burden of producing a legitimate, non-discriminatory reason for choosing not to promote Ms. Rooks: namely, that the two women selected instead of her were better candidates. n4 Turning to the issue of pretext, Judge Kocoras wrote:

> The Defendant claims, with adequate support in the record, that the decision to promote Ms. Vroman and Ms. Johnson instead of the Plaintiff was due to Ms. Wiseman's belief that the promoted individuals were stronger candidates. . . . In opposition, the Plaintiff maintains that based upon her experience and educational background, she was "equally or better qualified" to fill either one of the positions. . . .
>
> However, the Plaintiff's own assessment of her ability does not prove that Ms. Wiseman's decision not to promote her was pretext for discrimination. The Plaintiff must prove either that the Defendant's pretext was unworthy of credence or that the adverse decision was more likely than not motivated by discriminatory reasons. . . . The Plaintiff has not offered any [*9] evidence which could support either one of these propositions.

R. 36, Memorandum Opinion of Sept. 20, 1995, at 14-15 (citations omitted). Finding that Ms. Rooks' produced no evidence to refute the Girl Scouts's proffered reason for not promoting her, the court entered summary judgment in favor of the Girl Scouts.

---

n3 Although the district court observed that Ms. Rooks satisfied each of the four elements necessary to prove a prima facie case of discrimination, see Memorandum Opinion of Sept. 20, 1995, at 14, the court appeared to stop short of actually finding that Ms. Rooks had established her prima facie case. Using the subjunctive mood, the court wrote: "Even if we were to conclude that the Plaintiff successfully established her prima facie case, the Plaintiff fails on the issue of pretext." Id. Judge Kocoras's use of the subjunctive tense does not affect our analysis. While the prima facie analysis logically comes first, we may "eschew a mechanistic application of McDonnell Douglas . . . and proceed to consider whether [Ms. Rooks] met her burden of showing pretext." Fuka, 82 F.3d at 1404.

[*10]

n4 At her deposition, Ms. Wiseman testified that she considered Ms. Johnson and Ms. Vroman to be the best candidates according to her performance criteria:

> Q: Miss Wiseman, why did you not select Carolyn Rooks for the position of Associate Executive Director?
>
> A: I felt that the other two were stronger people for the jobs because of the -- I felt in areas of getting along well with volunteers, respect from volunteers, ability to deal with change and uncertainty, interpersonal skills, supervisory skills, that the other two were stronger.

(R. 29, Ex. A, Dep. of Brooke Wiseman of 7/6/95, at 51-52.)

The parties agree that the issue on appeal is whether Ms. Rooks has met her burden of showing that the Girl Scouts's proffered reasons for not promoting her were mere pretext. She may meet her burden either directly by showing that a discriminatory reason likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence. Mills v. First Federal Savings & Loan Ass'n of Belvidere, 83 F.3d 833, 845 (7th Cir. 1996); Sample, [*11] 61 F.3d at 547.

Case 1:05-cv-00697-MPT    Document 46-7    Filed 09/06/2006    Page 3 of 11

1996 U.S. App. LEXIS 20389, *; 71 Fair Empl. Prac. Cas. (BNA) 736

Because Ms. Rooks offered no direct evidence of discrimination, we must determine whether she has produced evidence from which a reasonable juror could infer that the Girl Scouts "lied," Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1124 (7th Cir. 1994), or gave a "phony reason" about its proffered business reason for not promoting her. Mills, 83 F.3d at 845.

Ms. Rooks produced no such evidence. Her sole argument is that her work history n5 and job performance reviews (some of which date back to 1965) n6 render her the best qualified candidate for the position of Associate Executive Director. She points out, for instance, that she has had more varied work experience and a longer tenure with the Girl Scouts than either Ms. Johnson or Ms. Vroman. The Girl Scouts, however, submitted credible evidence that the decision to promote Ms. Johnson and Ms. Vroman instead of Ms. Rooks stemmed from Ms. Wiseman's belief that the promoted women were stronger candidates. Ms. Rooks counters that she was performing at a level equal to or greater than other employees similarly situated. Self-serving assertions, however, are generally insufficient to raise a question of [*12] fact. Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1460 (7th Cir. 1994); see also Gustovich v. AT & T Communications, Inc., 972 F.2d 845, 848 (7th Cir. 1992) ("An employee's self-serving statements about his ability . . . are insufficient to contradict an employer's negative assessment of that ability."). "Employers may act for many reasons, good and bad; they may err in evaluating employees' strengths; unless they act for a forbidden reason, these errors (more properly, differences in assessment) do not matter." Kuhn v. Ball State Univ., 78 F.3d 330, 332 (7th Cir. 1996). As we have noted on many occasions, this court does not "'sit as a super-personnel department that reexamines an entity's business decisions.'" Mills, 83 F.3d at 846 (quoting Sample, 61 F.3d at 551).

n5 The work history that Rooks asks us to consider includes service as Director of Field Operations for the Girl Scouts of Chicago (1987-91), Division Director of Girl Scouts of Chicago (1979-87), Vice President of Administration of the Chicago Urban League (1976-77), Special Assistant to the President of the Chicago Urban League (1975-76), Associate Director of the National Medical Association (1973-75), and Membership Advisor/Area Director/Field Coordinator/Field Advisor to the Girl Scouts (1965-73).

[*13]

n6 Rooks argues that Ms. Wiseman's decision not to consider Rooks' job performance reviews before March 1992, when Ms. Wiseman became the Girl Scouts's Executive Director, is pretextual. However, Rooks presented no evidence that Ms. Wiseman considered the pre-1992 performance reviews for any of the candidates. Indeed, all of the candidates were evaluated according to the same six factors. Judge Kocoras properly observed that the performance factors selected by Ms. Wiseman were entirely defensible: "Neither the Plaintiff nor this Court can second guess the factors that Ms. Wiseman utilized in making her decision." Memorandum Opinion of Sept. 20, 1995, at 16. See Palucki v. Sears, Roebuck and Co., 879 F.2d 1568, 1571 (7th Cir. 1989) ("An employer can set whatever performance standards he wants, provided they are not a mask for discrimination on forbidden grounds such as race or age.").

Nothing in the record suggests that the Girl Scouts refused to promote her because of her race or her age. The undisputed evidence establishes that of the two women selected for promotion, one (Ms. Johnson) was [*14] the same race and in the same protected age category as Ms. Rooks. The undisputed evidence also shows that the June 1993 job performance ratings of the two promoted individuals surpassed those of the remaining candidates, including Ms. Rooks. Moreover, there can be no compelling inference of age discrimination because Ms. Wiseman herself is also in the protected age group. See Marlow v. Office of Court Admin. of New York, 820 F. Supp. 753, 757 (S.D.N.Y. 1993) ("if decisionmaker is in same protected class as plaintiff, claims of discrimination become less plausible"), aff'd, 22 F.3d 1091 (2d Cir.), cert. denied, 130 L. Ed. 2d 173, 115 S. Ct. 252 (1994). Ms. Rooks is unable to carry her burden of showing that the Girl Scouts's reasons for not promoting her were pretextual.

Finally, the Girl Scouts asks us to sanction Ms. Rooks under Federal Rule of Appellate Procedure 38 for filing a frivolous appeal. n7 Under Rule 38, sanctions are justified "when the result is obvious or when the appellant's argument is wholly without merit." Ashkin v. Time Warner Cable Co., 52 F.3d 140, 146 (7th Cir. 1995) (internal quotations and citations omitted). Because we do not regard this [*15] appeal to be frivolous, we decline the invitation to impose Rule 38 sanctions.

n7 The Girl Scouts also complain that the "dilatory" manner in which Ms. Rooks filed her opening brief reflects bad faith and suggests that

Case 1:05-cv-00697-MPT    Document 46-7    Filed 09/06/2006    Page 4 of 11

1996 U.S. App. LEXIS 20389, *; 71 Fair Empl. Prac. Cas. (BNA) 736

she brought this appeal without any reasonable expectation of overturning the district court's judgment. Although Ms. Rooks did miss two filing deadlines (which prompted this court to issue separate orders directing her to show cause why the appeal should not be dismissed for lack of prosecution), a motions panel of this court twice suspended its Rule to Show Cause pending the timely filing of a brief by Ms. Rooks. When Ms. Rooks eventually filed her opening brief on March 8, 1996, the filing was made before the briefing deadline set by this court.

## CONCLUSION

We agree with the district court that the evidence is insufficient to support an inference of age or race discrimination. The judgment of the district court is AFFIRMED. The Girl Scouts's request for Rule 38 sanctions is DENIED.

LEXSEE

SHARON SMITH, Plaintiff v. PHOENIX CARDIOVASCULAR, INC., Defendant.

Case No. 4:04cv937

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

2005 U.S. Dist. LEXIS 33545

July 19, 2005, Decided
July 19, 2005, Filed

**COUNSEL:** [*1] For Parole Counselor Sharon Smith, Plaintiff: David Paul Tomaszewski, Borland and Borland, L.L.P, Wilkes-Barre, PA; Kimberly D. Borland, Borland & Borland, Wilkes-Barre, PA.

For Phoenix Cardiovascular, Inc., Defendant: Craig J. Fleischmann, Kraut Harris, P.C., Blue Bell, PA; David Kraut, Kraut, Harris, Maliszewski & Barlow, PC, Blue Bell, PA.

**JUDGES:** John E. Jones III, United States District Judge.

**OPINIONBY:** John E. Jones III

**OPINION:**

### MEMORANDUM AND ORDER

### THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Pending before the Court is a Motion for Summary Judgment (doc. 19) ("the Motion"), filed by Defendant Phoenix Cardiovascular, Inc. ("Defendant" or "PCI") on April 7, 2005. For the reasons that follow, the Motion will be granted.

### PROCEDURAL HISTORY:

Plaintiff Sharon Smith ("Plaintiff" or "Smith") initiated this action by filing a complaint in the United States District Court for the Middle District of Pennsylvania on April 28, 2004. (See Rec. Doc. 1). The Complaint is set forth in two counts and was filed pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Pennsylvania Human Relations Act ("PHRA"), [*2] 43 P.S. § 955(a). Count I of the complaint asserts a violation of the ADEA and Count II asserts a violation of the PHRA.

The Motion pending before the Court, filed on April 7, 2005, has been fully briefed and is ripe for disposition.

### STANDARD OF REVIEW:

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial." Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992). Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could draw from them. See Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corporation v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). [*3] This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. See id. at 325.

Rule 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. See Celotex, 477 U.S. at 322-23 (1986). It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact."

Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted). However, all inferences "should be drawn in the light most favorable to the non-moving [*4] party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992)(citations omitted).

**STATEMENT OF RELEVANT FACTS:**

We initially note that we will, where necessary, view the facts and all inferences to be drawn therefrom, in the light most favorable to the nonmoving party, the Plaintiff, in our analysis of the pending Motion.

Smith is a white female who was born on April 22, 1957 and began employment with PCI on June 26, 2000. Smith was employed as a site administrator for PCI at its vascular lab at Mercy Hospital in Scranton, Pennsylvania. Smith's immediate supervisor was Elizabeth Calpin ("Calpin"), who was Regional Supervisor of Operations from March 2001 until January 2004. Calpin prepared Smith's first performance evaluation, covering the time period of June 26, 2000 to June 26, 2001, in which Smith received 47 out of a possible 50 points. In her second evaluation, covering the time period of June 26, 2001 to June 26, 2002, also prepared by Calpin, Smith received 32.2 out of a possible 50 points. Smith was [*5] terminated on either September 26, 2002 or September 27, 2002. n1 At the time of Smith's termination, five of the six site administrators in the Pennsylvania region were older than 40 years of age. Two were older than Smith and one was one month younger than Smith. After Smith was terminated, Audra Kaspriski ("Kaspriski") replaced her, who was 32 years of age at the time.

n1 Although the parties dispute Smith's date of termination, resolution of this issue is not material to the outcome of the Motion.

On October 20, 2003, the Pennsylvania Human Relations Commission ("PHRC") issued a finding of no probable cause of discrimination. The PHRC found that Plaintiff was selected for discharge based upon poor performance and not age. (See Rec. Doc. 19, Ex. M).

**DISCUSSION:**

We preliminarily note that the Third Circuit Court of Appeals has explained that in an employment discrimination case, "a trial court must be cautious about granting summary judgment to an employer when...intent is at issue." Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 321 (3d Cir. 2000) [*6] (citing Gallo v. Prudential Residential Services Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)). Therefore, notwithstanding the non-moving party's burden, the Third Circuit urges special caution about granting summary judgment to an employer when its intent is at issue, particularly in discrimination cases. See Gerhart v. Boyertown Area Sch. Dist., 2002 U.S. Dist. LEXIS 11935, * 19 (E.D. Pa. 2002).

Plaintiff asserts that Defendant violated the ADEA and the PHRA. The ADEA makes it "unlawful for an employer...to fail to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Tyrrell v. City of Scranton, 134 F.Supp.2d 373, 377 (M.D. Pa. 2001)(citing 29 U.S.C. § 623(a)(1)). Similarly, the PHRA prohibits employment discrimination on the basis of enumerated personal characteristics, including age. Id. (citing 43 P.S. § 954(a)). "Because Title VII, the ADEA, and the PHRA have similar purposes and contain parallel provisions, courts use judicial interpretations [*7] of Title VII to interpret the ADEA, and in turn use interpretations of both federal statutes in interpreting the PHRA." Id. (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996)); see also Connors v. Chrysler Financial Corp., 160 F.3d 971, 972 (3d Cir. 1998)("There is no need to differentiate between Connors's [sic] ADEA and PHRA claims because, for our purposes, the same analysis is used for both.").

To prevail on an ADEA termination claim, a plaintiff must show that his or her age "actually motivated" and "had a determinative influence on" the employer's decision to fire him or her. Fakete v. Aetna, Inc., 308 F.3d 335, 337-38 (3d Cir. 2002)(citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993)). An ADEA plaintiff can meet this burden by (1) presenting direct evidence of discrimination, or (2) presenting indirect evidence of discrimination that satisfies the familiar three-step framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See id. (citing Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) [*8] (en banc)).

We will address direct evidence cases of discrimination and indirect evidence cases of discrimination in turn.

**A. Direct Evidence of Discrimination**

The Supreme Court has instructed that in a direct evidence case, the plaintiff must product "direct evidence that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." Duffy v. Barnhart, 2002 U.S. Dist. LEXIS 15575, 2002 WL 1933236, *1 (E.D. Pa. 2002)(quoting Price

Waterhouse v. Hopkins, 490 U.S. 228, 277, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)). For purposes of the Price Waterhouse test, evidence must be sufficient to allow the jury to find that the decision makers placed a substantial negative reliance on Plaintiff's age in reaching their decision, which means that Plaintiff must produce evidence of discriminatory attitudes about age that were causally related to the decision to fire her. Glanzman v. Metropolitan Management Corp., 391 F.3d 506, 2004 WL 2861166, *5 (3d Cir. 2004).

Plaintiff asserts that substantial questions of material fact exist as to every reason given for her termination, with substantial evidence inferring that age discrimination motivated her termination. [*9] (Pl.'s Br. Opp. Def.'s Mot. Summ. J. at 15). "Such inconsistencies infer that none of the reasons are credible, with the real motivation for termination being age." Id. at 1. Defendant argues that there is no evidence of direct discriminatory conduct and points out that Plaintiff admitted that she has no direct evidence of discrimination in her deposition. (See Rec. Doc. 19, Ex. I (Smith depo.) at 66). Moreover, Defendant maintains that Plaintiff has come forward with no documentary or testimonial evidence, other than her own subjective beliefs, that the decision makers at PCI placed substantial negative reliance on an illegitimate criterion, her age, in reaching its decision. Id. at 64; see also Def.'s Br. Supp. Mot. Summ. J. at 8-9.

We are in agreement with Defendant and conclude that Plaintiff has failed to provide the evidence necessary to support the direct evidence theory of discrimination. Additionally, we note that in Plaintiff's deposition, in response to the question, "Did any one ever make disparaging comments concerning your age," Plaintiff responded in the negative. (See Rec. Doc. 19, Ex. I at 66). As Plaintiff has come forward with no evidence of [*10] direct discriminatory conduct or statements of the kind necessary to trigger the direct evidence theory, Defendant's Motion is granted with respect to that theory.

### B. Indirect Evidence of Discrimination

A plaintiff is able to prove discrimination by circumstantial evidence, in the absence of, or in addition to, direct evidence of discrimination pursuant to the McDonnell Douglas burden-shifting analysis. Under the above-referenced McDonnell Douglas burden-shifting analysis, the plaintiff must first produce sufficient evidence to convince a reasonable factfinder of all the elements of a prima facie case of discrimination. Duffy, 2002 U.S. Dist. LEXIS 15575, 2002 WL 1933236, *1 (citing Reeves, 530 U.S. at 142). Once the plaintiff satisfies this requirement, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment decision. Id. The defendant bears the burden of production, not persuasion. If and when the defendant satisfies this burden, the presumption of discrimination created by the presentation of a prima facie case "drops out of the picture." Duffy, 2002 U.S. Dist. LEXIS 15575, 2002 WL 1933236, *1 (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)). [*11] Plaintiff must then submit evidence from which a factfinder could find that the defendant's allegedly legitimate reason was a pretext for discrimination. "In order to demonstrate pretext, the Plaintiff must convince the factfinder that the defendant's articulated legitimate reasons were false and an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Duffy, 2002 U.S. Dist. LEXIS 15575, 2002 WL 1933236, *1 (citing Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).

To prove a prime facie case of discrimination, Plaintiff must establish the following, that: (1) she is over 40 years old; (2) she is qualified for the position in question; (3) she suffered an adverse employment decision; and (4) her replacement was sufficiently younger to permit an inference of age discrimination. Joseph v. First Judicial Dist. of Pa., 1999 U.S. Dist. LEXIS 888, 1999 WL 79056, *3 (E.D. Pa. 1999). The Third Circuit Court of Appeals has instructed that in a reduction in force ("RIF") case, the fourth element is satisfied by showing that the employer retained a "sufficiently younger" employee who was "similarly situated" to the plaintiff. Anderson v. Consolidated Rail Corp., 297 F.3d 242, 249-50 (3d Cir. 2002). [*12]

Drawing all necessary inferences in the light most favorable to the Plaintiff, Defendant states that it concedes that Plaintiff has made out a prima facie case of discrimination. (See Def.'s Br. Supp. Mot. Summ. J. at 10). We therefore conclude that Plaintiff has satisfied her burden of establishing a prima facie case of discrimination and the burden shifts to Defendant to offer adequate evidence of a legitimate, non-discriminatory reason for its action. Connors, 160 F.3d at 974 n.2 (citing Keller, 130 F.3d at 1108).

We initially note that Defendant asserts that it has articulated legitimate non-discriminatory reasons for Smith's lay-off. PCI argues that it decided to reduce the number of site administrators by one and made the decision to terminate Smith's employment because the Mercy Scranton site, for which Plaintiff was responsible, had significantly higher billing error rates than any other site, and because of her lower evaluation scores relative to her peers. (Def.'s Br. Supp. Mot. Summ. J. at 10-11).

As previously stated, Smith argues that numerous questions of material fact exist as to the reasons for her termination proffered by PCI [*13] which require that the Motion be denied. (Pl.'s Br. Opp. Def.'s Mot. Summ.

J. at 8). Additionally, Smith asserts that while this supports the inference of age discrimination as the basis of her termination, PCI's own conduct in more favorably treating younger employees similarly situated to her, as well as failing to follow its own employment policies with regard to any allegations of poor performance, further support that she was discriminated against solely because of her age. Id. at 14-15.

For the reasons that follow, we find that a RIF is a legitimate non-discriminatory reason for laying off an employee and that Plaintiff has failed to submit evidence from which a factfinder can determine that Defendant's legitimate reasons given for Plaintiff's termination were pretextual. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1280-81 (9th Cir. 2000); Fuentes, 32 F.3d at 763.

After a careful review of the record, we are in agreement with Defendant's categorization of Plaintiff's purported genuine issues of material fact, which can be summarized as follows:

> 1. Kaspriski was less qualified than Smith, and therefore should have been terminated [*14] instead of Smith.
>
> 2. There is a significant disparity between the positions of "floating site administrator" and "site administrator."
>
> 3. Smith was not terminated as part of a RIF.
>
> 4. PCI used illegitimate criteria in deciding to terminate Smith.

Def.'s Reply Br. Supp. Mot. Summ. J. at 2. We will discuss Plaintiff's alleged purported genuine issues of material fact in turn.

First, Smith argues that a genuine issue of material fact exists regarding Kaspriski and whether Smith should have been retained instead of Kaspriski. Smith contends that she trained Kaspriski, who was 32 years of age at the time and was not terminated, that she had more seniority than Kapriski, and therefore that Kaspriski should have been laid-off instead of Smith. We are in agreement with Defendant that Smith's contention is misplaced because the ADEA is not a "bumping statute." Accordingly, a "plaintiff cannot prevail merely by pointing to other positions for which [she] was qualified and claim that the employer should have allowed [her] to 'bump' the occupant of that position." Anderson, 297 F.3d at 250 (quoting Shalka v. Fernald Environmental Restoration Management, 178 F.3d 414, 421 (6th Cir. 1999)). [*15] In addition, as Defendant submits, a court "does not sit as a super-personnel department that reexamines an entity's business decisions." McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 373 (7th Cir. 1992). Moreover, the record reflects that Kaspriski was well-qualified for the position and that her performance score on her 2002 evaluation was significantly higher compared to that of Smith's performance score. n2

> n2 We note that Kaspriski's 2002 performance evaluation was 4.58 out of 5, as contrasted to Smith's score of 3.2. Kaspriski outscored Smith in several areas, including, but not limited to quality of work, knowledge of work, job judgment, amount of work, and initiative. (See Rec. Doc. 19, Exs. L, P and S).

Consequently, other than Smith's subjective perception of her own performance compared to Kaspriski's, we find that Smith has no basis to challenge PCI's reliance upon the performance evaluations in aiding its determination to dismiss Smith over Kaspriski. We conclude that [*16] there is no genuine issue of material fact that exists regarding Kaspriski and whether Smith should have been retained instead of Kaspriski.

Second, the issue of whether or not PCI permanently eliminated the "floater" site administrator position is not meaningful to Smith's claim of age discrimination in the case sub judice. Initially we note that a floating site administrator required greater knowledge and flexibility than one assigned to a permanent site and was required to know how to run each of the sites within the region, as opposed to only one. Plaintiff argues that Susan Dorfman ("Dorfman"), Vice President of Operations at the time, stated that it was decided to permanently place the floater site administrator at Plaintiff's location and not to replace the floater position; however, in February 2003 Lori Fiorelli ("Fiorelli"), who was four years younger than Plaintiff, was offered the floater position, despite its supposed permanent elimination. (Pl.'s Br. Opp. Def.'s Mot. Summ. J. at 8-9). Defendant asserts however that permanent elimination of a "floater" position was not part of the consideration as to which site administrator to let go and that Kaspriski continued [*17] to cover for the other sites when there was a need and thus continued to "float" after Smith's termination. (Def.'s Reply Br. at 5). Moreover, Defendant submits that Fiorelli was offered a floater position some time after Smith's termination when PCI lost its contract with Marian, one of the two sites she covered.

Even viewing all inferences in the light most favorable to the Plaintiff, we do not find there to be a genuine issue of material fact as to whether offering the floater

position to Fiorelli five months after Smith's termination, despite the fact that Dorfman stated that it was decided to permanently place the floater site administrator at Plaintiff's location and not to replace the floater position, demonstrates that age discrimination was the reason for Plaintiff's termination.

Third, Plaintiff argues that a genuine issue of material fact exists with regard to whether she was terminated as part of a RIF. Plaintiff contends that the alleged RIF, of which no substantiating documentation exists and which produced none of the intended affects, can be deemed a pretext for her termination considering the fact that the consultant who implemented the reorganization did not recommend [*18] that any site administrator be eliminated. (Pl.'s Br. Opp. Def.'s Mot. Summ. J. At 8-9).

PCI has consistently explained its reasons for termination of Smith. PCI determined that it could reduce its staff by one full-time equivalent site administrator in the region and once that decision was made, Smith was selected among her peers based upon the following two legitimate criteria: her significantly higher billing error rate and the fact that she had the lowest performance evaluation. First, regarding the billing errors, Smith does not dispute that the statistical evidence confirms that the Mercy Scranton site had the highest percentage of billing errors among PCI's Pennsylvania sites, by a factor of approximately 3.5 times over the next highest site for demographic errors, and by approximately 6 times the next highest site for insurance errors. (See Rec. Doc. 19, Ex. R). In her deposition, Smith concedes that the billing errors were much higher at the Mercy Scranton site than at the other sites and testified that she had no basis to dispute the accuracy of the billing error report. Id. at Ex. I, at pp. 81-82. Second, regarding the performance evaluation, Plaintiff failed to [*19] even acknowledge that hers was low and instead testified that her performance was "excellent." Id. at pp. 13-14; see Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 15 (1st Cir. 1998)(explaining that a claimant's "personal opinion regarding his own job qualifications is not sufficiently probative on the issue of pretext"). Additionally, there is no assertion that the evaluation system used by PCI was discriminatory or otherwise flawed and the evaluation was completed in June 2002, at least two months prior to PCI's decision to reduce its force by one. Finally, the fact that Smith was the first individual terminated and that there was no documented "plan" in place regarding future cut-backs with PCI, lends no support to an inference of discrimination in this case.

We therefore find that Smith's termination resulted from PCI's decision that it could operate with one less site administrator in the region and Smith was selected among her peers based upon her performance in comparison with them.

Fourth, Smith argues that a genuine issue of material fact exists regarding whether PCI used illegitimate criteria in deciding to terminate her. Although Plaintiff argues [*20] that PCI failed to follow its employment policies with regard to any allegations of poor performance by Plaintiff and asserts a lack of forewarning that she could be terminated, PCI does not contend that Plaintiff was terminated for misconduct and grants Plaintiff the inference that she was qualified to keep her job. Moreover, as Defendant submits, Smith was an at-will employee, subject to termination at any time, without warning. Despite the fact that some of the issues regarding Smith's difficulties with PCI were eventually corrected once addressed, the totality of her decline in performance, evidenced by the afore-mentioned billing errors and the most recent performance evaluation, led to her termination. Smith has come forward with no evidence to refute this and has produced no evidence to support for claim of discrimination. n3 As Defendant points out and we previously explained, the ADEA protects employees from discrimination on account of their age, it does not guarantee a job to those in the protected class and the ADEA is not a "bumping statute," requiring employers to bump younger workers from their jobs to protect the positions of older workers. Anderson, 297 F.3d at 249. [*21]

n3 Instead of challenging the figures, Smith attempts to blame others at the Mercy Scranton site who were allegedly responsible for the errors. Although PCI does not dispute that others at Mercy Scranton possibly contributed to the high error rate, the fact remains that Smith was responsible for checking and correcting the errors made by others on her next working day. (See Rec. Doc. 19, Ex. F, at pp. 55, 81-82; see also Ex. I, at pg. 134). Plaintiff's job description expressly provided that she was to "Correctly complete and enter all billing information for each patient." (See Rec. Doc. 19, Ex. K). Moreover, as Defendant submits, the Mercy Scranton error rate dramatically decreased subsequent to Smith's termination, when Kaspriski took over primary responsibility for administering the site. (See Rec. Doc. 19, Ex. H).

Although Smith contends that the billing error metric was unfair since the Marian and Tyler Memorial Hospital sites were not considered, this ignores the uncontradicted evidence that the decision over whom to eliminate boiled down to a choice by PCI between Plaintiff and the Moses-Taylor administrator, Joann Artabane ("Artabane") and the deciding factor was the number of billing errors. Additionally, we note that as the PHRC found in an investigation of this case, the

billing at Tyler was performed by hospital personnel, so PCI would not have the data to create billing error statistics at that site and while it is accurate that there were no statistics for Marian, covered by Fiorelli, PCI was confident that the numbers were low based upon the close supervision and participation in running that site by the physician, Dr. Larkin. (See Rec. Doc. 19, Ex. E). We therefore find no merit to Plaintiff's contention that the billing error metric was unfair.

[*22]

Therefore, we conclude that RIF is a legitimate non-discriminatory reason for laying off an employee and that Plaintiff has failed to submit evidence from which a factfinder can find that Defendant's legitimate reasons given for Plaintiff's termination were pretextual. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1280-81 (9th Cir. 2000); Fuentes, 32 F.3d at 763. Plaintiff's claim of age discrimination therefore fails and Defendant's Motion for Summary Judgment is granted.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Defendant's Motion for Summary Judgment (doc. 19) is GRANTED.

    a. Defendant's Motion is granted with respect to Plaintiff's direct evidence theory of discrimination.

    b. Defendant's Motion is granted with respect to Plaintiff's indirect evidence theory of discrimination.

2. The Clerk shall close the file on this case.

John E. Jones III

United States District Judge

Westlaw.

Slip Copy
Slip Copy, 2006 WL 897978 (D.Or.)
(Cite as: Slip Copy)

Page 1

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Oregon.
Andre SPEED, Plaintiff,
v.
ADIDAS AMERICA, INC., a Delaware corporation, Defendant.
No. 04-CV-1430-PK.

April 6, 2006.

Craig A. Crispin, Crispin Employment Lawyers, Portland, OR, for Plaintiff.
Joseph Vance, Carol Noonan, Davis Wright Tremaine, LLP, Portland, OR, for Defendant.

ORDER
BROWN, J.
*1 Magistrate Judge Paul Papak issued Findings and Recommendation (# 46) on February 16, 2006, in which he recommended the Court grant Defendant's Motion for Summary Judgment (# 17) and dismiss this matter with prejudice. Plaintiff Andre Speed filed timely objections to the Findings and Recommendation. The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b).

When any party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report. 28 U.S.C. § 636(b)(1). *See also United States v. Bernhardt*, 840 F.2d 1441, 1444 (9th Cir.1988); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.*, 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied,* 455 U.S. 920 (1982). Because the objecting party did not arrange for the transcription of the record pursuant to Fed.R.Civ.P. 72(b) nor did any party protest the lack of a transcript, the Court did not review a transcript or tape recording of the proceedings before the Magistrate Judge as part of the Court's *de novo* review. *See Spaulding v. Univ. of Wash.*, 686 F.2d 1232, 1235 (9th Cir.1982).

This Court has reviewed the pertinent portions of the record *de novo* and does not find any error in the Magistrate Judge's Findings and Recommendation.

CONCLUSION

The Court ADOPTS Magistrate Judge Papak's Findings and Recommendation (# 46). Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment (# 17) and DISMISSES this matter with prejudice.

IT IS SO ORDERED.

FINDINGS AND RECOMMENDATION
PAPAK, Magistrate J.
Plaintiff is a former employee of defendant. Plaintiff filed this action for race discrimination under 42 U.S.C. § 1981, 42 U.S.C. § 2000e-2 ("Title VII"), and ORS § 659A.030, for retaliation under 42 U.S.C. § 2000e-3 and ORS § 659A.030, for violation of the Family Medical Leave Act, 29 U.S.C. § 2615 ("FMLA") and the Oregon Family Leave Act, ORS § 659A.150-659A.186 ("OFLA"), and for wrongful discharge. This court has jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and over the state claims pursuant to 28 U.S.C. § 1367. Defendant has moved for summary judgment on all claims. Oral argument on this motion was heard on December 15, 2005. For the reasons set forth below, the court recommends granting defendant's motion as to all of plaintiff's claims.

SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *Bahn v. NME Hospitals, Inc.*, 929 F.2d 1404, 1409 (9th Cir.1991).

The moving party carries the initial burden of proof. The party meets this burden by identifying portions of the record on file which demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the nonmoving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.