Slip Copy
Slip Copy, 2006 WL 897978 (D.Or.)
**(Cite as: Slip Copy)**

Page 2

*2 The court must view the evidence in the light most favorable to the non-moving party. *Bell v. Cameron Meadows Land Co.,* 669 F.2d 1278, 1284 (9th Cir.1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valadingham v. Bojorquez,* 866 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. America.,* 638 F.2d 136, 140 (9th Cir.1981).

The Ninth Circuit has set a high standard for granting summary judgment in employment discrimination cases. *Schindrig v. Columbia Machine, Inc.,* 80 F3d 1406, 1410 (9th Cir.), *cert. denied,* 117 S.Ct. 295 (1996) (holding that courts should require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can be resolved only through a searching inquiry that is most appropriately conducted by the fact-finder, upon a full record).

However, deference to the non-moving party does have some limit. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Self-serving affidavits will not establish a genuine issue of material fact if they fail to state facts based on personal knowledge or are too conclusory. *Rodriguez v. Airborne Express,* 265 F.3d 890, 902 (9th Cir.2001). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

FACTS

Because all material facts must be viewed in the light most favorable to the non-movant, this court will view the evidence in the light most favorable to the plaintiff. A review of the parties' submissions, including affidavits, deposition excerpts, and exhibits reveals the following material facts.

Andre Speed, an African American male, was hired by defendant, adidas, in approximately August 1999 to work part-time in sales and stock at an adidas retail store. The following year in approximately March 2000, Speed applied for and was awarded a promotion to a position as an Office Services Attendant at adidas' headquarters. In approximately January 2002, Speed requested and was granted a transfer to an Office Services position with adidas International.

After he began working at adidas' headquarters, Speed applied for eight positions during his employment and was awarded one of those positions, as a T-shirt Development Coordinator. However, Speed declined the position and continued to apply for others. All of the other positions for which he applied involved marketing and product development. Speed, however, had no significant experience in marketing or product development. He did not graduate from high school but did receive a GED, and has never taken any college or business classes. The candidate ultimately chosen for each position for which Speed applied had some combination of secondary education and/or extensive experience in marketing and product development. At least one of the positions for which he applied was awarded to an African American.

*3 Throughout his employment with adidas, Speed was candid and verbose on his views about racism, sexism and discrimination within adidas in discussions with his co-workers. Speed's first comment about racial disparity occurred in 1999 before his initial promotion to adidas' headquarters. Speed was not discouraged from making these comments and no one at adidas responded inappropriately or appeared to be upset by his frequent discussion of what he perceived as racial discrimination at adidas. After Speed sent an email addressing some of his concerns about racial discrimination to the head of Global Operations for adidas on June 12, 2003, adidas responded by interviewing Speed about his concerns.

Speed was involved in a car accident on or about February 20, 2003. He experienced back pain as a result and sought treatment from a chiropractor. During March and April of 2003, Speed presented his supervisor with three medical releases. The first, dated March 11, 2003, released him from work from March 10-15, 2003. The second, dated March 17, 2003, authorized him to return to work on that day but do no heavy lifting (over 25 pounds) or overhead lifting. The third, dated April 23, 2003, increased the amount he could lift to 50 pounds. Speed did not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

provide his supervisor or anyone else at adidas with any other medical releases until the day of his termination nearly three months later. Speed requested and received paperwork from adidas concerning FMLA leave but did not fill out the paperwork because he ultimately decided he did not want to request the leave.

The employee handbook provided by adidas to Speed contained an attendance policy that included the requirements of on-time attendance, notifying a supervisor if an employee would be late or unable to work that day, and calling in each day an employee is absent from work unless other arrangements are made. Speed understood that on-time attendance was necessary and that tardiness and poor attendance could lead to disciplinary action including termination. He had been warned by his supervisor on June 26, 2003, that he needed to call in on days when he would not be able to come to work.

Speed missed at least twenty-one days of work and was tardy at least thirteen times between January 1, 2003 and July 16, 2003. He had an additional seven absences that were related to his back injury and were not considered as part of plaintiff's overall attendance record. Some of Speed's absences were due to the following: inability to procure childcare (4 days); not feeling well (2 days); just needing to take time off (3 days); and days when he left for lunch, did not return to work and failed to notify anyone (2 days). In early July, Speed missed a day of work to take his former girlfriend to a medical appointment (Monday, July 7), and subsequently missed two more days of work to care for her and their young daughter (Wednesday and Thursday, July 9 and 10). Speed missed the next three work days without calling his supervisor to report in (Friday, July 11; Monday and Tuesday, July 14 and 15). For many days that he was absent Speed cannot identify what caused his absence or in what activities he engaged. While Speed claims that some of his absences were due to his medical condition arising from his February automobile accident, he can not identify which days he was absent due to that condition.

*4 Speed's supervisor decided to terminate his employment for the stated reason of excessive absenteeism on the morning of Wednesday July 16, 2003. Speed had failed to report for work or call in the previous Friday, Monday and Tuesday, and had been absent to care for his former girlfriend and their daughter the previous Wednesday and Thursday. Over the weekend in between his absences, Speed went to adidas for some number of hours on Saturday and Sunday to download music from the internet to compact discs. At or around 10 a.m. on July 16, 2003, Speed phoned his supervisor and informed him that he was going to the doctor and would be in around noon. In spite of the doctor's appointment, Speed described his need for time off that day "to deal with things." When Speed arrived at adidas around 3 p.m. he was told that his employment had been terminated due to excessive absenteeism. Speed presented his supervisor with a form from the doctor at that point indicating that plaintiff could return to work that day, July 16, with no restrictions. The form did not mention any other dates or any medical condition. Speed subsequently expressed the belief that his supervisor was not racist in any way. Speed dep. 56:3-5. Speed filed administrative complaints with the Oregon Bureau of Labor and Industries and with the Equal Employment Opportunity Commission such that he has exhausted his administrative remedies. Speed filed his complaint with this court in October 2004.

DISCUSSION

*Disparate Treatment*

Speed contends that adidas denied him promotions and ultimately terminated him based on race in violation of 42 U.S.C. § 1981 ("section 1981"), 42 U.S.C. § 2000e-2 ("Title VII") and ORS § 659A.030. In employment discrimination cases, the scope of section 1981 and Title VII are coextensive. *Judie v. Hamilton*, 872 F.2d 919, 922 (9th Cir.1989) (citing *Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1412 (9th Cir.1987)). Oregon's standard for establishing race discrimination is identical to that under federal law. *Jamal v. Wilshire Mgmt. Leasing Corp.*, 320 F.Supp.2d 1060, 1069 (D.Or.2004) (citing *Henderson v. Jantzen, Inc.*, 79 Or.App. 654, 657, 719 P.2d 1322 (1986)). Therefore, all of Speed's race discrimination claims will be considered together.

In a disparate treatment case, the court applies the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973):
[A] plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                               Page 4
Slip Copy, 2006 WL 897978 (D.Or.)
**(Cite as: Slip Copy)**

discriminatory.

See _Jurado_, 813 F.2d 1406, 1409 (citations omitted).

An individual is subject to disparate treatment when he is singled out or treated less favorably than others similarly situated because of his race, gender, and/or national origin. _Gay v. Waiters' and Dairy Lunchmen's Union_, 694 F.2d 531, 537 (9th Cir.1982). A prima facie case can be established through direct evidence of intentional discrimination or circumstantial evidence that creates an inference that the employer's conduct was more likely than not motivated by discrimination. _Nanty v. Barrows Co._, 660 F.2d 1327, 1331 (9th Cir.1981).

A. Termination

*5 To establish a prima facie case of disparate treatment through circumstantial evidence, the plaintiff must show that: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subjected to an adverse employment decision; and (4) similarly situated individuals outside the employee's protected class received more favorable treatment. _Aragon v. Republic Silver State Disposal, Inc._, 292 F.3d 654, 658 (9th Cir.2002).

After the plaintiff has presented his prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. _Wallis v. J.R. Simplot Co._, 26 F.3d 885, 889 (9th Cir.1994). If the employer is able to meet this burden, the burden of production then shifts back to the plaintiff to show that the employer's reason was a pretext for discrimination. _Id._ at 890.

A plaintiff may show pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is "unworthy of credence" because it is internally inconsistent or otherwise not believable; or (2) directly, by showing that unlawful discrimination more likely motivated the employer. _Chuang v. Univ. of Calif. Davis, Bd. of Trustees_, 225 F.3d 1115, 1124 (9th Cir.2000). Plaintiff needs to produce "very little" discreet evidence of discriminatory motive to withstand a motion for summary judgment. _Godwin v. Hunt Wesson, Inc._, 150 F.3d 1217, 1220 (9th Cir.1998). On the other hand, plaintiff must make a more "specific and substantial" showing of pretext when relying upon circumstantial evidence. _Id._ at 1222.

Speed argues that adidas discriminated against him based on his race by terminating him. As Speed has failed to provide any direct evidence of discriminatory intent, the court will consider the factors laid out above to determine whether there is an inference of discrimination. The first three factors are not in dispute: Speed belongs to a protected class, was qualified for his position, and was subject to an adverse employment action, i.e. termination. This court finds, however, that Speed is unable to meet the fourth prong: he has presented no evidence that similarly situated individuals outside his protected class received more favorable treatment. By way of definition, "individuals are similarly situated when they have similar jobs and display similar conduct." _Vasquez v. County of Los Angeles_, 349 F.3d 634, 641 (9th Cir.2004) (citing _Ward v. Procter & Gamble Paper Prods. Co._, 111 F.3d 558, 560-61 (8th Cir.1997)). Because Speed is unable to identify any individuals at adidas who had the same attendance record he had and were not terminated, he fails to make his case.

Even if Speed could identify similarly situated individuals outside the protected class who received more favorable treatment, his claim that his termination was racially discriminatory would fail to survive summary judgment, as discussed below, because adidas has proffered a legitimate, non-discriminatory basis for termination and Speed fails to establish a material question of fact as to pretext. _See Vasquez_, 349 F.3d at 641 (explaining that even if plaintiff can make out a prima facie case [which the court did not decide], he cannot establish that the defendant's non-discriminatory reason for the employment action was pretextual); _see also Villiarimo v. Aloha Island Air, Inc._, 281 F.3d 1054, 1062-63 (9th Cir.2002).

*6 adidas asserts that plaintiff was terminated based on his absenteeism and failure to follow the attendance policy laid out for all adidas employees. If factually supported, this constitutes a legitimate, non-discriminatory reason for Speed's termination. _See Harris v. Warehouse Services, Inc._, 77 F.Supp.2d 1240, 1249 (M.D.Ala.1999).

Speed's attendance record was extremely poor and he failed to adhere to adidas' attendance policy. The adidas attendance policy requires employees to provide a supervisor with notice when they will be absent or tardy, and generally to be at work during work days unless arrangements are made otherwise. This policy applies to all employees. Without reiterating the lengthy description laid out above, Speed was absent from work for twenty-one days and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 897978 (D.Or.)
**(Cite as: Slip Copy)**

Page 5

was tardy thirteen times between January 1 and July 16, 2003. On some occasions he would leave work without notifying his supervisor, Gordon Hewitt, and on some occasions he would not call in to say he would be absent. Speed was absent from work for six of the previous seven workdays prior to the day he was terminated, and he failed to call in for three of those days, the three days prior to the day his supervisor made the decision to terminate his employment.

Speed could not do his job unless he was physically present at his place of employment. Speed's job responsibilities included delivering mail around the adidas facility from a mail cart on a daily basis. Speed was aware that he could not do his job if he was not at work and that disciplinary action including termination could result from excessive absenteeism. Speed alleges that adidas' attendance policy was not known to Mr. Hewitt or followed in Speed's department. Speed fails to provide sufficient evidence for this assertion. The attendance records kept by Mr. Hewitt and the fact that Mr. Hewitt had discussed attendance problems with Speed prior to his termination make Speed's assertions untenable. Simply because adidas had a flexible time-off policy and his supervisor was understanding about unexpected delays and absences from time to time does not mean they did not adhere to the attendance policy or condoned unreasonably frequent absences as Speed argues. Because adidas has provided a legitimate, non-discriminatory reason for its action to terminate Speed, the burden now shifts back to Speed to show that his termination was a pretext for discrimination.

In this circuit, "[t]o show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Vasquez,* 349 F.3d at 642 (citations omitted); *see also Goodwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1221-22 (9th Cir.1998). Here, Speed offers only general statements to support his claim that he was the victim of racial discrimination during his employment at adidas. His communications with superiors at adidas were complaints of generalized discrimination, racism, and a lack of racial diversity in the management ranks of the company. He decried the use of African American culture to make money for adidas without giving credit to African Americans or offering opportunities for African Americans to thrive at adidas. When he received responses in person or via email from his supervisor and from others in management positions within adidas, none of them displayed racial animus. None of these instances of communication are sufficient to establish a pretext of discrimination. Also, adidas assigned an employee to interview Speed as to his generalized complaints after one of his emails to management in an attempt to address his grievances. [FN1]

> FN1. Plaintiff alleges that this interview was pro forma and that defendant had no real interest in his complaints as to discrimination at adidas. However, plaintiff provides no evidence for the assertion that the interview was not intended to address his grievances or to provide an opportunity for communication on the subject of plaintiff's ongoing complaints.

*7 Speed also cites to general remarks made by other adidas employees as evidence of racism. Speed alleges that these comments establish discriminatory inferences. The comments from individuals in defendant's Human Resources department relate to Speed's requests for exemptions from tax withholdings for which he did not qualify, signing his name "without prejudice" on documents in some effort to preserve his legal rights, and an email he sent in November 2002, well before Speed's email to the head of Global Operations. None of the responses to Speed's actions bear evidence of racial discrimination. While Speed attempts to cobble these actions together to show a pattern of discrimination, the results are unconvincing. Speed was outspoken on certain issues and undoubtedly some staff members at adidas did not find his political views compelling but none of their responses raises the specter of racial bias. In the employment discrimination context, direct evidence of pretext usually consists of statements by managers or higher-level managers that betray some discriminatory intent. When a plaintiff instead must rely on circumstantial evidence, that evidence must be "specific and substantial." *Godwin,* 150 F.3d 1217, 1222. Speed fails to meet this standard.

Speed fails to show that the rationale for his termination was pretextual. The decision to terminate Speed came from his supervisor, Mr. Hewitt. Speed asserted in deposition that he does not consider Mr. Hewitt to be racist and expressed respect for his supervisor's attitude and work ethic. Mr. Hewitt made the decision to promote Speed from retail work to his position in office services, counseled him frequently about other opportunities within adidas, and warned him about potential problems from other supervisors

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

higher in the management chain who felt Speed was not keeping accurate track of his attendance, adidas gives weight to the "same actor" inference: where the same actor is responsible for hiring and firing a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive. *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270-71 (9th Cir.1996). In this case, absent evidence to the contrary, the "same actor" inference is significant. It is illogical to assume that Mr. Hewitt, who advocated on Speed's behalf for years, would suddenly turn against him and fire him based on race.

None of Speed's allegations are sufficient to show pretext in the decision to terminate his employment. Because Speed has failed to create a genuine issue of material fact that adidas' legitimate, non-discriminatory reason for terminating him was pretextual and because Speed failed to state a prima facie case of disparate treatment, defendant's motion for summary judgment as to plaintiff's disparate treatment claims based on his termination should be granted.

B. Promotions

A separate prima facie analysis is required for cases where a plaintiff alleges that he was not promoted due to discriminatory practices. To succeed a plaintiff must prove: (1) that he is a member of a protected group; (2) that he has applied and was qualified for the position sought; (3) that despite being qualified, he was rejected for that position; and (4) the employer filled the position with an employee not of plaintiff's class, or continued to consider other applicants whose qualifications were comparable to plaintiff's after rejecting plaintiff. *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir.2005) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802)).

*8 Speed fails to establish a prima facie case with regard to his failure to receive the promotions for which he applied during his tenure at adidas. Speed alleges that he applied for or "inquired heavily" about ten to twenty positions that would qualify as promotions during his employment at adidas. First, with regard to the positions about which he inquired but for which he did not formally apply, Speed does not establish the second element of the prima facie case which requires application for a position. Speed argues that hiring was often informal at adidas and word of mouth was an effective means of making a formal application. While internal candidates were noted as such by adidas, Speed supplies no evidence to support the assertion that formal applications for internal candidates were not required.

As to the positions for which Speed made formal application, he has not offered evidence that any of those positions were offered to non-African Americans who were similarly or less qualified. All of the positions involved marketing and product development. Contrary to the resume Speed supplied to adidas, he has a GED rather than a traditional high school diploma, no college classes, and very little experience in marketing or product development. Each of the successful candidates had some combination of secondary education and/or extensive experience in marketing and product development. Because Speed offers no evidence that successful candidates were similarly or less educated, had less experience in marketing or product development, or otherwise had lower qualifications than he did, Speed does not make a prima facie case for failure to receive promotions.

Speed also fails to show that any of the hiring decisions that resulted in his failure to be promoted were actually motivated by racial discrimination. First, the court notes that Speed was offered promotions twice at adidas: when he moved from retail work to the Office Services position; and when he was offered the T-shirt Development Coordinator position which he declined. Speed also admits that for at least three of the positions for which he applied, factors other than race guided the selection of the successful candidate, including prior affiliation with the decisionmaker, familiarity with the functions of the department doing the hiring, and more life experience in the substantive area of the department doing the hiring. Finally, at least one of the positions for which Speed applied was awarded to an African-American which creates a strong inference that there was no discrimination. See *Jamal v. Wilshire Management Leasing Corp.*, 320 F.Supp.2d 1060, 1077 (D.Or.2004). Thus Speed fails to present sufficient evidence that he was not promoted for racially discriminatory reasons.

Because Speed has failed to present evidence that he was denied promotions based on racial discrimination, summary judgment is appropriate on this claim of disparate treatment.

*Retaliation*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*9 Speed contends that adidas retaliated against him for protected conduct by terminating his employment in violation of 42 U.S.C. § 2000e-3 ("Title VII") and ORS § 659A.030. An employer violates Title VII by retaliating against an employee who has "opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a). The order and allocation of proof for disparate treatment cases under *McDonnell Douglas Corp.* also governs actions for retaliatory discharge under Title VII. *Yartzoff v. Thomas,* 809 F.2d 1371, 1375 (9th Cir.1987). This same burden-shifting scheme applies to claims under both state and federal law. *Williams v. Federal Express Corp.,* 211 F.Supp.2d 1257, 1264 (D.Or.2002) (citing *Lam v. Univ. of Hawaii,* 40 F.3d 1551, 1559 n. 11 (9th Cir.1994)). Therefore, both of Speed's retaliation claims will be considered together.

A plaintiff may establish a prima facie case of retaliation by showing: (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) the employer's action is causally linked to the protected activity. *Yartzoff,* 809 F.2d at 1375 (citations omitted). The required elements of a prima facie case are the same for plaintiffs asserting retaliation claims under Title VII and under Oregon law. *Payne v. Apollo College-Portland, Inc.,* 327 F.Supp.2d 1237, 1245 (D.Or.2004). If the plaintiff establishes the prima facie case, the burden shifts as in a disparate treatment case. *Stegall v. Citadel Broadcasting Co.,* 350 F.3d 1061, 1066 (9th Cir.2003). The causal link can be inferred from circumstantial evidence, such as the proximity in time between the protected activity and the retaliatory employment decision. *Id.* at 1069.

The court notes that Speed fails to cite even one case in support of his "Response to Defendant's Motion for Summary Judgment" and fails to provide analysis under the burden-shifting scheme articulated in this Circuit. Thus the court is forced to guess at Speed's arguments. Speed's allegedly protected activity was writing the email of June 12, 2003, to the head of Global Operations complaining of racism and lack of opportunity for African Americans to advance at adidas. Other protected activity may include emails to other adidas management personnel as well as Speed's frequent discussions with adidas personnel about racial discrimination at adidas. adidas does not dispute that Speed's email and discussions were protected activity. *See EEOC v. Crown Zellerbach Corp.,* 720 F.2d 1008, 1012-13 (9th Cir.1983) (analyzing when a letter written opposing unlawful employment practices may be protected expression in a retaliation claim). The second element is also not in dispute as Speed was ultimately terminated. However, Speed is unable to make the required causal link between his termination and the protected activity of writing emails or speaking out on racial discrimination. To prove causation plaintiff "must present evidence to raise the inference that [his] protected activity was the likely reason" for his termination. *Williams v. Federal Express Corp.,* 211 F.Supp.2d 1257, 1265 (D.Or.2002) (citations omitted).

*10 Here, Speed relies on the timing of the events leading up to his termination to make his prima facie case. However, some of the events that Speed includes as evidence of the link between his termination and the protected activity are not characterized correctly and others are irrelevant for the purposes of showing discrimination and retaliation. For example, comments from individuals in adidas' Human Resources department about Speed did not indicate any level of racial hostility, and at least one email referenced by Speed was sent in November 2002 and thus not part of any chain of events between June and July of 2003, adidas points to Speed's ongoing criticism of adidas for racial disparity and discrimination throughout his employment along with the fact that he was offered promotions twice and was not treated inappropriately for being outspoken as evidence that adidas had no racial animus toward him.[FN2] Speed does not dispute these characterizations but nonetheless argues that the June 12, 2003 email from Speed to the Head of Global Operations was connected to Speed's termination. Because Speed fails to connect these two events, his retaliation claim must fail.

> FN2. adidas also emphasizes that it employed Speed after he was terminated to do voice-overs as evidence that his termination was not retaliatory.

Speed argues that he had established a prima facie case based on timing alone, because protected activity occurred on June 12, 2003, and his termination occurred on July 16, 2003. As Ninth Circuit cases have articulated, where "an adverse employment action follows on the heels of protected activity," causation can be inferred from timing alone. *Villiarimo,* 281 F.3d at 1065. Because Speed's protected activity and his termination occurred within such close proximity, he argues there is an inference of causation. However, given Speed's history of being outspoken on racism at adidas, and adidas' treatment of him throughout this employment, this court will

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not infer a causal link from timing alone.

Even assuming Speed has established the requisite causal link, his absenteeism, as discussed above, is a legitimate, non-discriminatory reason for his discharge. Speed must then come forward with evidence that adidas' reason for termination is a pretext for retaliation.

Speed offers no credible evidence that his termination was pretextual. The fact that some of his emails were sent in close proximity to his termination for excessive absenteeism is not dispositive. "While the Ninth Circuit has found proximity in time to be sufficient, in some cases, to establish the causation prong of the prima facie case, timing alone is generally not enough to establish pretext." _Williams, 211 F.Supp.2d at 1266_. Because Speed has failed to establish a causal link between his termination and protected activity and because, in any event, his termination for absenteeism was not a pretext for retaliation, his retaliation claim must fail.

_Family Medical Leave Act/Oregon Family Leave Act_

Speed contends that adidas violated the FMLA and OFLA in not recognizing his absences from work as protected leave under these statutes. The Family Medical Leave Act ("FMLA") ensures job security for employees who must be absent from work because of their own illnesses or need to care for ill family members. See _29 U.S.C. § 2612_. To the extent possible, the Oregon Family Leave Act ("OFLA") is to be construed "in a manner that is consistent with any similar provisions of [FMLA]." _Price v. Multnomah County, 132 F.Supp.2d 1290, 1296 n. 7 (D.Or.2001)_ (citing _ORS § 659.494(2)_). Since Speed's claims under both statutes are subject to similar analysis, they will be discussed together.

*11 The FMLA entitles employees up to twelve weeks of leave each year for their own serious illnesses or to care for family members, and guarantees them reinstatement after exercising their leave rights. _29 U.S.C. §§ 2612(a)(1), 2614(a)(1)_. An employer may not interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right available under the FMLA, or discriminate against an individual for opposing any practice made lawful under the FMLA. _29 U.S.C. § 2615(a)(1), (2)_. Speed appears to allege FMLA claims under both a retaliation theory and an interference theory. Retaliation claims arise when an employee asserts that his employer discriminated against him because he engaged in activity protected by the FMLA. _Id._ Interference claims arise when an employee asserts that his employer denied or otherwise interfered with his substantive rights under FMLA. _Id._

To establish a prima facie case of retaliation under the FMLA, the plaintiff must show that (1) he availed himself of a protected right; (2) he was adversely affected by an employment decision; and (3) there is a causal connection between the two actions. _Price, 132 F.Supp.2d at 1296_ (citing _Morgan v. Hilti, 108 F.3d 1319, 1325 (10th Cir.1997)_). If the plaintiff is able to meet that burden, the burden-shifting framework of _McDonnell Douglas_ applies and the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action. Then the burden shifts back to the plaintiff to produce evidence that the articulated reason is a pretext for retaliation. _Id._ This analysis applies to the Speed's claims under both the FMLA and the OFLA. _Id._ at n. 10.

To prevail on an FMLA interference claim, the plaintiff must establish the following: (1) he is an eligible employee as defined by the statute; (2) that the defendant is an employer under the FMLA; (3) that he was entitled to take leave as defined in the statute; (4) that he gave notice of his intention to take leave as defined by the statute and regulations; and (5) that defendant denied him the benefits to which he was entitled under the FMLA. _Id. at 1297_.

Speed fails to establish a prima facie case on either claim. While it is unclear which absences Speed contends were covered by FMLA and OFLA, it is undisputed that he never availed himself of the rights provided by those statutes or gave notice of his intent to take leave under them. As previously stated, Speed is barely able to explain his excessive absenteeism beginning in January 2003 and cannot, in most instances, identify what caused the absences and what activities he engaged in while absent from work. As discussed previously in the analysis of Speed's _Title VII_ retaliation claim, he fails to make the required causal link between the employer's action and the protected activity. Speed offers nothing new in his retaliation claim under FMLA/OFLA and thus this aspect of his claim must fail.

*12 Speed's actions were insufficient to put adidas on notice that he might be taking medical leave or that adidas should inquire further. The required notice need not be detailed but need only suggest "that the FMLA might apply." _Daoud v. Avamere Staffing,_

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LLC, 336 F.Supp.2d 1129, 1139 (D.Or.2004) (citing Bachelder v. America West Airlines, Inc., 259 F.3d 1112, 1130 (9th Cir.2001)). The employee need not even mention the FMLA but "may only state that leave is needed [for a qualifying reason]." Id. Here, Speed failed to provide his employer with any notice that he intended to take leave under the FMLA or that he had a need for qualified leave. Also, Speed admits that adidas provided him with paperwork to apply for FMLA leave and that he chose not to apply.

Speed's allegation that his absences were due to his previous car accident for which he was undergoing intermittent continuing treatment is not supported by evidence. Speed provided three medical releases to his supervisor: the first, dated March 11, 2003, released him from work from March 10-15, 2003; the second, dated March 17, 2003, authorized him to return to work on that day but do no heavy lifting (over 25 pounds) or overhead lifting; and the third, dated April 23, 2003, increased the amount he could lift to 50 pounds. No other medical releases were provided to adidas by Speed prior to his termination. Thus there is no credible evidence to support the contention that Speed was under continuing medical treatment that would be subject to FMLA or OFLA during the months of excessive absenteeism leading up to his termination.

Because Speed failed to make a prima facie showing that he was entitled to take leave as defined by the statute, the third prong of the prima facie case under an FMLA interference claim, failed to show that he gave sufficient notice, the fourth prong of an FMLA interference claim, and failed to show that adidas denied him the benefits he was entitled to under FMLA, the fifth prong of an FMLA interference claim, Speed's claims for protected leave under the FMLA/OFLA must be dismissed.

*Wrongful Discharge*

Speed contends that adidas terminated him wrongfully for complaining about racial discrimination or for exercising his rights under the FMLA/OFLA. Oregon courts recognize two circumstances that implicate the tort of wrongful discharge: (1) discharge for fulfilling a societal obligation or public duty; and (2) discharge for exercising a job-related right of important public interest. Draper v. Astoria School Dist. No. 1C, 995 F.Supp. 1122, 1127 (D.Or.1998). As Speed has failed to specify under which prong he is entitled to relief, the court will explore both. A "societal obligation or public duty" may include serving on jury duty, Nees v. Hocks, 272 Or. 210, 536 P.2d 512 (1975), while "exercising a job related right of important public interest" includes resisting sexual harassment, Holien v. Sears, Roebuck and Co., 298 Or. 76, 689 P.2d 1292 (1984) and filing a worker's compensation claim. Brown v. Transcom Lines, 284 Or. 597, 588 P.2d 1087 (1978).

*13 Under *Draper,* however, a person cannot state a claim for wrongful discharge if (1) the right being enforced is private and the plaintiff is not suing in his status as an employee; (2) the plaintiff simply alleges that he was discharged in violation of a right, not because he pursued the right; (3) an existing remedy adequately protects the public interest in question; or (4) the legislature has intentionally abrogated the common law remedies by establishing an exclusive remedy. Draper, 995 F.Supp. at 1130-31.

Speed's wrongful discharge claim appears to be based on the allegation that he was terminated unlawfully for complaining of racial discrimination or for exercising his rights under the FMLA/OFLA. Thus his claim falls within the second category of cases, the exercise of a job-related right of important public interest. Again, Speed fails to support this claim in his "Response to Defendant's Motion for Summary Judgment." Under the analyses above of Speed's statutory claim, the court finds that his claim for wrongful termination fails for a variety of reasons. First, under *Draper,* an existing remedy exists that adequately protects the public interest, i.e. the remedies provided under the FMLA/OFLA and Title VII. See Price 132 F.Supp.2d at 1295 (explaining that statutory remedies preempt the common law claim of wrongful discharge). Second, Speed's failure to connect racial discrimination or the exercise of his rights under the FMLA to his discharge leads to the conclusion that neither was a "substantial factor" in his termination. See Taylor v. Siltronic Corp., No. 04-01118-AA, 2005 WL 2218136 at *7 (D.Or. Sept. 13, 2005) (explaining that plaintiff need only show her protected activity was a substantial factor in her termination). Finally, Speed's failure to refute adidas' legitimate reason for termination by showing pretext makes summary judgment on this claim appropriate.

CONCLUSION

This court recognizes that the Ninth Circuit has set a high standard for granting summary judgment in employment discrimination cases. See Schindrig v. Columbia Machine, Inc., 80 F.3d 1406, 1410 (9th

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Cir.), *cert. denied,* 519 U.S. 927 (1996). However, a scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.), *cert. denied,* 493 U.S. 809 (1989).

For the foregoing reasons, defendant's Motion for Summary Judgment (No. 17) should be granted as to all claims and a judgment should be prepared dismissing this action with prejudice.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due March 2, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

*14 Dated this 16th day of February, 2006.

D.Or.,2006.
Speed v. Adidas America, Inc.
Slip Copy, 2006 WL 897978 (D.Or.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1181157 (Trial Motion, Memorandum and Affidavit) Defendant's Response to Plaintiff's Objections to Findings and Recommendation (Mar. 15, 2006) Original Image of this Document (PDF)
• 2005 WL 2866798 (Trial Motion, Memorandum and Affidavit) Defendant's Reply in Support of Its Motion for Summary Judgment (Sep. 16, 2005)
• 2004 WL 3338148 (Trial Pleading) Answer and Affirmative Defenses (Oct. 20, 2004)
• 3:04cv01430 (Docket) (Oct. 4, 2004)
• 2004 WL 3338142 (Trial Pleading) Complaint (2004)
• 2004 WL 3777970 (Trial Motion, Memorandum and Affidavit) Plaintiff's Objections to Findings and Recommendation (2004) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE

PAVLOVA STERRY, Plaintiff, v. SAFE AUTO INSURANCE CO., Defendant.

Case No. C2-02-1271

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

2003 U.S. Dist. LEXIS 17363

August 25, 2003, Filed

**DISPOSITION:** [*1] Defendant's motion to dismiss GRANTED IN PART and DENIED IN PART.

**COUNSEL:** For Pavlova Sterry, PLAINTIFF: John Spenceley Marshall, Columbus, OH USA.

For Safe Auto Insurance Company, DEFENDANT: James M L Ferber, Littler Mendelson PC, Jonathan Ross Vaughn, Vorys Sater Seymour & Pease, Columbus, OH USA.

**JUDGES:** GREGORY L. FROST, UNITED STATES DISTRICT JUDGE. Magistrate Judge Mark R. Abel.

**OPINIONBY:** Gregory L. Frost

**OPINION:**

### OPINION AND ORDER

This matter is before the Court for consideration of a Fed. R. Civ. P. 12(b)(6) motion to dismiss (Doc. # 3) filed by Defendant, Safe Auto Insurance Company ("Safe Auto"). Plaintiff, Pavlova Sterry, has filed a memorandum in opposition to the motion (Doc. # 5), to which Safe Auto has filed a reply (Doc. # 9) that apparently fails to include its second page. The Court finds the motion to dismiss not well taken.

### I. Standard Involved

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court will dismiss "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996) [*2] (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)), cert. denied, 520 U.S. 1251, 138 L. Ed. 2d 175, 117 S. Ct. 2409 (1997). The focus is therefore not on whether a plaintiff will ultimately prevail, but rather on whether the claimant has offered "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Rippy ex rel. Rippy v. Hattaway, 270 F.3d 416, 419 (6th Cir. 2001) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)). In making such a determination, a court must "'construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein.'" Sistrunk, 99 F.3d at 197 (quoting Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir. 1994)). A court need not, however, accept conclusions of law or unwarranted inferences of fact. Perry v. American Tobacco Co., Inc., 324 F.3d 845, 848 (6th Cir. 2003).

### II. Background

In her Complaint, Sterry claims that Safe Auto, an insurance company, had [*3] advertised in July 2001 for a claims adjuster. A newspaper advertisement for the position stated that "only true recent college graduates need apply" and that no experience was necessary. Sterry, who was over forty years old at the time, applied for the job. She interviewed on July 11, 2001, but by the end of the month Safe Auto had declined to hire her, allegedly because although she was a college graduate, she was not a recent graduate.

Sterry then filed a complaint with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC") and received a right-to-sue letter before filing the instant lawsuit on December 23, 2002. She asserts two causes of action: age discrimination in violation of both the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq, and Ohio Rev. Code § 4112.14. Sterry argues that Safe Auto ignored her qualifications and recommendations, refusing to hire her due to her status despite making exceptions to its preference for hiring recent college graduates in regard to other candidates. She also avers that Safe Auto had actual or constructive knowledge that the pool

Page 1

[*4] of recent college graduates primarily consists of individuals under the age of thirty. Further, Sterry claims that Safe Auto's 1998 job description for the position of claims adjuster required a Bachelor's degree, one or two years related experience, or an equivalent combination of the two. She contends that Safe Auto now has an informal requirement that an applicant have no experience within the insurance industry.

Safe Auto moves to dismiss on two grounds. First, it argues that Sterry's filing of a charge with the OCRC and the EEOC precludes her from asserting a claim under Ohio Rev. Code § 4112.14. Second, Safe Auto asserts that the facts as alleged cannot, as a matter of law, constitute age discrimination under federal or state law. The Court shall address each basis for dismissal in turn.

### III. Alleged Preclusion of State Claims

#### A. Statutory Provisions Involved

The following statutes are relevant to today's decision: Ohio Rev. Code § § 4112.02, 4112.05, 4112.08, 4112.08, and 4112.14, and 4112.99.

Ohio Rev. Code § 4112.02 provides:

> It shall be an unlawful discriminatory practice: [*5]
>
> (A) For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
>
> ...
>
> (N) An aggrieved individual may enforce the individual's rights relative to discrimination on the basis of age as provided for in this section by instituting a civil action, within one hundred eighty days after the alleged unlawful discriminatory practice occurred, in any court with jurisdiction for any legal or equitable relief that will effectuate the individual's rights.
> A person who files a civil action under this division is barred, with respect to the practices complained of, from instituting a civil action under section 4112.14 of the Revised Code and from filing a charge with the commission under section 4112.05 of the Revised Code.

Ohio Rev. Code § 4112.05(B)(1) provides:

> Any person may file a charge with the commission alleging that another person has engaged or is engaging [*6] in an unlawful discriminatory practice. In the case of a charge alleging an unlawful discriminatory practice described in division (A), (B), (C), (D), (E), (F), (G), (I), or (J) of section 4112.02 or in section 4112.021or 4112.022 of the Revised Code, the charge shall be in writing and under oath and shall be filed with the commission within six months after the alleged unlawful discriminatory practice was committed. In the case of a charge alleging an unlawful discriminatory practice described in division (H) of section 4112.02 of the Revised Code, the charge shall be in writing and under oath and shall be filed with the commission within one year after the alleged unlawful discriminatory practice was committed.

Ohio Rev. Code § 4112.08 provides:

> This chapter shall be construed liberally for the accomplishment of its purposes, and any law inconsistent with any provision of this chapter shall not apply. Nothing contained in this chapter shall be considered to repeal any of the provisions of any law of this state relating to discrimination because of race, color, religion, sex, familial status, disability, national origin, age, or ancestry, except that [*7] any person filing a charge under division (B)(1) of section 4112.05 of the Revised Code, with respect to the unlawful discriminatory practices complained of, is barred from instituting a civil action under section 4112.14 or division (N) of section 4112.02 of the Revised Code.

Ohio Rev. Code § 4112.14 provides:

> (A) No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements