of the job and laws pertaining to the relationship between employer and employee.

(B) Any person aged forty or older who is discriminated against in any job opening or discharged without just cause by an employer in violation of division (A) of this section may institute a civil action against the employer in a court of competent jurisdiction. If the court finds that an employer has discriminated on the basis of age, the court shall order an appropriate remedy which shall include reimbursement to the applicant or employee for the costs, including reasonable attorney's fees, of the action, or to reinstate the employee [*8] in the employee's former position with compensation for lost wages and any lost fringe benefits from the date of the illegal discharge and to reimburse the employee for the costs, including reasonable attorney's fees, of the action. The remedies available under this section are coexistent with remedies available pursuant to sections 4112.01 to 4112.11 of the Revised Code; except that any person instituting a civil action under this section is, with respect to the practices complained of, thereby barred from instituting a civil action under division (N) of section 4112.02 of the Revised Code or from filing a charge with the Ohio civil rights commission under section 4112.05 of the Revised Code.

Finally, Ohio Rev. Code § 4112.99 provides that "whoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief."

**B. Sterry's Complaint**

As a threshold matter, the Court notes that there is a dispute as to what state-law claim or claims Sterry has brought. Safe Auto argues that she has asserted a claim only under Ohio Rev. Code § 4112.14, and that her contention that her [*9] claim is actually under Ohio Rev. Code § 4112.99 is an attempt to amend the Complaint. Sterry's Complaint provides that "Safe Auto's acts and omissions described herein violate the Ohio Laws Against Discrimination, Ohio Revised Code Chapter 4112, § 4112.14, entitling plaintiff to all remedies contained in O.R.C. § 4112.14." (Doc. # 1, at 8 P 66, 2 Cal. Unrep. 537.) By referencing in this manner both Chapter 4112 generally and Ohio Rev. Code § 4112.14 specifically, Sterry has introduced ambiguity into her pleading. This is because Ohio Rev. Code § 4112.99 provides "for damages, injunctive relief, or any other appropriate relief." Such a broad, catch-all approach to remedies can be read to incorporate the specific remedies set forth in Ohio Rev. Code § 4112.14. Thus, mindful of the purpose of notice pleading, the Court declines to hold that Sterry has pled under only Ohio Rev. Code § 4112.14 and construes her inartful pleading as also raising a broader Ohio Rev. Code § 4112.99 claim or claims. The Court will therefore regard the [*10] motion to dismiss as targeting any and all state claims fairly within the purview of Sterry's Complaint.

Insofar as the merits of her claims are involved, the Court recognizes that Ohio law provides that if an individual such as Sterry elects to pursue relief first under the administrative remedies contained in Ohio Rev. Code § 4112.05, that claimant cannot then pursue claims under Ohio Rev. Code § § 4112.02(N) or 4112.14. See Ohio Rev. Code § 4112.08 ("Any person filing a charge under division (B)(1) of section 4112.05 of the Revised Code, with respect to the unlawful discriminatory practices complained of, is barred from instituting a civil action under section 4112.14 or division (N) of section 4112.02 of the Revised Code."). Thus, at first blush it would appear that because Sterry filed her age discrimination claim *first* with the OCRC under Ohio Rev. Code § 4112.05(B)(1) and initiated this lawsuit over a year later, Ohio Rev. Code § 4112.08 indeed bars *any* Ohio Rev. Code Chapter 4112 claim here.

Although the Sixth Circuit has addressed [*11] election-of-remedies issues, it has not spoken to this precise issue. See, e.g., *Ziegler v. IBP Hog Market,* 249 F.3d 509, 512-13 (6th Cir. 2001) (discussing exclusive nature of judicial remedies when a plaintiff elects to file under Ohio Rev. Code § § 4112.02(N), 4112.14, or 4112.99 and not under Ohio Rev. Code § 4112.05(B)). Safe Auto's view draws support from non-binding precedent, however. In *Talbott v. Anthem Blue Cross and Blues Shield,* 147 F. Supp. 2d 860 (S.D. Ohio 2001), for example, another judge in this district concluded that "causes of action for age discrimination under, brought under O.R.C. § 4112.99 and based on violations of Chapter 4112, are subject to the election of remedies provisions contained in the other more specific sections of Chapter 4112 that establish causes of action for age discrimination." *Id.* at 863. Sterry, however, purports to counter the *Talbott* rationale with another Ohio Supreme Court decision, *Smith v. Friendship Village of Dublin, Ohio, Inc.,* 92 Ohio St. 3d 503, 2001 Ohio 1272, 751 N.E.2d 1010 (2001). She argues that because the Ohio Supreme [*12] Court declined in *Smith* to extend Ohio Rev. Code § 4112.08's reach beyond its express legislative list, this Court should not recognize its extension to Ohio Rev. Code § 4112.99 in the context of age discrimination.

For the reasons that follow, the Court finds neither case dispositive and decides the issue on different grounds.

### C. Ohio Supreme Court Precedent

#### 1. *Bellian v. Bicron*

The *Talbott* holding was predicated upon two analytic grounds. That decision first relied upon the Ohio Supreme Court case of *Bellian v. Bicron*, 69 Ohio St. 3d 517, 1994 Ohio 339, 634 N.E.2d 608 (1994), for the proposition that the specific age discrimination statutes within Chapter 4112 prevail over the general Ohio Rev. Code § 4112.99. But *Bellian* is inapposite to the question before the Court today.

*Bellian* dealt with the specific issue of what statute of limitations applied to Ohio Rev. Code § 4112.99, which itself contains no express limitations period. The plaintiff in that case asserted that the six-year limitations period contained in Ohio Rev. Code § 2305.07 [*13] applied, while the defendant argued that the shorter period set forth in Ohio Rev. Code § 4112.02(N) applied. The Ohio Supreme Court held that the latter statute provided the applicable statute of limitations. In so holding, the state court explained:

> R.C. 4112.99 creates an independent civil action to remedy any form of discrimination indentified in R.C. Chapter 4112 ...
>
> ... Here, R.C. 4112.99 is the more general statute. Consequently, R.C. 4112.99 prevails over R.C. 4112.02(N) only if there is a clear manifestation of legislative intent. Since the General Assembly has not shown such an intent, the specific provision, R.C. 4112.02(N), must be the only provision applied. Moreover, appellant alleged in Count I of his complaint that the "defendant and its agents have violated the provisions of Chapter 4112 of the Ohio Revised Code." The only provision in R.C. Chapter 4112 that recognizes discrimination on the basis of age is R.C. 4112.02. Thus, regardless of whether appellant stated reliance on R.C. 4112.02 or 4112.99, he had to be referring to the form of age-based employment discrimination identified by R.C. 4112.02.

Id. at 519, 634 N.E.2d at 610. [*14] It must be noted that when the *Bellian* court stated that "any age-based employment discrimination claim[] premised on a violation described in Chapter 4112[] must comply with the one-hundred-eighty-day statute of limitations period set forth in R.C. 4112.02(N)," that court was relying on a more limited statutory structure than currently exists. *Id.* at 520, 634 N.E.2d at 610. At the time of the *Bellian* decision, Ohio Rev. Code § 4112.02(A) was indeed the only statute in that Chapter that included a broad prohibition on age discrimination; the General Assembly only later imported the similar prohibition contained in Ohio Rev. Code § 4112.14 by recodifying Ohio Rev. Code § 4101.17. See *Ferraro v. B.F. Goodrich Co.*, 149 Ohio App. 3d 301, 311, 2002 Ohio 4398, 777 N.E.2d 282, 290-91 (2002) (discussing this fact and its effect on *Bellian's* rationale). The 1995 enactment of Ohio Rev. Code § 4112.14 therefore vitiates *Bellian's* rationale. It must also be noted that *Bellian's* rationale was too broad even then; aside from Ohio Rev. Code § 4112.02 [*15] , other, more specific age discrimination prohibitions existed within the statutory scheme that *Bellian* did not recognize. See *Cosgrove v. Williamsburg of Cincinnati Management Co.*, 70 Ohio St. 3d 281, 291, 1994 Ohio 295, 638 N.E.2d 991, 998 n.3 (1994) (Resnick, J., concurring) (noting that *Bellian* ignored the existence of context-specific prohibitions in Ohio Rev. Code § § 4112.02(G) and 4112.021).

Certainly the result in *Bellian* was correct in regard to the narrow claim asserted by the plaintiff in that case, given that "former R.C. 4112.02(N) provided that 'an aggrieved individual may enforce his rights relative to discrimination on the basis of age *as provided for in this section* by instituting a civil action, within *one hundred eighty days* after the alleged unlawful practice occurred." *Bellian*, 69 Ohio St. 3d at 520, 634 N.E.2d at 610 (quoting former Ohio Rev. Code § 4112.02(N)). The Ohio Revised Code is organized into titles, which are organized into chapters, then into sections. Ohio Rev. Code § 1.01. Thus, when the *Bellian* plaintiff filed under Ohio Rev. Code § 4112.99 [*16] , he was enforcing a prohibition against age discrimination conferred, in the language of Ohio Rev. Code § 4112.02(N), by "this section." That section's age discrimination prohibition is contained in Ohio Rev. Code § 4112.02(A). What compels the conclusion that Ohio Rev. Code § 4112.02(A) served as the predicate prohibition is that Ohio Rev. Code § 4112.99 *itself* contains no prohibitions against age discrimination. See Ohio Rev. Code § 4112.99 ("Whoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief."). That statute simply provides a means by which plaintiffs may pursue relief afforded by statutory protections found elsewhere in the Chapter, which at that time meant the protection codified in Ohio Rev. Code § 4112.02(A).

Accordingly, by asserting an age discrimination claim under the general Ohio Rev. Code § 4112.99, the *Bellian* plaintiff was enforcing a right under Ohio Rev. Code § 4112.02(A) [*17], thereby falling under the specific purview of Ohio Rev. Code § 4112.02(N)'s statute-of-limitations period. It was the statutory scheme *itself* that attached the Ohio Rev. Code § 4112.02(N) one-hundred-eighty-day statute of limitations to the Ohio Rev. Code § 4112.99 claim.

This Court thus cannot discern what unidentified "conflict" the Ohio Supreme Court found in *Bellian*, necessitating that decision's "specific-over-general" rationale, because the statutory sections in that case *fit together without conflict*. It is unclear whether one justice's dicta in a subsequent case's concurrence accurately captures the *Bellian* court's view of the conflict:

> In these kinds of cases, unless a cause of action is based on a provision in R.C. Chapter 4112 that authorizes independent civil actions and sets forth its own specific statute of limitations, R.C. 4112.99 applies and the cause of action is subject to R.C. 2305.07's six-year statute of limitations. In this regard, R.C. 4112.99 functions as a gap-filling provision, establishing civil liability for violations of rights for which no other [*18] provision for civil liability has been made.

Cosgrove, 70 Ohio St. 3d at 292, 638 N.E.2d at 998-99 (Resnick, J., concurring). Such a conception of the statutory scheme and of the perceived conflict would run afoul of the plain language of Ohio Rev. Code § 4112.99, of the apparent legislative intent of that statute, and of the statute's implicit incorporation of Ohio Rev. Code § 4112.02(N). It would read Ohio Rev. Code § 4112.99's "whoever violates this chapter" as meaning "whoever violates select portions of this chapter." Moreover, it would result in the evisceration of statutory causes of action as a result of judicial fiat prevailing over the plain language of the statutes involved. Courts would be applying select principles of statutory construction (e.g., the specific over general principle) over equally valid competing principles (e.g., the later-enacted principle) with no legislative guidance supporting such action.

In any event, although this Court recognizes that it is bound by the state court's decision in *Bellian*, that decision is inapplicable to the issue *sub* [*19] *judice*: the question of whether Ohio Rev. Code § 4112.08's election-of-remedies provision applies to Sterry's Ohio Rev. Code § 4112.99 claim. Even arriving at Ohio Rev. Code § 4112.02(N) in this Ohio Rev. Code § 4112.99 case-via the protection afforded by Ohio Rev. Code § 4112.02(A)-Ohio Rev. Code § 4112.02(N)'s election-of-remedies provision does not address preclusion of remedies when a plaintiff files with the OCRC *first*. Instead, Ohio Rev. Code § 4112.02(N) addresses only what happens when a plaintiff files first under "this division," which means under Ohio Rev. Code § 4112.02(N). To the extent that *Bellian* apparently informed *Talbott*, then, this Court rejects *Bellian* as providing any analytic foundation to resolve today's issue. *Bellian's* axiom that a specific provision will control over a general provision does not apply because the statutory scheme does not present a conflict over election.

### 2. *Smith v. Friendship Village of Dublin, Ohio,* [*20] *Inc.*

This brings the analysis to Sterry's reliance on *Smith v. Friendship Village of Dublin, Ohio, Inc.*, 92 Ohio St. 3d 503, 2001 Ohio 1272, 751 N.E.2d 1010 (2001). Sterry argues that *Smith's* rationale undercuts the notion that the statutory election-of-remedies scheme applies to Ohio Rev. Code § 4112.99. She asserts that although Ohio Rev. Code § 4112.08 may expressly bar an Ohio Rev. Code § 4112.14 claim here, it does not implicitly bar an Ohio Rev. Code § 4112.99 claim as in the pre-*Smith Talbott* case. See also *Vinson v. Diamond Triumph Auto Glass, Inc.*, 149 Ohio App. 3d 605, 778 N.E.2d 149, 2002-Ohio-5596 (2002); *Balent v. Nat'l Revenue Corp.*, 93 Ohio App. 3d 419, 638 N.E.2d 1064 (1994). This Court agrees in part, but finds Sterry's characterization of *Smith* too generous to plaintiffs such as herself.

Sterry is correct in stating that the *Smith* court indeed decided that "the filing of an unlawful discriminatory practice charge with the Ohio Civil Rights Commission under [Ohio Rev. Code § 4112.05(B)(1) [*21] ] does not preclude a person alleging handicap discrimination from instituting an independent civil action under [Ohio Rev. Code § 4112.99]." *Id.* at 507, 751 N.E.2d at 1014. But as Sterry's counsel knows, having been counsel in *Smith*, the state court predicated that narrow holding in part on the "absence of an express legislative expression imposing an election requirement." *Id.* In so doing, the Ohio Supreme Court relied on the "clear language" of the state's age discrimination statutes as an example of how the Ohio General Assembly can and will demand an election of remedies when it so intends. *Id.* at 506, 751 N.E.2d at 1014. Stating that it was "guided by the Latin maxim *expressio unius est exclusio alterius*, which translated means that the expression of one item of a class implicitly excludes other items of the class that are not specifically mentioned," the *Smith* court indeed relied on a rationale that at least superficially supports Sterry. *Id.* at 506, 751 N.E.2d at 1014. There is, after all, no explicit inclusion of Ohio Rev. Code § 4112.99 in the

Page 5

election [*22] provision on which Safe Auto relies. *See* Ohio Rev. Code § 4112.08.

However, the *Smith* court also noted in dicta that "there are statutory provisions requiring an election [of remedies] for age discrimination claims." *Smith,* 92 Ohio St. 3d at 506, 751 N.E.2d at 1014. That court also stated that "the General Assembly has specifically provided that individuals alleging age discrimination must choose between an administrative or judicial action." *Id.* Such a controlling mandate of election would undercut Sterry's sweeping construction of the state statutes involved, despite the requisite liberal construction the Court affords such remedial enactments in general, *see* Ohio Rev. Code § 1.11, and the specific liberal construction mandated by Ohio Rev. Code Chapter 4112 itself. *See* Ohio Rev. Code § 4112.08 ("This chapter shall be construed liberally for the accomplishment of its purposes").

What renders these and similar blanket statements in *Smith* unhelpful to either party in the instant case is the declarations' inherent ambiguity. The Ohio Supreme Court did not say that [*23] *all* age discrimination claims require election, thereby undercutting the independence of Ohio Rev. Code § 4112.99. But the state court also did not limit its statements to those age discrimination claims identified in Ohio Rev. Code § § 4112.02(N), 4112.08, and 4112.14(B). Curiously, that court mentioned the election provisions of Ohio Rev. Code § § 4112.02(N) and 4112.08 specifically, but failed to mention the election provision of Ohio Rev. Code § 4112.14. This suggests a less than comprehensive discussion. In any event, because the election issue in regard to Ohio Rev. Code § 4112.99 age discrimination claims was not before the Ohio Supreme Court in that case, this Court is cautious to assign much weight to *Smith's* unspecific dicta.

The Court therefore does not agree with Sterry's interpretation of *Smith* as singularly dispositive precedent. This is not to say that Sterry's state-law claims fail, however, because the Court also disagrees with the rationale of *Talbott*. With no Ohio Supreme Court precedent distinctly on point, the Court [*24] now turns to the second ground of the *Talbott* rationale-the Ohio appellate court cases that have found Ohio Rev. Code § 4112.99 claims subject to the election of remedies scheme.

### D. Ohio Intermediate Court Precedent

The Sixth Circuit has identified the import of intermediate appellate state court cases:

> In diversity cases, the federal courts must apply state law "'in accordance with the then controlling decision of the highest state court.'" *United States v. Anderson County, Tennessee,* 761 F.2d 1169, 1173 (6th Cir.1985) (quoting *Vandenbark v. Owens-Illinois Glass Co.,* 311 U.S. 538, 543, 61 S. Ct. 347, 85 L. Ed. 327 (1941)); *see Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). If the forum state's highest court has not addressed the issue, the federal court must ascertain from all available data, including the decisional law of the state's lower courts, what the state's highest court would decide if faced with the issue. *See Bailey v. V & O Press Co.,* 770 F.2d 601, 604 (6th Cir.1985) (citing cases). "Where a state's highest court has not spoken on a [*25] precise issue, a federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1485 (6th Cir.1989); *accord Northland Ins. Co. v. Guardsman Products, Inc.,* 141 F.3d 612, 617 (6th Cir.1998). This rule applies regardless of whether the appellate court decision is published or unpublished. *See Talley v. State Farm Fire & Cas. Co.,* 223 F.3d 323, 328 (6th Cir.2000); *Puckett,* 889 F.2d at 1485.

*Ziegler,* 249 F.3d at 517. In accordance with this mandate, the Court turns to decisions of the intermediate courts of Ohio.

This inquiry persuades the Court that the Ohio Supreme Court would decide the election issue differently than the state appellate districts cited in *Talbott*. One of these appellate cases, *Bellian v. Bicron Corp.,* 1992 Ohio App. LEXIS 6364, No. 92-G-1695, 1992 WL 387354 (Dec. 18, 1992), which went before the Ohio Supreme Court as previously discussed, does not address the election-of-remedies issue. Other cases, such [*26] as *Balent,* 93 Ohio App. 3d 419, 638 N.E.2d 1064, did address the issue. Faced with this unenviable task, the *Balent* court recognized that "a compelling case may be made for either position on [the election] issue, and the lack of unanimity among Ohio appellate decisions and federal court decisions on the issue does not provide much guidance by way of precedent." *Id.* at 421-22, 638 N.E.2d at 1065. That court reached two conclusions with which this Court cannot agree.

First, the state court of appeals held that because Ohio's legislature carefully constructed the election scheme, it intended to require election of a single admin-

istrative or statutory remedy for age discrimination. But courts adhering to this first prong of the *Balent* rationale overlook the fact that the Ohio General Assembly amended Ohio Rev. Code § 4112.99 after having already constructed the election-of-remedies scheme in Title 41. Thus, such courts are assigning to the state legislature an intent not to modify that scheme, with no textual basis suggesting or supporting that intent. The rationale binds the legislative body to an unchanging intent [*27] without any indication that adherence to that intent existed-when the actual intent might in fact have been to carve out an exception to the election scheme, as the broad, comprehensive wording of Ohio Rev. Code § 4112.99 suggests.

Second, the *Balent* court reasoned that because Ohio Rev. Code § 4112.99 fails to repeal explicitly the election scheme, it is not the most apposite statute, despite being the later-enacted code provision. *Id. at 424, 638 N.E.2d at 1067*. The *Balent* court did not provide extended discussion as to why the specific-over-general axiom of statutory construction prevailed over the later-enacted axiom. As in *Bellian,* there must be a conflict for the former axiom to apply. *See* Ohio Rev. Code § 1.51 ("If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that [*28] the general provision prevail."). Thus, neither analytic ground motivating the *Balent* decision or its sister decisions provides satisfactory reasoning here. The Court determines that the Ohio Supreme Court would similarly find fault with *Balent's* reasoning when weighing it against the next section's rationale supporting no inclusion in the election scheme.

E. **Argument against Inclusion in Election Scheme**

Against the foregoing contrary precedent stands *Pater v. Health Care and Retirement Corp., 808 F. Supp. 573 (S.D. Ohio 1992)*. Decided prior to the recodification of former Ohio Rev. Code § 4101.17 as § 4112.14, this decision concluded that filing with the OCRC did not bar a subsequent Ohio Rev. Code § 4112.99 claim. *Id. at 576-79*. *Talbott* rejected this holding on the basis that *Pater* "preceded the *Bellian* decision and was based in part on the holdings of cases that were implicitly overruled by the *Bellian* decision." *Talbott, 147 F. Supp. 2d at 864*. This Court has already discussed *Bellian's* inapplicability. Further, to the extent *Talbott* credits [*29] *Pater* with citing several Ohio courts of appeals decisions, the Court finds no reference to these decisions in the actual text of *Pater.* In any event, these decisions, like *Bellian,* relate to the statute of limitations for Ohio Rev. Code § 4112.99 and do not speak to its independent character in regard to the issue before the Court.

Turning again to that issue, the Court finds compelling Pater's reasoning that the plain language of all the statutes involved belies the notion that Ohio Rev. Code § 4112.99 is part of the election scheme. *Id. at 576-77*. Reviewing Ohio Rev. Code § § 4101.17 [now 4112.14], 4112.02(N), 4112.05, 4112.08, and 4112.99, the *Pater* court concluded that "any and all reference to the fact that section 4112.99 is mutually exclusive and requires an election of remedies is conspicuously absent from the language of these sections." *Pater, 808 F. Supp. at 577*. This Court agrees and finds the absence of such language telling.

*Pater* also presented a theory for the enactment of Ohio Rev. Code § 4112.99 that arguably undercuts [*30] the notion that the statute is part of the election scheme. Because the ADEA requires a plaintiff to file an administrative charge as a prerequisite to filing a lawsuit involving a federal claim, 29 U.S.C. § 633(b), the Ohio Supreme Court has held that when a plaintiff files a civil action first, he or she may then nonetheless file an OCRC charge to satisfy the ADEA and pursue a federal cause of action. *Morris v. Kaiser Engineers, Inc., 14 Ohio St. 3d 45, 14 Ohio B. 440, 471 N.E.2d 471 (1984)*. *Morris* did not, however, disrupt the election-of-remedies scheme in regard to *state* age discrimination law. Three years after *Morris,* the Ohio General Assembly amended Ohio Rev. Code § 4112.99 to eliminate criminal penalties for discrimination and to provide for private civil actions. *See Proffitt v. Anacomp, Inc., 747 F. Supp. 421, 424 (S.D. Ohio 1990)*. Pater's theory is that the broad sweep of Ohio Rev. Code § 4112.99 was in part to eradicate potential unfairness in a converse-Morris Scenario-in other words, to permit a plaintiff to assert a joinable state claim in federal proceedings [*31] when that party filed first with the OCRC as required for an ADEA claim. *Id., 808 F. Supp. at 577-78*. Given the speculative nature of this theory and the ability of plaintiffs to pursue judicial remedies following the issuance of a right-to-sue letter, the Court assigns Pater's theory little weight in light of the other, more compelling reasons set forth in that decision.

One such reason is Pater's determination that "had the legislature intended to make section 4112.99 exclusive, it would have clearly stated so in that section, in section 4112.08 or have amended sections 4101.17 [now 4112.14] and 4112.02 to reflect such intent." *Id. at 578*. The Court agrees with the notion that Ohio's statutory scheme evinces no legislative intent to include Ohio Rev. Code § 4112.99 within the election-of-remedies scheme. For example, the Ohio General Assembly has amended Ohio Rev. Code § 4112.08 three times since the 1987 amendment of Ohio Rev. Code § 4112.99. Each time,

Page 7

the General Assembly elected to re-enact Ohio Rev. Code § 4112.08's election-of-remedies [*32] language without referencing Ohio Rev. Code § 4112.99. That legislative body also amended Ohio Rev. Code § 4112.02(N) in 1995 and 1996; Ohio has similarly amended Ohio Rev. Code § 4112.14 in the past decade. None of these amendments include Ohio Rev. Code § 4112.99 in the election scheme, which the Ohio General Assembly drafted with such specificity that it targets a statute's division (e.g., Ohio Rev. Code § 4112.02(N)). This suggests legislative intent that the election-of-remedies scheme does not include Ohio Rev. Code § 4112.99. *Pater*, 808 F. Supp. at 577.

Further, the Court agrees with the following reasoning from *Pater*:

> If an individual may pursue a claim under either the exclusive section 4112.02, section 4112.99, *or both*, ... it would follow that a plaintiff may likewise pursue a claim under either the exclusive section 4112.05, 4112.99, *or both*, as well. This conclusion is particularly compelling in light of the conspicuous absence ... of any language of mutual exclusion in section [*33] 4112.99 itself, or in the other anti-discrimination sections with respect to section 4112.99.

*Id.*, 808 F. Supp. at 578 (emphasis in original). This rationale finds support in *Bellian*, where, as discussed, the Ohio Supreme Court did not find that the asserted Ohio Rev. Code § 4112.99 age discrimination claim was the *same* as a Ohio Rev. Code § 4112.02 claim. Instead, identifying Ohio Rev. Code § 4112.99 as an *independent* civil action, the state court imputed the Ohio Rev. Code § 4112.02 statute of limitations to the distinct Ohio Rev. Code § 4112.99 claim. *Bellian*, 69 Ohio St. 3d at 519-20, 634 N.E.2d at 610. *Cf. See Elek v. Huntington Nat'l Bank*, 60 Ohio St. 3d 135, 136-38, 573 N.E.2d 1056, 1057-59 (1991).

The Court thus concludes that Sterry has denied herself the ability to pursue *almost* all Ohio Rev. Code Chapter 4112 age discrimination claims here, but not a Ohio Rev. Code § 4112.99 claim based on Ohio Rev. Code § 4112.02(A) [*34] . Finding that not all claims under Ohio Rev. Code § 4112.99 are included in the election scheme does not create an issue of construction regarding a statutory redundancy of remedies. The Ohio Supreme Court has recognized with approval that Title 41 intentionally provides for multiple avenues of relief for age discrimination. *See Elek*, 60 Ohio St. 3d at 137, 573 N.E.2d at 1058. This is not to say that this Court fails to recognize the view that if it construes Ohio Rev. Code § 4112.99 to provide an independent cause of action that survives the election scheme, such a holding would essentially render that scheme toothless. A plaintiff could elect to pursue relief under Ohio Rev. Code § 4112.05(B)(1) and, dissatisfied with that avenue, then file under Ohio Rev. Code § 4112.99 (in conjunction with Ohio Rev. Code § 41112.02(A)'s prohibition in age discrimination), while being unable to pursue a private cause of action under either Ohio Rev. Code § § 4112.02(A)/4112.02(N) or 4112.14. Such a scheme would arguably [*35] make any initial election essentially illusory.

Nonetheless, the Court recognizes the persuasive weight of the Ohio Supreme Court's description of § 4112.99 as providing an independent civil action. "A plain reading of this section yields the unmistakable conclusion that a civil action is available to remedy *any* form of discrimination identified in R.C. Chapter 4112." See *Elek*, 60 Ohio St. 3d at 136, 573 N.E.2d at 1057 (emphasis added). To read Ohio Rev. Code § 4112.99 into the election scheme would import restrictions on that statute's broad language that are not there, while construing Ohio Rev. Code Chapter 4112 as placing Ohio Rev. Code § 4112.99 outside the election scheme would give effect to the apparent intent behind all of the statutes involved. The Ohio Supreme Court has stated that" 'statutes relating to the same matter or subject, although passed at different times and making no reference to each other, are *in pari materia* and should be read together to ascertain and effectuate if possible the legislative intent.' *State ex rel. Pratt v. Weygandt (1956), 164 Ohio St. 463, 58 O.O. 315, 132 N.E.2d 191,* [*36] paragraph two of the syllabus." *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St. 3d 250, 254-55, 2002 Ohio 4172, 773 N.E.2d 536, 541-42 (2002). Today's decision respects the apparent legislative intent behind both Ohio Rev. Code § § 4112.08 *and* 4112.99.

### F. Basis for Ohio Rev. Code § 4112.99 Claim

Simply stated, a defendant cannot violate "this chapter" (in the language of Ohio Rev. Code § 4112.99) if there is no Ohio Rev. Code Chapter 4112 age discrimination prohibition to violate. Therefore, concluding that there is no legislative intent to include all Ohio Rev. Code § 4112.99 claims in the election scheme does not mean that Sterry possesses a general claim under that statute. There must be a statutory foundation for such a claim.

Ohio Rev. Code § 4112.14(A) provides a general prohibition on age discrimination, while Ohio Rev. Code § 4112.14(B) provides a mechanism enabling an aggrieved individual to pursue relief for violating that §

4112.14(A) prohibition: a civil action. When Ohio Rev. Code § 4112.08 [*37] bars a plaintiff who filed first with the OCRC "from instituting a civil action under section 4112.14," it reaches the entirety of Ohio Rev. Code § 4112.14. Ohio Rev. Code § 4112.08 therefore bars by implication the possibility of a Ohio Rev. Code § 4112.14(A)-based civil action under *both* of that statute's enabling mechanisms, Ohio Rev. Code § § 4112.14(B)*and* 4112.99. Without the ability to base her Ohio Rev. Code § 4112.99 action on Ohio Rev. Code § 4112.14(A), Sterry must find her age discrimination prohibition elsewhere.

Sterry's remaining possibility is Ohio Rev. Code § 4112.02, which mirrors the synergistic relationship between Ohio Rev. Code § 4112.14(A)and (B). The cause of action permitted by Ohio Rev. Code § 4112.02(N) targets the protection against age discrimination afforded by Ohio Rev. Code § 4112.02(A): "It shall be an unlawful discriminatory practice ... for any employer, because of the ... age [*38] ... of any person, ... to discriminate against that person with respect to hire ... or any matter directly or indirectly related to employment." This prohibition escapes the scope of Ohio Rev. Code § 4112.08, which bars a plaintiff "from instituting a civil action under ... division (N) of section 4112.02 of the Revised Code." Ohio Rev. Code § 4112.08 does *not* speak to an action brought under Ohio Rev. Code § 4112.99 but based on the age discrimination prohibition present in Ohio Rev. Code § 4112.02*(A)*.

The foregoing leads to three conclusions regarding the operation of the statutory scheme. First, a plaintiff cannot institute a claim under Ohio Rev. Code § 4112.99 without effectively "instituting a civil action under section 4112.14"--more specifically, Ohio Rev. Code § 4112.14(A)--*or* under Ohio Rev. Code § 4112.02(A). Second, the Ohio Generally Assembly has created a statutory scheme in which, in the post-OCRC filing landscape, there is no Ohio Rev. Code Chapter 4112 prohibition to [*39] form the basis of an Ohio Rev. Code § 4112.99 suit without Ohio Rev. Code § 4112.02(A). Ohio Rev. Code § 4112.14(A) simply cannot serve as the predicate prohibition underlying a state claim due to the Ohio Rev. Code § 4112.08 election provision. Third, Ohio Rev. Code § 4112.02(A) is exempt from the election scheme because Ohio Rev. Code § 4112.08's election-of-remedies list does not encompass the entirety of both Ohio Rev. Code § § 4112.02and 4112.14. Rather, Ohio Rev. Code § 4112.08 targets the entirety of Ohio Rev. Code § 4112.14 and only a single division of Ohio Rev. Code § 4112.02-specifically, Ohio Rev. Code § 4112.02(N). This leaves the actual Ohio Rev. Code § 4112.02(A) prohibition against age discrimination/conferral of protection untouched and provides the only basis for Sterry's Ohio Rev. Code § 4112.99 claim. The [*40] Court recognizes such a claim in the case *sub judice*. Here, unlike in *Smith*, there is a statutory provision mandating an election of remedies. This election, however, extends to claims brought pursuant to Ohio Rev. Code § 4112.99 *only* if they are based on Ohio Rev. Code § 4112.14(A), but not to claims based on Ohio Rev. Code § 4112.02(A).

### G. Decision

The Court notes the peculiar nature of Ohio Rev. Code Chapter 4112 in regard to age discrimination claims. Even prior to the enactment of Ohio Rev. Code § 4112.14, Title 41 provided for multiple causes of action for age discrimination. It appears that the Ohio General Assembly has condensed the overlapping remedies provided for by Ohio Rev. Code § 4112.02 and former Ohio Rev. Code § 4101.17 into the same chapter while also providing for a more general judicial avenue of relief via Ohio Rev. Code § 4112.99. Nothing in the plain language of these statutes or, most importantly, in the plain language of Ohio Rev. Code § 4112.08 [*41] suggests that an Ohio Rev. Code § 4112.99 claim based on Ohio Rev. Code § 4112.02(A) is included in the Ohio Rev. Code § 4112.08 election scheme. To accept that view would be to reject *Elek's* description of Ohio Rev. Code § 4112.99 as creating an independent cause of action for Ohio Rev. Code Chapter 4112 violations; it would mean that there is ultimately no Ohio Rev. Code § 4112.99 age discrimination claim. The Court is guided by the best indication of legislative intent and honors the plain language of the statutes involved.

Thus, while neither party has presented a wholly convincing rationale supporting their respective arguments, the reasons detailed in the foregoing discussion resolve the election issue. The Court therefore (1) **GRANTS** Safe Auto's motion to dismiss in regard to any asserted Ohio Rev. Code § 4112.14 claim, as well as to any Ohio Rev. Code § 4112.99 claim predicated on Ohio Rev. Code § 4112.14(A), and (2) **DENIES** the motion to dismiss [*42] in regard to Sterry's Ohio Rev. Code § 4112.99 claim predicated on Ohio Rev. Code § 4112.02(A).

### IV. Alleged Failure to State Federal and State Claims

Turning to Safe Auto's second ground for dismissal, the Court concludes that dismissal of the ADEA claim is not warranted at this juncture. Safe Auto is indeed correct in asserting that, standing alone, the mere fact that an employer recruits recent college graduates is not evidence of discrimination against older workers. See *Grossmann v. Dillard Dep't Stores*, 109 F.3d 457, 459 (8th Cir. 1997). As Safe Auto correctly notes, "true recent college graduates" can be of any age; for example, along with a vast pool of twenty-one year-old graduates,

Page 9

a fifty, sixty, seventy or even ninety year-old individual can be a recent college graduate. That fact would serve to undercut Sterry's contention that the recent graduate requirement is a proxy for age discrimination; the requirement might well be tied to the company's findings concerning the ease with which it can train recent college graduates-regardless of their age--and, taken alone, might arguably constitute [*43] a *Hazen Paper* motivating factor other than age. See *Hazen Paper v. Biggins, 507 U.S. 604, 610-11, 123 L. Ed. 2d 338, 113 S. Ct. 1701 (1993)* (recognizing that an employer's ability to consider analytically distinct factors preclude saying that a decision is necessarily age based, even where a factor correlates with age). See also *Grossmann, 109 F.3d at 459* (holding that even if age and unwillingness to move correlate, they are not the same, so an employer could consider one without the other and fall within *Hazen Paper*).

But Safe Auto fails to address sufficiently the combined effect of Sterry's *other* allegations with the recent graduate policy, as viewed through the prism of the *Fed. R. Civ. P. 12(b)(6)* standard. Considered in this light, the Court must accept as true Sterry's contentions that Safe Auto altered the relevant job requirements and policies to effectuate intentional disproportionate consideration of younger applicants; such intentional "slanting" toward what Safe Auto knew would be an applicant pool consisting primarily of younger individuals would place individuals of greater age (such [*44] as Sterry) outside the reach of its hiring policies. In conjunction with the "true recent college graduate" requirements and the allegedly informal policy of hiring only those individuals lacking experience, such allegations raise an inference of stigmatizing age discrimination--at least enough of an inference so that the Court cannot say that it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. There is an inference that Safe Auto held stereotypical beliefs about the capabilities of older applicants that influenced its hiring practices and that Sterry's age was the determinative or motivating factor in the decision not to hire.

To the extent that Safe Auto attacks Sterry's claims based on a purported lack of evidence, such as in its reply brief statement that Sterry has no evidence that Safe Auto "*knew* that the pool of recent college graduates overwhelmingly consists of individuals under age 30," Safe Auto misses the significance of the procedural posture of this case. (Doc. # 9, at 5.) Today's decision is an outgrowth of the nature of the motion under consideration. The parties should not construe anything in [*45] this decision as precluding final disposition in another context, such as in summary judgment when Sterry cannot rely simply upon pleadings that the Court must currently accept as true and correct. The Court has determined simply that, in this procedural posture, Sterry has offered inferential allegations that could sustain recovery under a viable legal theory. Whether Sterry can indeed satisfy evidentiary demands of proof remains an open question for later consideration. See *Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1048 (6th Cir. 1998)* (noting the open issue of whether a disparate-impact theory under the ADEA survives *Hazen Paper* and the requisite need for specific evidence). Further, the question of whether all of her legal theories will bear out remains similarly open; to the extent that she is alleging disparate impact over disparate treatment, her claim may well fail. Compare *Pottenger v. Potlatch Corp., 329 F.3d 740, 749 (3rd Cir. 2003)* (noting that Third and Ninth Circuits permit disparate impact claim under ADEA) with *Carter v. Newman Memorial Cty. Hosp., 49 Fed. Appx. 243, 247 (10th Cir. 2002)* (declining to recognize [*46] disparate impact claim under ADEA).

The Court thus concludes that dismissal under *Fed. R. Civ. P. 12(b)(6)* is inappropriate. Given the rationale behind this determination, the Court need not and does not address the parties' arguments regarding the possible nullification of the *29 C.F.R. § 1625.4* prohibition on using any variation of "recent college graduate" in help wanted notices. See *Hodgson v. Approved Personnel Service, Inc., 529 F.2d 760, 765-67 (4th Cir. 1975)* (discussing context-dependent interpretation of language). Although that issue may well require resolution at a later date, an alternate rationale has proven dispositive of this aspect of the motion to dismiss.

V. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Safe Auto's motion to dismiss. (Doc. # 3.) Sterry's federal claim and her *Ohio Rev. Code § 4112.99* claim predicated upon *Ohio Rev. Code § 4112.02(A)* survive. The remaining state claims do not.

**IT IS SO ORDERED.**

GREGORY L. FROST

UNITED STATES DISTRICT [*47] JUDGE

LEXSEE

GEORGE WEBB, Plaintiff-Appellant, v. COMMUNICATIONS, LLC, Defendant-Appellee.

No. 05-1051

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

167 Fed. Appx. 725; 2006 U.S. App. LEXIS 1993

January 25, 2006, Filed

**NOTICE:** [**1] RULES OF THE TENTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** (D.C. No. 03 MK 1995 (MJW)). (D. Colorado).

**DISPOSITION:** AFFIRMED.

**COUNSEL:** For GEORGE WEBB, Plaintiff-Appellant: John R. Olsen, Olsen & Brown, Niwot, CO.

For LEVEL 3 COMMUNICATIONS, LLC, Defendant-Appellee: Richard P. Barkley, Lisa Hogan, Meghan W. Martinez, Brownstein, Hyatt & Farber, Denver, CO.

**JUDGES:** Before BRISCOE, HARTZ, and O'BRIEN, Circuit Judges.

**OPINIONBY:** Mary Beck Briscoe

**OPINION:**

[*726] **ORDER AND JUDGMENT** *

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff George Webb appeals the district court's order granting summary judgment for defendant, Level 3 Communications, LLC (Level 3), [**2] on his claims of age discrimination and retaliation in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

In 1997, at the age of fifty-five, Webb began working for a predecessor of Level 3 as a Senior Network Developer. Though he experienced some performance problems in 1998, overall Webb's performance met or exceeded expectations.

In 1999, Webb's supervisor inquired as to his willingness to relocate to Colorado. From the conversation, Webb inferred that moving to Colorado would help him advance within the company. Webb asked about a relocation package and believed that relocation expenses would be offered. During that conversation, however, his supervisor [*727] did not promise reimbursement and warned: "Don't do anything you can't get out of." App. at 176. Despite the warning, Webb and his wife put a deposit down on a home in Colorado. Early in 2000, Level 3 informed Webb that there was no money in the budget for relocation costs. Webb opted to proceed with the move, and in August 2000, he and his wife moved to Colorado.

In June 2001, [**3] Level 3 informed Webb that his position was being eliminated in a reduction in force (RIF) and that he would be terminated effective September 9, 2001. Webb began to think that Level 3 was treating him less favorably because of his age. Webb was saved from termination by Tim Leddy, Vice President of Customer Operations, who hired Webb as a Program Manager in the Customer Operations Department. Webb considered this to be a lateral move. After the move, Level 3 did not provide Webb with plans for his future development, something, he contends, the company routinely provided to younger employees. Webb grew concerned that he "was being set up for the next RIF when it came." App. at 188.

On December 31, 2001, Webb's job title changed to Program Manager II. Between June 2001 and January 2003, Level 3 had several additional RIFs, but Webb survived them.

On November 14, 2002, Webb met with Blake Isom, a Level 3 Human Resources Department representative, for assistance in "finding opportunities that could better utilize [his] experience and expertise . . . " within the company. App. at 166. During their meeting, Isom asked Webb, "Have you ever been discriminated against?" Id. at 167. [**4] Webb responded, "[A] case could probably be made for it." Id. at 167, 188. Webb did not file a complaint under Level 3's anti-discrimination policy, and he did not request an investigation into his allegation of discrimination. Isom did not investigate Webb's statement.

In January 2003, Level 3 instituted another RIF for economic reasons. Leddy needed to reduce the number of employees within his division and selected Webb for termination based on customers, work, sales, and input received from his supervisor regarding his performance and ability to contribute to the organization. During the RIF, Level 3 eliminated forty-nine employees: twenty-five were under the age of forty; and twenty-four were forty years old and over.

On January 16, 2003, Level 3 informed Webb that his position was being eliminated and that he was being terminated. Level 3 gave Webb the option of a severance package, which was offered to all impacted employees, or a modified retirement package. Level 3 gave Webb forty-five days to consider the two options. Webb applied for retirement benefits on April 8, 2003, but Level 3 denied his request because he did not apply for benefits within the forty-five day [**5] period.

After his termination, Webb applied for other positions with Level 3, for which he contends he was fully qualified. Webb never received an interview. On April 8, 2003, Webb filed a charge of discrimination with the EEOC. A few months later, Webb filed this action alleging discrimination and retaliation in violation of the ADEA. Level 3 filed a motion for summary judgment on both claims, which the district court granted. The district court found that the RIF was a legitimate nondiscriminatory reason for Webb's termination, and that Webb had failed to show that this reason was pretextual. As to Webb's retaliation claim, the district court held that Webb offered no evidence of a causal connection between the protected activity, Webb's conversation with Isom, and the adverse action, i.e., his termination.

[*728] II.

Webb argues that the district court erred in finding that Webb failed to present sufficient evidence of pretext to preclude summary judgment on his discrimination claim. He also contends the district court erred in finding that Webb did not produce sufficient evidence of a causal connection between the protected activity and his termination to set forth a prima facie case [**6] of retaliation.

*Standard of review*

This court reviews de novo a district court's grant or denial of summary judgment, applying the same standard as the district court. Alexander v. Oklahoma, 382 F.3d 1206, 1215 (10th Cir. 2004) (citation omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "We view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the nonmoving party." Combs v. PriceWaterhouse Coopers LLP, 382 F.3d 1196, 1199 (10th Cir. 2004) (citation omitted).

*Discrimination claim*

In this case, Webb presented no direct evidence of age discrimination and instead, relied on circumstantial evidence. When a plaintiff relies on circumstantial evidence to demonstrate employment discrimination, we apply the burden-shifting framework set forth in McDonnell Douglas and its progeny. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-07, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); [**7] Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002) (McDonnell Douglas applies to ADEA and Title VII claims).

Under the McDonnell Douglas framework, a plaintiff establishes a prima facie case of age discrimination by showing that he or she was: 1) within a protected age group; 2) doing satisfactory work or qualified for the position; 3) discharged; and 4) replaced by a person outside the protected age group. Branson v. Price River Coal Co., 853 F.2d 768, 770 (10th Cir. 1988); EEOC v. Sperry Corp., 852 F.2d 503, 507 (10th Cir. 1988). In RIF cases, a plaintiff is not always replaced with another employee. Thus, courts have modified the fourth element so that a plaintiff may produce "evidence, circumstantial or direct, from which a fact finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." Branson, 853 F.2d at 771 (internal quotation marks and citation omitted). The fourth element may also be established through circumstantial evidence that a "plaintiff was treated less favorably than younger employees during the [RIF]." Id.

Once [**8] a plaintiff establishes a prima facie case, the burden of production shifts to the defendant to show

a legitimate, nondiscriminatory reason for the decision. Sperry, 852 F.2d at 507. If the defendant offers such evidence, "the presumption of discrimination established by the prima facie showing 'simply drops out of the picture.'" Ingels v. Thiokol Corp., 42 F.3d 616, 621 (10th Cir. 1994) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)). A plaintiff must then offer evidence that age was a determining factor in the challenged decision, by either showing that the defendant's proffered reasons were a pretext for age discrimination or by producing direct evidence of age discrimination. Ingels, 42 F.3d at 621. A plaintiff "need not disprove defendant's reasons or demonstrate that age was the only factor motivating the decision, but [he or she] [*729] must show that age actually played a role in the employer's decisionmaking process and had a determinative influence on the decision." Jones v. Unisys Corp., 54 F.3d 624, 632 (10th Cir. 1995) (internal quotation marks, citation [**9] and bracket omitted). Evidence of pretext may include: "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating criteria); and the use of subjective criteria." Garrett, 305 F.3d at 1217 (internal quotation marks and citations omitted).

Level 3 does not dispute that Webb set forth a prima facie case of discrimination. Likewise, Webb does not contest the district court's finding that Level 3 set forth a legitimate nondiscriminatory reason for terminating Webb. The parties, however, dispute whether Webb set forth sufficient evidence that Level 3's reason is a pretext for discrimination.

In RIF cases, a plaintiff can show pretext in three principal ways. Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1168 (10th Cir. 1998). While most plaintiffs' arguments fit within these three categories, we have not foreclosed other methods of demonstrating pretext. Id. at 1168 n. 6. First, a plaintiff can show that his or her termination does not accord with the criteria allegedly used to select those for the RIF. [**10] Id. at 1168. While this "evidence can in some cases suffice to substantiate pretext . . . minor inconsistencies in the application of RIF criteria may be too insubstantial to allow a reasonable jury to infer that the RIF was pretextual." Id. (citations omitted). Second, a plaintiff can produce evidence that his or her evaluation under the defendant's RIF criteria was deliberately falsified or manipulated to effect his or her termination. Id. (citation omitted). Evidence that a supervisor responsible for assessing performance displayed ageist animus is one way of demonstrating manipulation or falsification of an evaluation. Id. Third, a plaintiff can adduce evidence that the RIF was generally pretextual, i.e., that its goal was to eliminate older employees and replace them with new hires. Id. Statistical evidence may be relevant for this purpose. Id.

Webb argues that he presented sufficient evidence from which a jury could have found that his inclusion in the January 2003 RIF was a pretext for age discrimination.

*a. Overall age of workforce*

Webb argues that, overall, Level 3's workforce was "very young," and from this, he contends a jury may [**11] infer that Level 3 had a bias against older workers and discriminated against Webb on the basis of age. He bases this statement on his own observations and on a finding by this court in Abuan v. Level 3 Communications, Inc., that "the workforce at Level 3 was primarily under forty." 353 F.3d 1158, 1165 (10th Cir. 2003).

Level 3's workforce is young. At the time of the January 2003 RIF, the company's workforce, including those affected by the RIF, consisted of 1,694 employees under forty years of age and 666 employees forty years old and over. This fact alone, however, is not evidence of pretext.

While "statistical data showing an employer's pattern of conduct toward a protected class can create an inference that an employer discriminated against individual members of the class," Fallis v. Kerr-McGee Corp., 944 F.2d 743, 746 (10th Cir. 1991) (citation omitted), we have cautioned against its usage. "Statistics taken in isolation are generally not probative of age discrimination." Jones, 54 F.3d at 632 (citation omitted). To create an inference of discrimination, statistical evidence [*730] "must show a significant disparity and eliminate [**12] nondiscriminatory explanations for the disparity." Fallis, 944 F.2d at 746 (citation omitted). "In other words, a plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals." Id. (citation and emphasis omitted).

In this case, the fact that Level 3's workforce has a greater number of employees under the age of forty is not evidence of pretext. By considering the overall composition of Level 3's workforce, one effectively groups all employees regardless of specialty or skill, fails to compare similarly situated individuals, and fails to eliminate numerous nondiscriminatory reasons for the fact that Level 3's workforce is young. Accordingly, the overall age of Level 3's workforce, without more, is insufficient to raise a genuine issue of material fact as to pretext.

*b. Webb's beliefs as to his qualifications*

As further evidence of pretext, Webb contends he had more experience and was better qualified than other younger employees who received promotions and were not terminated in the RIF. Webb also argues that he performed his job well and [**13] received excellent performance evaluations. An employee's own opinions, however, about his or her qualifications do not establish a material factual dispute on the issue of pretext. Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1329 (10th Cir. 1999) (citation omitted); see also Furr v. Seagate Tech., Inc., 82 F.3d 980, 988 (10th Cir. 1996) ("It is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his [or her] own relative performance.") (citation omitted).

Webb offers the names of ten individuals whom he contends are younger and less experienced but received promotions. The record contains virtually no evidence as to the specific qualifications of each of these individuals, and the little evidence Webb presented was based on hearsay, vague generalities, and speculation. Webb also failed to identify, with any detail, when these alleged promotions occurred and how these prior incidents are connected to his termination in the January 2003 RIF. See Simms, 165 F.3d at 1330 (recognizing that prior incidences of alleged discrimination are not [**14] probative of pretext unless they can be connected to the employment action at issue).

### c. Other instances of alleged discrimination

Webb argues that his failure to receive promotions and relocation expenses, as well as his inclusion in the June 2001 RIF, constitute evidence of pretext. This evidence is also insufficient to establish pretext.

Webb has failed to present any evidence connecting these prior incidences with Leddy's decision to include him in the January 2003 RIF. See Simms, 165 F.3d at 1330 (prior incidents are not "probative of pretext unless the prior incidences of alleged discrimination can somehow be tied to the employment actions disputed in the case at hand") (citations omitted). While a plaintiff can connect prior incidences of discrimination by showing that the same supervisors were involved in the prior discriminatory employment actions, Heno v. Sprint/United Mgmt. Co., 208 F.3d 847, 856 (10th Cir. 2000) (citation omitted), Webb is unable to make such a showing. Between 1999 and 2003, Webb worked in two different departments and had numerous different supervisors. Though Leddy made the decision to terminate [*731] Webb, Leddy did not make the [**15] decision to deny him relocation benefits, deny him promotions, or include him in the June 2001 RIF. Rather, Leddy saved Webb from termination in June 2001 by giving him a position in the Customer Operations Department. There is nothing in the record to connect these alleged prior events to his 2003 termination.

The prior alleged incidences of discrimination are also too remote in time to be considered when determining whether the reasons given for Webb's 2003 RIF termination were pretextual. Discriminatory incidents which allegedly occurred "either several years before the contested action or anytime after are 'not sufficiently connected to the employment action in question to demonstrate pretext.'" Id. (quoting Simms, 165 F.3d at 1331 (holding that discriminatory event which took place three years before was too remote)). Here, Webb relocated to Colorado in August 2000. Before he relocated, Level 3 informed Webb that relocation expenses were not available. Viewing the evidence in a light most favorable to Webb, the denial of relocation expenses occurred in August 2000 at the latest, nearly two and one-half years before his termination in January 2003. Likewise, [**16] the first RIF occurred in June 2001, over one and one-half years before his ultimate termination. These events are too remote in time to establish evidence of pretext. See Heno, 208 F.3d at 856; Simms, 165 F.3d at 1331. As to the alleged promotions of younger employees, the record is devoid of sufficient details to determine when the promotions of his peers occurred, and thus, we are unable to conclude that those instances are evidence of pretext. Webb also contends that his failure to receive retirement benefits and his unsuccessful attempts to apply for other positions at Level 3 are evidence of pretext. These actions, however, occurred subsequent to his termination, and thus, are not sufficiently connected to his termination to demonstrate pretext. See id.

### d. Webb's meeting with human resources

Webb argues that Level 3's failure to conduct an investigation into his statement regarding age discrimination is evidence of pretext. Webb testified, however, that he did not intend to raise allegations of discrimination during the meeting with human resources, did not expect Level 3 to conduct an investigation after the meeting, never filed a [**17] formal internal complaint regarding this allegation, and never followed up on his allegation in any way. This meeting, without more, is simply not evidence of discrimination.

### e. January 2003 RIF

Webb contends that his inclusion in the RIF was pretextual because: 1) he did not fit within the criteria for layoff and was the only Program Manager selected for termination; n1 2) Level 3 used subjective criteria; 3) Level 3 did not include younger employees in the layoff; and 4) Level 3 reassigned his duties to a younger employee.

n1 Factually, Webb's allegation is not entirely accurate. Webb was one of seven individuals who held the position of Program Manager II. Of the seven, four were under the age of forty, and three were over forty years of age. Webb was the only Program Manager II to be eliminated. Webb, however, has attempted to include Program Managers as comparables, but the two positions, Program Manager and Program Manager II, are different.

Webb contends that Kevin O'Hara, President of Level 3, announced [**18] in a conference call that the selection criteria for the RIF were: performance, skills and qualifications, and tenure with the company. [*732] Webb argues that Level 3 did not follow these criteria because a Human Resources representative, Rob Zwolfer, told him that his position simply had been eliminated. Webb asserts that the elimination of his position contradicts the use of these criteria because "he had more seniority, more experience and superior contributions as compared to his peers." Appellant Br. at 13; App. at 222.

Webb's beliefs that he had more seniority, more experience, and superior contributions when compared to his peers is insufficient to prove pretext. See Simms, 165 F.3d at 1329 (an employee's own opinions about his or her qualifications do not give rise to a material factual dispute on the issue of pretext); Rea v. Martin Marietta Corp., 29 F.3d 1450, 1456 (10th Cir. 1994) ("Plaintiff's evidence of [his or] her satisfactory work performance is not probative because in a [RIF] case, someone has to be let go, . . . including satisfactory employees.") (internal quotation marks and citation omitted). Moreover, Webb has failed to provide [**19] any specific facts for this conclusory statement. There is virtually no evidence in the record, aside from vague generalities and speculation, as to the qualifications of Webb's peers.

As to Webb's allegation of subjective decisionmaking, generally courts view subjective evaluation methods with skepticism. Garrett, 305 F.3d at 1218 (citations omitted). However, "the use of subjective criteria does not suffice to prove intentional discrimination." Doan v. Seagate Tech., Inc., 82 F.3d 974, 978 (10th Cir. 1996) (citation omitted); see also Bauer v. Bailar, 647 F.2d 1037, 1046 (10th Cir. 1981) ("Subjective considerations are not unlawful per se. . . . An employer has discretion to choose among equally qualified candidates, provided that the decision is not based upon unlawful criteria.") (internal quotation marks and citation omitted). "We typically infer pretext . . . only when the criteria on which the employers ultimately rely are entirely subjective in nature." Jones v. Barnhart, 349 F.3d 1260, 1267-68 (10th Cir. 2003) (citations omitted).

While Level 3's criteria involved some subjective considerations, Webb has [**20] not shown that Leddy's decision was based entirely upon subjective criteria. Rather, the evidence indicates that Leddy considered both objective and subjective criteria. Leddy had to reduce the head count within his division and made the ultimate decision to terminate Webb. He selected Webb based on customers, work, sales, and input received from his supervisor, Davetta Garcia, regarding Webb's performance and ability to contribute to the organization. Customers, work, and sales are objective factors. Garcia, too, employed some objective factors in her evaluations, ranking employees based on the number of accounts the employee worked with, the employee's performance and job evaluations, whether the individual was a team player, and the additional benefits the individual contributed to her group. While Garcia's ranking included both objective and subjective considerations, there is no evidence in the record that Webb scored higher on the objective factors (e.g., number of accounts and evaluations) than his younger coworkers. It is not our role to re-compare the qualifications of these employees to determine whether some other employee may have satisfied more RIF criteria than Webb. [**21] "Our role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." Simms, 165 F.3d at 1330 (internal quotation marks and citation omitted); see also Doan, 82 F.3d at 978 ("The manner in which a company chooses to conduct a RIF is within the company's sound business discretion . . . .").

[*733] Webb also contends that younger employees were not included in the RIF. Webb's allegation is factually incorrect. It is undisputed that of the forty-nine employees included in the RIF, twenty-five were under the age of forty, and twenty-four were forty years old and over.

Last, Webb disputes the fact that his position was eliminated because, he contends, his responsibilities were still performed after the layoff. In a RIF case, a plaintiff may show pretext by presenting evidence that his job was not eliminated. Abuan, 353 F.3d at 1169. "The test for position elimination [, however,] is not whether the responsibilities were still performed, but rather whether the responsibilities still constituted a single, distinct position." Furr, 82 F.3d at 988. Thus [**22] the fact that Webb's responsibilities existed after the layoff is not evidence of discrimination. Webb contends that a younger employee, Jayson Pearce, assumed his duties after his termination. This, however, is factually incorrect. Pearce assumed Webb's responsibilities when Webb left his position as Senior Network Developer in the Network Development Department in 2001 to became a Program Manager in the Customer Operations Depart-

ment. Pearce did not assume his responsibilities after the January 2003 RIF. The district court found that Webb presented evidence that his job duties were divided among other employees. While we do not believe the record is quite that clear as to the division of Webb's responsibilities, there is no evidence that his duties continued within a single, distinct position after his termination.

*f. Webb's remaining evidence*

Webb makes two final arguments regarding pretext: 1) Level 3 initially hired older employees in order to "milk" their expertise; and 2) instead of terminating Webb in June 2001, Level 3 placed him in another position which made him vulnerable to future layoffs. Webb has presented no evidence to support his conspiracy theory. Both allegations [**23] are based purely upon speculation, and speculation is insufficient to raise a genuine issue of material fact as to pretext. See Doan, 82 F.3d at 977 ("Speculation . . . will not suffice for evidence.")

Based on the foregoing, Webb has failed to present sufficient evidence of pretext to preclude summary judgment on his age discrimination claim.

*Retaliation claim*

The anti-retaliation provision of the ADEA forbids an employer from discriminating against an employee because he or she "has opposed any practice made unlawful" by the statute, or because he or she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation" under the statute. 29 U.S.C. § 623(d).

ADEA retaliation claims are analyzed under the analytical framework set forth in McDonnell Douglas. Lujan v. Walters, 813 F.2d 1051, 1058 (10th Cir. 1987). Initially, under this framework, the plaintiff must establish a prima facie case. Anderson v. Phillips Petroleum Co., 861 F.2d 631, 634 (10th Cir. 1988) (citation omitted), overruled on other grounds by Hazen Paper Co. v. Biggins, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993). [**24] The burden then shifts to the employer to offer a legitimate non-retaliatory reason for the adverse action. Id. (citation omitted). Once the employer offers such a reason, the burden shifts back to the plaintiff to raise a genuine dispute of material fact as to whether the employer's proffered reason is pretextual. Id. (citations omitted).

[*734] To establish a prima facie case of retaliation, Webb must demonstrate: 1) he availed himself of a protected right under the ADEA, such as opposing an employer's discrimination on the basis of age; 2) he was adversely affected by an employment decision; and 3) a causal connection between the two actions. MacKenzie v. City and County of Denver, 414 F.3d 1266, 1278-79 (10th Cir. 2005).

Webb contends that Level 3 retaliated against him for discussing his belief with human resources on November 14, 2002, that he had been discriminated against on account of age. Webb argues that we should infer retaliation from the temporal proximity between the protected activity and the adverse action, which in this case amounts to approximately two months. He also contends that his discussion with Leddy following Webb's termination is evidence [**25] that Leddy was aware of Webb's prior discussion with Isom. n2

---

n2 According to Webb, after his termination, he and Leddy had a discussion during which Webb expressed certain concerns about his subordinates. Webb contends that "out of the blue, [Leddy] asked me if I believed that I had been discriminated against." App. at 188. In response, Webb stated that he did not intend to complain about discrimination at this time. Webb now argues that Leddy's question is evidence that Leddy was "well aware" of Webb's prior complaint to Isom. Appellant Br. at 25.

---

A causal connection "may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Burrus v. United Tel. Co. of Kan., Inc., 683 F.2d 339, 343 (10th Cir. 1982) (citation omitted). "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation. [**26] " O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001) (citation omitted). Temporal proximity of two months between the protected conduct and an adverse employment action may be sufficient to establish a prima facie case of retaliation. See Annett v. Univ. of Kan., 371 F.3d 1233, 1240 (10th Cir. 2004) (concluding that a period of two to three months between the protected activity and the alleged retaliatory action was sufficient to establish causation); Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999) (assuming that two months and one week between protected activity and adverse action was sufficient to support a prima facie case of retaliation); n3 Ramirez v. Oklahoma Dep't of Mental Health, 41 F.3d 584, 596 (10th Cir. 1994) (concluding that a one and one-half month period between protected activity and adverse action may establish causation); but see Meiners v. Univ. of Kan., 359 F.3d 1222, 1231 (10th Cir. 2004) (a minimum of two months and one week and a maximum of just under three months between the protected

conduct and the adverse action is "probably too far apart [**27] . . . to establish causation by temporal proximity alone."). [*735] Though we have not definitively held that two months between the protected activity and the adverse action is sufficient in itself to establish causation, on these facts, we assume, as we did in Coors Brewing Co., that two months is sufficient.

> n3 In Coors Brewing Co., however, we did not explicitly find that two months was sufficient:
>
>> For example, we have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. . . . By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation. . . . Thus, we find ourselves three weeks short of three months and three weeks past one and one-half months. We need not decide on which side the line should be drawn, however, because assuming two months and one week is sufficient to support a prima facie case of retaliation, Plaintiff cannot prove that Defendant's proffered reason for terminating her was pretextual.
>
> Coors Brewing Co., 181 F.3d at 1179 (internal citations omitted).

[**28]

While, as a general rule, temporal proximity may be sufficient to establish a causal connection between the protected activity and the adverse action, we still require a plaintiff to show that the individual who took the adverse action against plaintiff also knew of the employee's protected activity. See Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993) (holding that a plaintiff must show that the individual who took the adverse action against him or her knew of the employee's protected activity). Here, Webb failed to raise a genuine issue of material fact as to whether Leddy knew of Webb's protected activity, i.e., his statement to Isom concerning discrimination. Webb contends that following his termination, Leddy asked him if he believed he had been subject to discrimination. Webb argues that this statement by Leddy is evidence that Leddy was aware of Webb's prior conversation with Isom in human resources. We disagree. Leddy denies knowing, and Isom denies telling Leddy, about the meeting prior to Webb's termination. Webb did not present any evidence rebutting this testimony. Assuming Leddy made such an inquiry after Webb's termination, we do not believe a reasonable [**29] juror could infer, from that statement alone, that Leddy had knowledge of Webb's prior meeting with Isom.

Alternatively, even if Webb had set forth a prima facie case of retaliation, Webb's claim necessarily fails on the issue of pretext. As previously noted with respect to his discrimination claim, Level 3 set forth a legitimate, non-retaliatory reason for its decision to terminate him - a RIF - and Webb failed to present sufficient evidence that Level 3's proffered reason was a pretext for unlawful discrimination or retaliation.

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe

Circuit Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2006, I electronically filed a true and correct copy of **Compendium of Unreported Decisions** with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Woody Anglade
Trial Attorney
Equal Employment Opportunity Commission
Philadelphia District Office
21 South 5th Street, Suite 400
Philadelphia, PA 19106

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Margaret M. Di Bianca
Teresa A. Cheek, Esquire (No. 2657)
Margaret M. DiBianca, Esquire (No. 4539)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-5008
Facsimile: (302) 576-3476
Email: mdibianca@ycst.com
Attorneys for Defendant

Dated: September 5, 2006