**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 05-697-KAJ |
| v. | ) | |
| | ) | |
| BE&K ENGINEERING COMPANY | ) | |
| (subsidiary of BE&K, Inc.), | ) | |
| Defendant. | ) | |

**BE&K ENGINEERING COMPANY'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO STRIKE PAGES B285 – B288 OF PLAINTIFF'S APPENDIX TO
ITS RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Teresa A. Cheek (Bar I.D. 2657)
Margaret M. DiBianca (Bar I.D. 4539)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-5008
Facsimile: (302) 576-3476
Email: mdibianca@ycst.com
Attorneys for Defendant

DATED: October 4, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ......................................................... iv

ARGUMENT ............................................................................................. 1

I.   Neither the Swamy Letter Nor the Perez Draft Statement Satisfy the Basic
     Technical Requirements of Rule 56 ............................................................. 1

     A.   The Swamy Letter Is an Unsworn, Uncertified Document that Does
          Not Satisfy the Technical Requirements of an Affidavit Submitted
          Pursuant to Rule 56(e) ................................................................. 1

     B.   The Perez Draft Statement Is an Unsigned, Undated, and Unsworn
          Document that Does Not Satisfy the Technical Requirements of an
          Affidavit Submitted Pursuant to Rule 56(e) ......................................... 3

II.  Neither the Swamy Letter Nor the Perez Draft Statement Satisfy the Substantive
     Requirements of Rule 56. ....................................................................... 4

     A.   The Swamy Letter is Consists of Speculations and Conjecture
          Unsupported by the Affiant's Personal Knowledge. ................................. 4

     B.   The Perez Draft Statement Is a Sham Affidavit and Should Be
          Stricken From the Record ............................................................. 6

CONCLUSION ............................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

Adickes v. S.H. Kress & Co.,
  398 U.S. 144 (1970).................................................................................... 8

Andrews v. Abbott Labs.
  C.A. No. 00-901-GMS,
  2002 U.S. Dist. LEXIS 6832 (D. Del. April 18, 2002)................................. 10

Baer v. Chase
  No. 05-2425,
  2006 U.S. App. LEXIS 10833 (3d Cir. May 1, 2006) ................................... 12

Barclay v. Amtrak
  435 F. Supp. 2d 438, 445 (E.D. Pa. 2006) .................................................. 13

Big Wheel Holding Co., Inc.
  Case No. 93-796,
  1998 Bankr. LEXIS 984 (May 29, 1998) ..................................................... 13

Carey v. Beans,
  500 F. Supp. 580 (E.D. Pa. 1980),
  aff'd without op., 659 F.2d 1065 (3d Cir. 1981) ................................. 7, 10, 11

Doe v. Dallas Indep. Sch. Dist.
  220 F.3d 380 (5th Cir. 2000),
  cert. denied, 531 U.S. 1073 (2001) ............................................................. 12

Drexel v. Union Prescription Ctrs., Inc.
  582 F.2d 781 (3d Cir. 1978) ........................................................................ 12

Dugan v. Pa. Millers Mut. Ins. Co.
  871 F. Supp. 785 (M.D. Pa. 1994),
  aff'd without op., 68 F.3d 456 (3d Cir. 1995) ............................................... 9

Fowle v. C & C Cola, Div. of ITT-Continental Baking Co.
  868 F.2d 59 (3d Cir. 1989) ........................................................................... 8

Goff v. Bayada Nurses, Inc.
  424 F. Supp. 2d 816 (E.D. Pa. 2006) .......................................................... 18

Hlinka v. Bethlehem Steel Corp.,
  863 F.2d 279 (3d Cir. 1988) .................................................................. 6, 11

Kennedy v. Allied Mut. Ins. Co.
  952 F.2d 262 (9th Cir. 1991) ....................................................................... 17

Lujan v. Nat'l Wildlife Fed'n
    497 U.S. 871 (1990) ................................................................ 11

Mack v. U.S.
    814 F.2d 120 (2d Cir. 1987) ................................................... 15

Maldonado v. Ramirez
    757 F.2d 48 (3d Cir. 1985) ............................................... 11, 12

Martin v. Merrell Dow Pharma., Inc.
    851 F.2d 703 (3d Cir. 1988) ............................................. 12, 13

Nissho-Iwai Amer. Corp. v. Kline,
    845 F.2d 1300 (5th Cir. 1988) .................................................. 8

Overall v. Univ. of Penn
    412 F.3d 492 (3d Cir. 2005) ................................................... 19

Patterson v. Chicago Ass'n for Retarded Citizens
    150 F.3d 719 (7th Cir. 1998) ................................................. 18

Pension Benefit Guaranty Corp. v. Heppenstall Co.
    633 F.2d 293 (3d Cir. 1980) ..................................................... 9

Schoch v. First Fidelity Bancorporation
    912 F.2d 654 (3d Cir. 1990) ................................................... 11

Turiano v. Schnarrs,
    904 F. Supp. 400 (M.D. Pa. 1995) ........................................... 7

Unterreiner v. Volkswagen of Am., Inc.
    8 F.3d 1206 (7th Cir. 1993) ............................................. 17, 19

**Statutes and Other Authorities**

28 U.S.C. § 1746 ................................................................... 2, 4

Age Discrimination in Employment Act
    29 U.S.C. § 623 ..................................................................... iv

Fed. R. Civ. P. 56(c) ............................................................... vi

Fed. R. Civ. P. 56(e) ........................................................... vi, 2

James Wm. Moore, Moore's Fed. Practice § 56.14 .................. vi, 1, 2

      

## NATURE AND STAGE OF THE PROCEEDINGS

The present litigation was initiated by Plaintiff Equal Employment Opportunity Commission ("EEOC") on September 23, 2005, when it filed its Complaint against Defendant BE&K Engineering Company ("BE&K") alleging that BE&K had laid off Juan Obed Perez on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623. (D.I. 1). On September 5, 2006, BE&K filed its Motion for Summary Judgment, asking the Court to dismiss Plaintiff's Complaint in its entirety. (D.I. 43). That Motion is presently pending before the Court.

EEOC filed its Brief In Opposition of Defendant's Motion on September 27, 2006. (D.I. 50). EEOC contemporaneously filed an Appendix in Support of its Opposition. (D.I. 51). The Appendix contains various documents produced during discovery and excerpts from deposition transcripts of various witnesses. (D.I. 51). Two of the documents contained in EEOC's Appendix, found at pages B285 – B288, are the subjects of the present Motion to Strike.[1]

The first document, found at page B285, is an unworn and uncertified letter by a former BE&K employee, Narayan Swamy, ("the Swamy Letter"). The second document, found at pages B286 – B288 of Plaintiff's Appendix, is an unsigned, undated and unsworn document in what appears to be a draft format entitled, "Affadvit [sic] of Juan Obed Perez," (the "Perez Draft Statement"). Because neither document complies with the basic requirements of Rule 56(e), both must be stricken from the record in their

---

[1] Both documents have been filed with the Clerk of the Court and are presently on the Court's docket as pages B285-288 of D.I. 51. However, for the Court's convenience, a copy of each document at issue is attached hereto as Exhibit 1, (D.I. 51 at B285) (the "Swamy Letter"), and Exhibit 2, (D.I. 51 at B286-B288) (the "Perez Draft Statement"). Additionally, the portions of Perez's deposition testimony cited in Section III of this Brief, are attached hereto for the Court's convenience as Exhibit 3.

iv

entirety and may not be considered in opposition of the pending Motion for Summary Judgment.

## SUMMARY OF THE ARGUMENT

1.      Neither the Swamy Letter nor the Perez Draft Statement meet the standards for admissibility as set forth in Rule 56 of the Federal Rules of Civil Procedure and, therefore, should be stricken from the record in their entirety. Any purported statements made by EEOC in reliance on these documents should also be stricken.

2.      Rule 56 identifies provides that affidavits may be used to support or oppose a summary judgment motion.  Fed. R. Civ. P. 56(c).

3.      Rule 56(e) sets forth the technical requirements for affidavits submitted in opposition to a summary judgment motion.  Fed. R. Civ. P. 56(e).  To qualify as a valid submission, an affidavit must be sworn, signed and dated under the penalty of perjury. James Wm. Moore, Moore's Fed. Practice § 56.14(1)(b) (Matthew Bender 3d ed.).

4.      Rule 56(e) also sets forth the substantive requirements for affidavits, including that the affidavit be based on personal knowledge, establish facts that would be admissible in evidence, and show that the affiant is competent to testify on all matters contained in the affidavit.  Fed. R. Civ. P. 56(e).  Affidavits that contain conclusory statements based on speculation or conjecture will be stricken upon motion of a party.

5.      Neither the Swamy Letter nor the Perez Draft Statement satisfy the technical requirements of Rule 56(e) and, therefore should be stricken from the record in their entirety.

6.      The Swamy Letter is an unsworn document.  Because it was not sworn under the penalty of perjury, the Letter should not be considered for the purposes of the pending Motion for Summary Judgment.

7.      The Perez Draft Statement also fails to comply with the basic technical requirements of Rule 56(e).  The document is not signed, dated, or sworn, and, therefore, does not qualify for consideration as an affidavit, which, by definition, is a sworn document.  Without these basic essential elements, the Draft Statement should not be considered for the purposes of the pending Motion for Summary Judgment.

8.      The Swamy Letter further fails to comply with Rule 56(e) on substantive grounds.  The Swamy Letter is based only on unsupported and conclusory allegations by the signatory.  Further, the signatory does not state, or even infer, that he has any personal knowledge of the facts giving rise to his allegations.  Such speculations and assumptions are not eligible for consideration in a summary judgment motion.

9.      The Perez Draft Statement substantively fails to comply with Rule 56(e) by making contradictory and inconsistent statements with Perez's deposition testimony.  Plaintiff may not intentionally create an issue of fact by contradicting prior sworn testimony without any reasonable explanation for such contradiction.

10.     Neither the Swamy Letter nor the Perez Draft Statement meet the technical nor substantive requirements as set forth in the Rule 56 and, therefore, both should be stricken from the record in their entirety.  Hlinka v. Bethlehem Steel Corp., 863 F.2d 279, 281-82 (3d Cir. 1988).

i

**ARGUMENT**

I.   **NEITHER THE SWAMY LETTER NOR THE PEREZ DRAFT STATEMENT SATISFY THE BASIC TECHNICAL REQUIREMENTS OF RULE 56**

In the Third Circuit, an affidavit filed in opposition to a motion for summary judgment must meet both the technical and substantive requirements of Federal Rule of Civil Procedure 56.  For technical purposes, the document must be signed and sworn by the affiant under the penalty of law.  11 James Wm. Moore, Moore's Fed. Practice § 56.14(1)(b) (Matthew Bender 3d ed.).  Substantively, the document must satisfy a three-part test: (1) it must be based on personal knowledge; (2) it must be devoid of hearsay and conclusory language; and (3) it must not contain statements that purport to examine thoughts as well as actions.  Carey v. Beans, 500 F. Supp. 580, 583 (E.D. Pa. 1980), aff'd without op., 659 F.2d 1065 (3d Cir. 1981); Turiano v. Schnarrs, 904 F. Supp. 400, 407 (M.D. Pa. 1995).  Failure to satisfy any one of the technical or substantive requirements for the adequacy of an affidavit will, upon motion by a party, result in the affidavit being stricken from the record.  Once stricken, neither the documents nor any statements made in reliance on the documents may be considered for the purposes of summary judgment.

A.   **The Swamy Letter Is an Unsworn, Uncertified Document that Does Not Satisfy the Technical Requirements of an Affidavit Submitted Pursuant to Rule 56(e)**

The Swamy Letter is a signed but unsworn letter addressed to, "To Whom It May Concern," with a typed date inserted on a line below the return address.  See Exhibit 1.  An unsworn document, such as the Swamy Letter, is not admissible in opposition of a Motion for Summary Judgment.  See Adickes v. S.H. Kress & Co., 398

1

U.S. 144, 158 n.17 (1970) (unsworn statement does not meet the requirements of Rule 56(e)).

"By definition, an affidavit is a sworn document, declared to be true under the penalties of perjury." 11 Moore's Fed. Practice § 56.14(1)(b) . An unsworn statement does not meet the requirements of Rule 56(e) and, as such, may not be considered for the purposes of summary judgment. Fowle v. C & C Cola, Div. of ITT-Continental Baking Co., 868 F.2d 59, 66 (3d Cir. 1989) (refusing to consider an unsworn expert report in an age discrimination case).

Title 28, Section 1746 of the United States Code provides for an exception to the requirement that an affidavit be sworn or certified. 28 U.S.C. § 1746. This provision, entitled "Unsworn Declarations Under Penalty of Perjury," provides that an unsworn declaration has the force of an affidavit when written, dated and signed in substantially the following form:

> I declare (or certify, verify, or state) under the penalty of perjury that the foregoing is true and correct.
>
> Executed on (date).
>
> (Signature).

28 U.S.C. § 1746. The Swamy Letter contains no such declaration nor does it state that it was executed "under the penalty of perjury." See Exhibit 1. Therefore, Section 1746 cannot convert the Swamy Letter to an affidavit.

Because the Swamy Letter is not an affidavit, it may not be considered for summary judgment purposes. See Nissho-Iwai Amer. Corp. v. Kline, 845 F.2d 1300, 1305-1306 (5th Cir. 1988) (holding that the court is prohibited from considering a submission that was unsworn and not declared to be true, even though it was called

"affidavit"). Therefore, the Swamy Letter, found at page B285 of Plaintiff's Appendix, should be stricken from the record in its entirety.

**B.     The Perez Draft Statement Is an Unsigned, Undated, and Unsworn Document that Does Not Satisfy the Technical Requirements of an Affidavit Submitted Pursuant to Rule 56(e)**

Like the Swamy Letter, the Perez Draft Statement also fails to comply with the requirements of Rule 56(e). This document purports to be an "Affadvit [sic]," but is not signed, dated or sworn. See Exhibit 2. It appears to be a draft statement intended for, but never executed by, Juan Perez. The Perez Draft Statement is inadmissible for the purposes of Rule 56.

The conspicuous absence of a signature is, perhaps, the document's most obvious failure. The lack of a signature prohibits the document from being considered, as an affidavit would be, in opposition to the pending Motion for Summary Judgment. See Dugan v. Pa. Millers Mut. Ins. Co., 871 F. Supp. 785, 792 (M.D. Pa. 1994) (holding, in an age and sex discrimination case, that "an unsigned affidavit is not entered into evidence and may not be used to defeat a motion for summary judgment"), aff'd without op., 68 F.3d 456 (3d Cir. 1995), see also Pension Benefit Guaranty Corp. v. Heppenstall Co., 633 F.2d 293, 300 (3d Cir. 1980) ("since this affidavit was unsigned, it was not in evidence and could not provide any basis for denying the summary judgment motions").

Although the lack of a signature removes the document from consideration, the fact that the document also was not sworn under penalty of perjury, further prevents its admission. As discussed in regards to the Swamy Letter, an unsworn statement may not be considered in a motion for summary judgment. See Andrews v. Abbott Labs., C.A. No. 00-901-GMS, 2002 U.S. Dist. LEXIS 6832, at *27 n.6 (D. Del.

3

April 18, 2002) (rejecting an unsworn document as evidence eligible for consideration in the court's summary judgment decision).[2]  And, although the document contains the language, "I declare under penalty of perjury that the foregoing is true and correct," as required by 28 U.S.C. § 1746, the document remains ineligible for the savings provision without a validly executed signature and contemporaneous date.  See 28 U.S.C. § 1746.

The Perez Draft Statement does not possess the necessary elements of a legally valid affidavit and, therefore, should not be considered for the purposes of the pending Motion for Summary Judgment.  The Perez Draft Statement, found at pages B286 – B288, should be stricken in its entirety from the record.

## II.    NEITHER THE SWAMY LETTER NOR THE PEREZ DRAFT STATEMENT SATISFY THE SUBSTANTIVE REQUIREMENTS OF RULE 56.

### A.    The Swamy Letter is Consists of Speculations and Conjecture Unsupported by the Affiant's Personal Knowledge.

Even assuming, *arguendo*, that the Court finds the Swamy Letter to constitute a validly executed affidavit, the Letter is still inadmissible under Rule 56(e).  "[A]ffidavits must be made upon personal knowledge, devoid of hearsay, conclusory language and statements which purport to examine thoughts as well as actions."  Carey v. Beans, 500 F. Supp. 580, 583 (E.D. Pa. 1980), aff'd without op., 659 F.2d 1065 (3d Cir. 1981).  The Swamy Letter does not satisfy these requirements.

The last paragraph of the Swamy Letter states:

Soon after my termination, BE&K employed 2 or three junior process engineers.  I believe that my termination [from BE&K] was related to my age.  I also believe that this decision was made by the Office Manager and Mr. Howe simply carried out this decision.

---

[2] This and all other unreported opinions have been attached for the Court's convenience as Exhibit 4.

See Exhibit 1.  Unsupported contentions based on personal belief are insufficient to satisfy the test for substantive admissibility under 56(e).  See Carey, 500 F. Supp. at 583 (striking from the record submissions in which "plaintiff speculated and opined concerning defendants' motives").

In Hlinka v. Bethlehem Steel Corp., 863 F.2d 279, 282 (3d Cir. 1988), the court held that an employee's affidavit could not be considered in deciding his employer's summary judgment motion because the employee said he "believed" that hundreds of similarly situated employees had been granted early retirement benefits. Therefore, the court held, his affidavit was not based on personal knowledge as required by Rule 56(e).  Id.

Similarly, the Swamy Letter, in which Mr. Swamy recites his "beliefs" about the circumstances surrounding his termination, cannot be considered a valid affidavit under Rule 56(e).  Statements prefaced by the phrase, "I believe" are properly subject to a motion to strike.  Id.; see also Carey 500 F. Supp. at 583 ("statements prefaced by the phrases, 'I believe' or 'upon information by belief' or those made upon an 'understanding' are properly subject to a motion to strike) (internal citations omitted).

Further, the Swamy Letter provides no factual basis for the stated beliefs. Affidavits that merely recite opinions or conclusions but which lack specific facts are insufficient on a motion for summary judgment.  Maldonado v. Ramirez, 757 F.2d 48, 51 (3d Cir. 1985).  Just as Plaintiff may not satisfy its burden with conclusory allegations in its opposition, neither may it meet its burden with conclusory allegations contained in an affidavit.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871 (1990) (cited by Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990)).  The Swamy Letter is

5

"'essentially conclusory' and lacking in specific facts" as to how he has come to believe that BE&K indeed did hire "2 or three junior engineers" "soon after [Swamy's] termination."   Maldonado, 757 F.2d at 51 (quoting Drexel v. Union Prescription Ctrs., Inc., 582 F.2d 781, 789-90 (3d Cir. 1978).  Nor does the Swamy Letter provide any factual basis for his entirely conclusory "belief" that his termination was somehow related to his age.  Id.

The Swamy Letter, which is deficient in technical form, also fails to comply with the substantive requirements of Rule 56(e) by making conclusory statements of opinion based only on personal "belief" without factual support and, therefore, should be stricken from the record and removed from consideration for the purposes of summary judgment.

**B.    The Perez Draft Statement Is a Sham Affidavit and Should Be Stricken From the Record**

Even assuming, *arguendo*, that, despite the fact that it is unsigned, unsworn and undated, the Court finds that the Perez Draft Statement constitutes a valid affidavit, the contents of the document would render it a sham, requiring the contradictory portions to be stricken from the record.  It is well-settled in the Third Circuit that a party cannot create an issue of fact by submitting a declaration or affidavit contradicting the affiant's prior deposition testimony.  See e.g., Martin v. Merrell Dow Pharma., Inc., 851 F.2d 703, 706 (3d Cir. 1988); Doe v. Dallas Indep. Sch. Dist., 220 F.3d 380, 386 (5th Cir. 2000), cert. denied, 531 U.S. 1073 (2001).  This rule, known as the "sham affidavit" doctrine,  permits a district court to disregard a subsequent affidavit that conflicts with prior sworn testimony.  See Baer v. Chase, No. 05-2425, 2006 U.S. App. LEXIS 10833, at *3 (3d Cir. May 1, 2006); Martin, 851 F.2d at 706.

6

The Third Circuit has explained the rationale for the rule, stating that when "the affiant was carefully questioned on the issue, had access to the relevant information at the time, and provided no satisfactory explanation for the later contradiction," "the objectives of summary judgment would be seriously impaired." Martin, 851 F.2d at 706 n.2.  A sham affidavit cannot be used to create a genuine issue of material fact, Barclay v. Amtrak, 435 F. Supp. 2d 438, 445 (E.D. Pa. 2006), and the portions of the affidavit that contain such contradictory evidence are properly stricken from the record.  In re: Big Wheel Holding Co., Inc., Case No. 93-796, 1998 Bankr. LEXIS 984, *at 8-9 (May 29, 1998) (striking certain paragraphs of affidavit that contradicted affiant's prior deposition testimony).

As set forth below, paragraphs 6, 8, and 11 of the Perez Draft Statement contradict his prior sworn deposition.  EEOC, however, has provided no plausible explanation for the serious contradictions.  Paragraphs 6, 8, and 11, and any factual references thereto, should be stricken from the record and not considered for purposes of the pending Motion for Summary Judgment.

### 1.    Paragraph 6 of the Perez Draft Statement Contradicts Perez's Prior Deposition Testimony

In Paragraph 6 of the Perez Draft Statement, Perez discusses his assignment on the Motiva project in 2002, on which he went over the project's estimated budget.  See Exhibit 2.  Paragraph 6 states in full:

> 6.    I went over the budget hours for the 2002 Motiva project **because I was not consulted** on the number of hours needed to complete the work, **which is typically done** at BE&K.  Further, **BE&K under budgeted the hours** for that project **because** this was their first contract with Motiva.  **BE&K wanted to ensure that they got repeat business** from the client.

7

<u>See</u> Exhibit 2 (emphasis supplied).  The substance of this text directly contradicts with

Perez's prior deposition testimony.  As compared in the table below, Perez's explanation

of the circumstances surrounding the project overruns are substantially different in the

recently produced Draft Statement than they were during his deposition when he was

questioned extensively about the Motiva project.

| Draft Statement ¶ 6 | Deposition Testimony |
|---|---|
| **Re:  The Budgeting Process for the Motiva Project** | |
| "I went over the budget . . . because I was not consulted on the number of hours needed to complete the work. . .." |  Reading from his 2002 performance review:<br><br>A:  [Obed worked] on the Motiva CCR scrubber project as the process engineer.  Project was completed with some engineering overruns for various reasons.  Obed learned a lot about lump sum projects while working on this.<br><br>Q: So as far as that goes, did you think that was pretty fair.<br><br>A:  Yes.  Because it was the first time that I worked in a project like that, and you know, my learning is that, you know, you are really tight on the amount of hours.<br><br>(Exhibit 3 at 218:10 – 219:1) |
| **Re:  The Typical Budgeting Process** | |
| ". . .I was not consulted on the number of hours . . ., which is typically done at BE&K." |  "BE&K estimates the man-hours, . . . engineering hours that are required to do that job.  And this normally is done by consulting."       (Exhibit 3 at 194:9:14)<br><br>"And per department they determine, based on the scope of work for them, how many hours will it take them to do the job. So engineer project managers gather this information, put it together and they come up with the total engineering hours. And then they manipulate the information to add other overheads and other things that I may not be aware of." (Exhibit 3 at 194:20 – 195:2) |

064649.1001

| Re: Underbudgeting the Motiva Project | |
|---|---|
| "BE&K under budgeted the hours [because they] wanted to ensure they got repeat business" | "And I was not the only [one] that was kind of complaining about what it has been done, not what BE&K did in a way, but we know BE&K bid it pretty low." <br><br> (Exhibit 3 at 217:12-16) |

During his deposition, Perez testified clearly about the "normal" way a budget is estimated.  See Exhibit 3 at 104-105.  He explained that the project managers and department consultants were assigned the task of estimating the number of hours needed to complete the project and, using that estimate, to figure in additional costs and expenses.  See Exhibit 3 at 104-105.  At no time did Perez testify that the engineer on the project would be consulted as a matter of course on the hours required to complete the project.

Perez also testified during his deposition about the budget for the Motiva project.  See Exhibit 3 at 103.  He stated that he felt BE&K had bid the project "pretty low."  See Exhibit 3 at 103.  Bidding low on a project is substantially different from the presumptuous statement that "BE&K under budgeted the hours [because they] wanted to ensure they got repeat business."  The presence of two conflicting versions of Perez's testimony, however, does not create a genuine issue of material fact  The contradictory portions of the affidavit should be stricken from the record and disregarded for the purposes of summary judgment.  See Mack v. U.S., 814 F.2d 120, 124 (2d Cir. 1987).

## 2.    The Last Sentence of Paragraph 8 and the First Sentence of Paragraph 11 in the Perez Draft Statement Contradict Perez's Prior Deposition Testimony

In the recently submitted Draft Statement, the author states, as a matter of fact, that Perez left the Tosco job site in August 2003.  See Exhibit 2.  This new

9

testimony directly contradicts Perez's deposition testimony, in which he twice stated that

he left the Tosco site and returned to BE&K's home office prior to August.  See Exhibit 3

at 232, 241.

| End Date of Tosco Project & Return to BE&K Office | |
|---|---|
| **Draft Statement** | **Deposition Testimony** |
| "Once the project was over, I returned to BE&K's office in Newark, Delaware for my next assignment in **August 2003**."  (¶8) | Q:  When did you stop working on site at Tosco?<br><br>A:  Just likely before – well, **maybe around May**.  Right now that's what I recall, **May**.<br><br>Q:  Okay.<br><br>A:  **May 2003**.<br><br>(See Exhibit 3 at 232:2-6) |
| "After I returned to the BE&K Newark, Delaware office once the Tosco project ended in **August 2003**, . . ."  (¶11) | Well, I went back to BE&K [from Tosco] **during mid-summer**.  I know the weather was getting better.  It was clear outside by the time[] that I was driving 4:00 in the morning, 5.<br><br>(See Exhibit 3 at 241:4-7). |

See Exhibit 3 at ¶¶8, 11 (emphasis supplied).

The Perez Draft Statement alleges an entirely new version of the timeline

of events leading to Perez's layoff.  The timeline directly contradicts Perez's deposition

testimony yet EEOC has provided no explanation for the inconsistent dates.  See

Unterreiner v. Volkswagen of Am., Inc., 8 F.3d 1206, 1210 (7th Cir. 1993) ("a party may

not create a genuine issue of fact by contradicting his own earlier statements, at least

without a plausible explanation for the sudden change of heart").  Because the August

10

date in the Draft Statement directly contradicts Perez's earlier sworn testimony and the contradiction is not accompanied by a credible explanation, the portions of the Statement containing the contradiction should be stricken from the record.  See Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991).

### 3.    Paragraph 11 of the Perez Draft Statement Contradicts Perez's Prior Deposition Testimony

In addition to the contradictory timeframe previously discussed, paragraph 11 of the Perez Draft Statement also contains an entirely new factual assertion.  See Exhibit 2.  Presumably, EEOC has included this new assertion in an attempt to create an issue of fact for summary judgment purposes.  The document states that, upon his return from Tosco, Perez was told that he "would be working on the Motiva Flare Network Modeling project."  See Exhibit 2 at ¶11.  Prior to the Draft Statement, there was no testimony that any such project even existed, nevertheless was, in any way, offered to Perez as filler or full-time work.  At no time during his deposition did Perez even state the words "flare," "network," or "modeling."

Instead, Perez provided testimony about the various projects to which he was assigned after the Tosco project.  He testified that, upon his return to the Newark office, he was given filler work on various projects that were already in progress.  See Exhibit 3 at 238:22 – 239:9.  When asked what other work he did during this time, Perez responded, "I don't recall.  There were minor things here and there."  See Exhibit 3 at 239:18-23.  Perez did not testify that he was, at some point, assigned to any specific project.  Nor did he, by any stretch of the linguistic imagination, provide such vividly detailed testimony regarding the circumstances surrounding this alleged project that never came to fruition.

The testimony not previously provided, found in Paragraph 11, is highly illustrative of the back-door tactics that the sham affidavit doctrine is intended to prevent. The issue of whether there were any suitable projects to which Perez could be assigned is at the heart of the present litigation. If Perez believed that there was another, potentially available project, such information should have been provided during the extensive deposition questioning about his BE&K projects. EEOC has attempted to add materially important facts to the record through the use of a last minute affidavit, which materially contradicts Perez's prior deposition testimony. See Goff v. Bayada Nurses, Inc., 424 F. Supp. 2d 816, 819 (E.D. Pa. 2006) (refusing to consider affidavit that conflicted with prior testimony).

EEOC cannot now create an issue of fact by contradicting Perez's earlier testimony, at least not without some plausible explanation for the sudden change. EEOC has provided no such reasons for Perez's recent ability to recall, in such vivid detail, descriptions about a project of which he previously had no recollection. Patterson v. Chicago Ass'n for Retarded Citizens, 150 F.3d 719, 724 (7th Cir. 1998) (it would be unfair to permit party to first admit no knowledge of a fact, but later come up with specific recollection to defeat summary judgment). Perez "cannot claim a lack of general knowledge about a subject and later make a statement which requires detailed knowledge about the same subject" in an attempt to raise an issue of disputed fact. Unterreiner, 8 F.3d at 120.

Because Perez was questioned at length during his deposition about the various projects to which he was assigned and, at no time, made any mention of a "Flare Network Modeling Project," or the circumstances surrounding the assignment of such a

12

project to him upon his return to the Newark office, and because EEOC does not now proffer any explanation for Perez's sudden ability to recall, this Paragraph qualifies as a sham and should be stricken from the record.  See Overall v. Univ. of Penn, 412 F.3d 492, 495 (3d Cir. 2005).  Any and all statements made by EEOC in reliance on the sham affidavit should also be stricken and should not be considered for the purposes of summary judgment.

## CONCLUSION

The Swamy Letter and the Perez Draft Statement, which were submitted by EEOC in opposition to the pending Motion for Summary Judgment, are inadmissible for this purpose and should be stricken from the record.  Neither document comports with even the most fundamental requirements of Rule 56(e).  The Swamy Letter is not sworn nor declared to be true under the penalty of perjury.  The Perez Draft Statement is merely an unsigned draft of a document, unsworn and undated with no other means for authentication.

Additionally, the substance of both documents directly impact the objectives of summary judgment by making unsupported, opinion-based conclusions and by attempting to provide testimony that directly contradicts prior sworn testimony without any explanation for such contradictions.

For these reasons, Defendant BE&K respectfully requests that the Swamy Letter and the Perez Draft Statement, contained at pages B285 – B288 of the Appendix to Plaintiff's Answering Brief in Opposition to Defendant's Motion for Summary Judgment be stricken from the record in their entirety and removed from consideration by the Court

13

in the pending Motion of Summary Judgment.  Any and all references to or statements

made in reliance of the documents contained at pages B285 – B288 should also be

stricken from the record and not considered for the purposes of summary judgment.


Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Margaret M. DiBianca
Teresa A. Cheek (Bar I.D. 2657)
Margaret M. DiBianca (Bar I.D. 4539)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-5008
Facsimile: (302) 576-3476
Email: mdibianca@ycst.com
Attorneys for Defendant

14