IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

EQUAL EMPLOYMENT            )
OPPORTUNITY COMMISSION,     )
                           )
            Plaintiff,     )    C.A. No. 05-697-KAJ
    v.                     )
                           )
BE&K ENGINEERING COMPANY   )
(subsidiary of BE&K, Inc.),)
            Defendant.     )


**DEFENDANT BE&K ENGINEERING COMPANY'S REPLY BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**


YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Teresa A. Cheek (Bar I.D. 2657)
Margaret M. DiBianca (Bar I.D. 4539)
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6676; 571-5008
Facsimile: (302) 576-3286; 576-3476
Email: tcheek@ycst.com; mdibianca@ycst.com
Attorneys for Defendant


DATED: October 10, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT .................................................................................................................... 1

   I.   EEOC HAS FAILED TO PROVE EVIDENCE SUFFICIENT TO
      SATISFY ITS "DIFFICULT BURDEN" ................................................................ 1

   II.  EEOC HAS FAILED TO ESTABLISH A PRIMA FACIE CASE AS A
      MATTER OF LAW ................................................................................................. 3

      A.  EEOC Has Failed to Provide Any Evidence in Support of a
          Finding that Its Alleged Comparators Were Similarly Situated to
          Perez ....................................................................................................... 3

      B.  EEOC's Allegation that Every Engineer in the Process
          Department Was Similarly Situated to Perez Based Merely on
          Their Departmental Status Is Legally Unsupportable ...................................... 4

      C.  EEOC Fails to Meet Its Prima Facie Burden By Failing to Make
          Any Meaningful Comparison Between Perez and Its Suggested
          Comparators .............................................................................................. 5

   III. EEOC HAS FAILED TO PROVE ANY EVIDENCE THAT WOULD
      TEND TO GIVE RISE TO AN INFERENCE OF DISCRIMINATION ............... 6

      A.  EEOC Proffers No Evidence of Suitable Projects Available to
          Perez During the Relevant Time Period .......................................................... 6

          1.  The Appropriate Time Period for Evaluating the Available
              Landscape of Work Began in August 2003 ................................. 7

          2.  The Projects Suggested by EEOC Were Scheduled to Start
              After Perez Had Already Been Nonbillable for An Extended
              Period of Time .............................................................................. 8

          3.  EEOC's Suggestion of the Motiva Flare Network Project as a
              Viable Alternative Project for Perez Comes Too Little and
              Too Late ....................................................................................... 9

      B.  Eligibility of Rehire Does Not Show Pretext ................................................. 10

          1.  Gerwig's Voluntary Conversion to AllStates to Preserve her
              Part-time Status, In No Way, Shows Pretext ............................. 11

2. Robbins' Rehire Was For Legitimate Reasons Well Supported by the Record ............................................................................................ 14

C. EEOC's Alleged Evidence of Discriminatory Animus is Fundamentally Flawed ................................................................................ 15

1. Faulty Statistical Data Without Any Meaningful Reference to Context is Insufficient to Support a Finding of Pretext ........................... 16

2. Perez Received Training, Whereas His Younger Co-Workers Did Not .................................................................................................. 17

3. Perez's Subjective Interpretation of Howe's "Message" Is Insufficient as a Matter of Law to Raise an Inference of Discriminatory Animus .......................................................................... 19

CONCLUSION ............................................................................................................ 20

DB02:5508959.1

064649.1001

# TABLE OF AUTHORITIES

Anderson v.  Liberty Lobby,
477 U.S. 242 (1986)............................................................................................ 2

Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.,
   328 F.3d 309 (7th Cir. 2003) ............................................................................ 3

Bd. of Trustees v. Sweeney,
   439 U.S. 24 (1978)............................................................................................ 2

Bolton v. Scrivner, Inc.,
   36 F.3d 939 (10th Cir. 1994) ............................................................................ 10

Card v. Hercules, Inc.,
   No. 92-4169, 1993 U.S. App. LEXIS 21631
   (10th Cir. Aug. 19, 1993)................................................................................... 6

Collins v. Suntrust, Inc.,
   C.A. No. 3:04-1031, 2006 U.S. Dist. LEXIS 28813
   (M.D. Tenn. May 4, 2006).................................................................................. 20

Doan v. Seagate Tech., Inc.,
   82 F.3d 974 (10th Cir. 1996) ............................................................................ 16

EEOC v. Sperry Corp.,
   852 F.2d 503 (10th Cir. 1988) .......................................................................... 11

Fuentes v. Perskie,
   32 F.3d 759 (3d Cir. 1994) ................................................................................ 1

Gray v. N.E. Teleph. & Telegraph Co.,
   792 F.2d 251 (1st Cir. 1986)............................................................................. 11

Hill v. Stone & Webster, Inc.,
   No. 04-1102; 2005 U.S. App. LEXIS 1834
   (10th Cir. Feb. 4, 2005)..................................................................................... 9

Kautz v. Met-Pro Corp.,
   412 F.3d 463 (3d Cir. 2003) .......................................................................... 1, 2

Lula v. Network Appliance, Inc.,
   No. 2:03cv1066, 2006 U.S. Dist. LEXIS 30153
   (W.D. Pa. May 17, 2006).................................................................................... 4

Madonna v. Conmed Corp.,
   C.A. No. 03-4289, 2005 U.S. Dist. LEXIS 3251
   (E.D. Pa. March 1, 2005) .................................................................................. 17

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp,
    475 U.S. 574 (1986) ................................................................................................. 2

Mills v. First Fed. Savings & Loan Assoc. of Belvidere,
    83 F.3d 833 (7th Cir. 1996) ................................................................................... 19

Minton v. Am. Bankers Ins. Group,
    Case No. 00-3376-CIV, 2002 U.S. Dist. LEXIS 7539
    (S.D. Fla. April 24, 2002) ..................................................................................... 17

Mitchell v. The Turner Corp.,
    No. 96-56636, 1998 U.S. App. LEXIS 3141
    (9th Cir. Feb. 25, 1998) ........................................................................................... 9

Monaco v. Am. Gen. Assurance Co.,
    359 F.3d 296 (3d Cir. 2002) ............................................................................... 3, 4

Pierce v. Commonwealth Life Ins. Co.,
    40 F.3d 796 (6th Cir. 1994) ..................................................................................... 4

Pivirotto v. Innovative Sys., Inc.,
    191 F.3d 344 (3d Cir. 1999) ................................................................................... 6

Pratta v. Am. Gen. Fin. Servs., Inc.,
    C.A. No. 04-089-JJF (D. Del. Sept. 13, 2006) ...................................................... 2

Schoch v. First Fidelity Bancorporation,
    912 F.2d 654 (3d Cir. 1990) ................................................................................... 2

Simpson v. Kay Jewelers, Div. of Sterling, Inc.,
    142 F.3d 639 (3d Cir. 1988) ..................................................................... 5, 13, 17

The Dartmouth Rev. v. Dartmouth College,
    889 F.2d 13 (1st Cir. 1989) ................................................................................... 15

Vasilescu v. Black & Veatch Pritchard, Inc.,
    155 F. Supp. 2d 1285 (D.Kan. 2001) .............................................................. 16, 17

Visser v. Packer Eng'g Assoc.,
    924 F.2d 655 (7th Cir. 1991) ............................................................................... 11

Walden v. St. Gobin Corp.,
    323 F. Supp. 2d 637 (E.D. Pa. 2004) ..................................................................... 6

Williams v. Borough of W. Chester,
    891 F.2d 458 (3d Cir. 1989) ................................................................................... 2

DB02:5508959.1
064649.1001

## PRELIMINARY STATEMENT

The recurring theme throughout this case has been, in short, "no project means no job." Perez was terminated for lack of work. Defendant has consistently maintained that this undisputedly legitimate reason for his layoff. Perez's project ended in August 2003. At that time, there were no available projects to which he could be assigned. As a result, he did not charge his full work week to a client and, in turn, became nonreimbursable. Nonreimbursable engineers jeopardize the economic viability of BE&K.

Engineers who remain nonreimbursable for any extended period of time are subject to layoffs. When Perez became nonreimbursable in August 2003, he became vulnerable to termination for lack of work. Defendant attempted to find various filler projects to keep Perez at least partially billable until another full-time, billable project became available. After more than three months without an available project and with no suitable projects anticipated in the near future, Perez was laid off for lack of work.

None of this is disputed by EEOC. EEOC does not dispute that the reality in a project-based industry, put simply, is that "no project means no job." EEOC does not dispute that Perez, in fact, had "no project." Nor does EEOC dispute that BE&K tried to find filler work for Perez until a new project became available. There are, then, no material issues of dispute in the present case. Therefore, summary judgment should be granted to Defendant.

## ARGUMENT

### I.    EEOC HAS FAILED TO PROVE EVIDENCE SUFFICIENT TO SATISFY ITS "DIFFICULT BURDEN"

In its opposition to Defendant's Motion for Summary Judgment, Plaintiff EEOC attempts to convince the Court that there is a myriad of disputed facts by making broad- sweeping conclusions, many of which either make no reference to the record at all, or are unsupported by the portions of the record to which they cite.   Such unsupported conclusions are wholly insufficient to defeat the present Motion.

EEOC addresses several topics in its response to Defendant's Motion.  EEOC first contends that it has met its *prima facie* burden because Defendant retained "several" significantly younger, similarly situated employees during the 2003 reduction in force.  EEOC simply ignores the evidentiary requirements encompassed by that burden by failing to provide any factual explanation for exactly why its alleged comparators can be appropriately designed as such.

EEOC then attempts to present evidence of pretext by barraging the Court with unsupportable conclusions about immaterial factual issues.  (D.I. 72 at 24).  Although EEOC repeatedly states that various facts are "in dispute," such a flimsy claim is insufficient to defeat Defendant's Motion.  Instead, EEOC must "present evidence contradicting the *core facts* put forward by [Defendant] as the legitimate reason for its decision."  Kautz v. Met-Pro Corp.,412 F.3d 463 (3d Cir. 2003).  In other words, EEOC must contradict the truth of Defendant's assertion that Perez was laid off for lack of work when his last full-time project ended and, after three months of at least partially non-reimbursable time, BE&K did not expect any new, no suitable projects.  See id.

As the majority reiterated in Kautz, establishing pretext "places a difficult burden on the plaintiff."  Id. (internal quotations omitted) (citing Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)).  Even in the light most favorable to EEOC as the non-moving party, there has been no evidence proffered to satisfy this "difficult burden."  EEOC has summarily failed to demonstrate that Perez was terminated for any reason other than lack of work.  EEOC's opposition is fatally

flawed because it has failed to produced any evidence "that would allow a factfinder to reasonably infer that each of Defendant's proffered nondiscriminatory reasons . . . was either a *post hac* fabrication or otherwise did not actually motivate the layoff." Kautz, 412 F.3d at  (internal citations omitted).

Instead of producing any such evidence, EEOC draws questionable conclusions from a strained version of the facts in the record.  By relying only on its own speculation and conjecture, EEOC has attempted to veil unsupported allegations as "disputed facts."  Such a proffer is insufficient to defeat a motion for summary judgment.  Where the evidence presented by the non-moving party is nothing more than a reassertion of unsupported allegations, such  is the present case, summary judgment is appropriate.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  To that end, "[m]ere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials." Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).

EEOC attempts to characterize the present motion as one that contains genuine issues of material fact simply by repeatedly asserting that various, and often trivial, facts are "disputed." However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact."  Anderson v.  Liberty Lobby, 477 U.S. 242,  247-48 (1986) (emphasis in original).  The only disputes that are relevant for the purposes of summary judgment are those that "might affect the outcome of the suit."  Id.  at 248.  Put another way, EEOC must come forward with specific facts that do more than "simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp, 475 U.S. 574, 586-87 (1986) (cited by Pratta v. Am. Gen. Fin. Servs., Inc., C.A. No. 04-089-JJF (D. Del. Sept. 13, 2006) (granting summary judgment to defendant employer in an age discrimination case)).

At the summary judgment stage, the burden of persuasion remains with EEOC at all times. Defendant is not required to somehow disprove a discriminatory motive for its actions.  Bd. of Trustees v. Sweeney, 439 U.S. 24 (1978).  Thus, EEOC's assertions, which rise only to the level of mere conjecture without support from the record or legal precedent, are insufficient to satisfy

EEOC's burden of proof.  Because EEOC has failed to satisfy either its *prima facie* or pretext burden of proof, Defendant BE&K Engineering Company respectfully requests that Plaintiff's Complaint be dismissed in its entirety.

## II.    EEOC HAS FAILED TO ESTABLISH A PRIMA FACIE CASE AS A MATTER OF LAW

EEOC asserts that it is able to satisfy the fourth element of its *prima facie* case, which requires that significantly younger, similarly situated employees were retained while Perez was let go, by pointing to no less than seven of Perez's former co-workers as alleged comparators.  (D.I. 72 at 22).  See Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 304-05 (3d Cir. 2002) (enumerating the fourth prong of the *prima facie* case in an age discrimination case involving a reduction in force).  EEOC attempts to support this assertion in two ways.  First, EEOC states, without explanation, that "each process engineer was expected to perform the same type of tasks and work on the same projects regardless of size and complexity."  (D.I. 72 at 23).  Second, EEOC states that the named comparators are similarly situated "because Howe testified how he considered each and every engineer in his department before deciding to lay off Perez."  (D.I. 72 at 23).

EEOC altogether ignores the most fundamental element of its burden at this stage.  EEOC must prove that "similarly situated" employees were retained.  It is not enough that *any* younger employee was retained during the reduction in force.  Yet, EEOC has tendered no explanation of the similarities of the alleged comparators with Perez in the relevant areas, such as  "performance, qualifications, and conduct, . . . analogous attributes, experience, [and] . . . education."  Balderston v. Fairbanks Morse Engine Div. of Coltec Indus., 328 F.3d 309, 322 (7th Cir. 2003).

### A.    EEOC Has Failed to Provide Any Evidence in Support of a Finding that Its Alleged Comparators Were Similarly Situated to Perez

EEOC has failed to carry its burden on the fourth prong of its *prima facie* case by failing to make any substantive comparison between the seven named comparators and Perez other than to state the obvious—that they worked in the same department.  This fact, standing alone, is insufficient to establish a *prima facie* claim of age discrimination.

In order to qualify as a similarly situated employee, the suggested comparators must be similarly situated in all "material respects."  Lula v. Network Appliance, Inc., No. 2:03cv1066, 2006

U.S. Dist. LEXIS 30153, at *13-*14 (W.D. Pa. May 17, 2006) (internal citations omitted).  EEOC is required to produce evidence proving that "all of the relevant aspects" of Perez's employment are "nearly identical" to those of the alleged comparators.  Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 803 (6th Cir. 1994) (cited with approval in Lula, 2006 U.S. Dist. LEXIS at *14).  The Third Circuit requires this comparison be made using a fact-intensive inquiry based on the evidence proffered by the non-movant.  Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 305 (3d Cir. 2004).  Not only do none of the seven alleged comparators come even close to sharing "nearly identical" job experiences but, on its face, EEOC's factual offer of proof is insufficient as a matter of law to sustain its burden at the *prima facie* stage.

EEOC has made no attempt to provide any factual support for its claim that the seven employees were similarly situated.  By its outright failure to set forth any evidence as to the qualifications, experience or skills of any of the alleged comparators, EEOC fails to meet the requisite fourth element of its *prima facie* burden.  See Lula, 2006 U.S. Dist. LEXIS at *14-15 (finding plaintiff failed to establish, by a preponderance of the evidence, her *prima facie* case where she "made no attempt to demonstrate that a similarly situated employee was retained" because she made no comparisons of herself to other employees).

**B.      EEOC's Allegation that Every Engineer in the Process Department Was Similarly Situated to Perez Based Merely on Their Departmental Status Is Legally Unsupportable**

Instead of setting forth facts that demonstrate the parallels in qualifications, experience and education between Perez and any of the seven alleged comparators, EEOC simply concludes that "each process engineer was expected to perform the same type of tasks and work on the same projects regardless of size and complexity."  (D.I. 72 at 23).  This assertion, that every engineer in the Process Department was similarly situated to Perez in qualification, experience and education by the mere fact that they worked in the same department, is implausible at best.

Even the portions of the record cited by EEOC do not support such a far-reaching conclusion.  EEOC points to Guttridge, an Engineer I with three months of experience, as its only explanatory example.  EEOC states that Guttridge was similarly situated to Perez, a Senior Engineer with "nearly thirty years experience," (D.I. 1 at ¶7(h)), because Guttridge "was performing the same

relief device work that more senior engineers . . . were doing on the DTT project." (D.I. 72 at 23).

In support of this statement, EEOC cites to several pages of Guttridge's deposition transcript. A

portion of the cited testimony, however, states exactly the opposite and directly rebuts the

conclusion that Guttridge and Perez were similarly situated.

> Q:  Is the expectation that all the process engineers in the
> Process Department can do this type of work, if asked?
>
> A:  The expectation is yes.  But it would depend on experience
> level.  An Engineer I, say me coming out of college, I could
> have done equipment selection, design distillation, column
> reactors.  I could have done it.  I had the background to do it.
> But I didn't have the experience so I would have fumbled
> through it.  I would have needed a Senior Engineer guiding me.
>
> I could have sized the pump.  I could do line sizing.  But a more
> Senior Engineer, with the experience built up from all the
> experience, would be more apt to doing say a heat exchanger
> design or equipment selection like a distillation column or
> reactor, something like that.

(C41).  Additionally, only pages earlier in its Brief, EEOC points out that, as an entry-level

Engineer I, Guttridge was unable to perform some of the complex tasks that more experienced,

Senior Engineers such as Perez were assigned and that there were "some tasks he could not do

without the assistance of a mentor."  (D.I. 72 at 9) (citing B126-129; B138-140).[1]

### C.    EEOC Fails to Meet Its Prima Facie Burden By Failing to Make Any Meaningful Comparison Between Perez and Its Suggested Comparators

Even assuming, *arguendo*, that EEOC's unsupported assertion that Guttridge's job duties

were equivalent to Perez's, evidence of a lone comparator is insufficient to meet Plaintiff's *prima*

*facie* burden in the Third Circuit.  Further, in Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142

F.3d 639 (3d Cir. 1988), the Third Circuit held that a discrimination plaintiff cannot selectively

choose a single comparator as EEOC has attempted to do with Guttridge.  Rather, on a summary

judgment record, the court must look at the employer's treatment of all employees outside the

plaintiff's protected class, and analyze whether a material issue of fact has been presented.  See also

---

[1] These pages of EEOC's Appendix have been reprinted for the Court's convenience as (C3639; C40-42).  Throughout the rest of this Brief, citations to Plaintiff's Appendix will be identified with the corresponding "C" reference for ease in use.

Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 359 (3d Cir. 1999) (evidence of differential treatment of a "single member of the non-protected class is insufficient to give rise to an inference of discrimination").

Of the seven, only Robinson and Taylor shared even the same job title as Perez, as Senior Engineers. (C64). Guttridge was an Engineer I at the time of Perez's termination. (C70-72). Tweed was an Engineer III. (C64). Wunder and Lin were Senior Design Specialists, (C50), the title held by highest ranking engineers with the most years of experience in the Process Department. (D.I. 72 at 11 n.2). See Card v. Hercules, Inc., No. 92-4169, 1993 U.S. App. LEXIS 21631, at *7 (10th Cir. Aug. 19, 1993) (finding that plaintiff's *prima facie* case "faltered" on the fourth element where he was unable to establish that any of the alleged comparators shared plaintiff's job title as an "Engineer 5" and that the "Engineer 2" and "Engineer 3" positions were lower in status and pay than plaintiff's position). Further, both Robinson and Taylor were working off site at the DuPont Chambers Works facility in New Jersey at the time of Perez's termination, (C50), where they worked under the direction of a different supervisor than Perez, and had entirely different responsibilities than engineers who worked from the BE&K office. (C34-35). Thus, EEOC has failed to "point to individuals who have dealt with same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances," as it is required to do during the *prima facie* stage. Marquez v. Bridgestone/Firestone, Inc., 353 F.3d 1037, 1038 (8th Cir. 2004), accord, Kidd v. MBNA Am. Bank, N.A., No. 02-4011, 2004 U.S. App. LEXIS 5694 (3d Cir. Mar. 25, 2004).

EEOC's failure to provide any explanation or supporting evidence as to how the claimed comparators were "similarly situated" is a "major and ultimately fatal deficiency" to its *prima facie* case. Walden v. St. Gobin Corp., 323 F. Supp. 2d 637, 643 (E.D. Pa. 2004) .

## III. EEOC HAS FAILED TO PROVE ANY EVIDENCE THAT WOULD TEND TO GIVE RISE TO AN INFERENCE OF DISCRIMINATION

### A. EEOC Proffers No Evidence of Suitable Projects Available to Perez During the Relevant Time Period

Perez was laid off for lack of work after a period of nonreimbursability following the completion of his last full-time project in August 2003. EEOC does not dispute the legal legitimacy

of this reason.  (D.I. 72 at 26).  EEOC admits that layoffs for lack of work are legitimate and agrees that Defendant was not required to carry nonbillable engineers on general overhead for any significant period of time.  (D.I. 72 at 26).  Instead, EEOC attempts to demonstrate pretext by disputing the factual accuracy of reason by asserting that there was, in fact, available projects for which Perez was qualified, "at the time of his termination."  (D.I. 72 at 24).

EEOC, however, has selectively chosen to evaluate the incorrect time period and looks only at the time of Perez's layoff on November 21, 2003 and the months subsequent.  EEOC has mistakenly chosen to ignore the four months between Perez's last project and his termination.  This selection is incorrect, though more convenient for Plaintiff's pretext analysis.  Under the proper analysis, it is undisputed that there was, in fact, no available projects for Perez during the relevant time frame.

### 1.    The Appropriate Time Period for Evaluating the Available Landscape of Work Began in August 2003

EEOC does not dispute that Perez's Tosco assignment ended in August 2003.  (D.I. 72 at 7, §3, ¶2).  EEOC also does not dispute that Tosco officials gave Perez approximately one to two weeks notice of the project's completion and provided Howe with the same information shortly thereafter.  (D.I. 72 at 7, §3,¶2).  EEOC asserts that Perez returned to the BE&K office after finishing the assignment in August 2003.  (D.I. 72 at 7, §3, ¶4).

EEOC admits that, upon his return, Perez was assigned to short-term filler projects and that BE&K tried to assign him such work in the hopes that his layoff could be avoided.  (D.I. 72 at 8, §4).  And, EEOC further admits that, for the ten weeks following his return to the BE&K office, Perez charged to general overhead for at least some part of every week.  (D.I. 72 at 8, §4).  It is undisputed that, in order to avoid layoff, engineers must be reassigned to a new program of work at the conclusion of a concluding project.  (D.I. 72 at 3, §2, ¶1).   As the EEOC admittedly realizes, those who are not reassigned to another available, suitable project, may be laid off.  (D.I. 72 at 3, §2, ¶1).

In short, Perez's project ended in August and, although Howe attempted to keep Perez reimbursable by assigning him to short-term, filler assignments, Perez continued to be at least

partially nonreimbursable from late August until his termination in late November. (the "Filler Period").

> ### 2. The Projects Suggested by EEOC Were Scheduled to Start After Perez Had Already Been Nonbillable for An Extended Period of Time

Perez needed a project that was available during the Filler Period, *not* a project that became available, as the EEOC suggests, "in late 2003 or early 2004." (D.I. 72 at 25). A new project scheduled to begin in December 2003 or later would have come too late. By that point, Perez had already been nonreimbursable for twelve weeks and BE&K was not able to sustain his unbillable time any longer. Certainly, Perez could not have been kept as a nonreimbursable employee for an additional four to eight weeks as would have been necessary if he had been assigned to one of the projects identified by the EEOC.

EEOC indicates that "it is arguable" whether Perez should have been assigned to one of the new projects that started in January or February 2004 instead of Tweed, Wunder or Lin. In support of this argument, EEOC simply states that Perez "had more engineering experience and seniority with [BE&K] than any of them." (D.I. 72 at 25). EEOC overlooks, but does not dispute, the single most important piece of information, which makes this argument fatally flawed.

Regardless of his experience or seniority, and regardless of the qualifications possessed by the three proposed comparators, such as the fact that Lin held a Ph.D or that Wunder, a Design Specialist, possessed highly specialized skills that Perez did not, Perez had one distinguishing attribute that made him the *least eligible* for any of the projects identified by EEOC. Perez had, by dramatic proportions, the most nonbillable time of all of comparators and was the only one who had been nonreimbursable for *three months* at the time of his termination.

Had he been selected over Tweed or Wunder for the Maniti or Hazard Review projects, as suggested by EEOC, Perez would have been nonbillable for at least five more weeks until those projects became available in January 2004. Had Perez been selected over Lin for the DuPont Project Blue in February 2004, as suggested by EEOC, Perez would have been nonreimburseable for no less than five months by the time the project was scheduled to start.

Certainly, the EEOC does not claim that an employer can be required to have a nonproductive employee continue on its payrolls for five months. See Hill v. Stone & Webster, Inc., No. 04-1102; 2005 U.S. App. LEXIS 1834, at*6-*7 (10th Cir. Feb. 4, 2005) (affirming grant of summary judgment to employer where its legitimate reason for layoff was lack of work in its Engineering Division and were plaintiff could not point to any available projects);  Mitchell v. The Turner Corp., No. 96-56636, 1998 U.S. App. LEXIS 3141, at *2-*3 (9th Cir. Feb. 25, 1998) (plaintiff laid off for lack of work where she was nonbillable); Ritter v. Hughes Aircraft Co., 58 F.3d 454, 458 (9th Cir. 1995) (finding no inference of discrimination where defendant employer laid off plaintiff employee "after carrying him in temporary positions" for an extended period of time while trying to find him other permanent work).

EEOC's attempt to use Perez's marketing efforts as a reason for allowing him to continue to charge to general overhead for four to eight additional weeks is counter-intuitive.  EEOC seems to argue that, by helping BE&K obtain new business, BE&K should be required to lose money by retaining Perez as a nonbillable employee longer than economically feasible.

### 3.    EEOC's Suggestion of the Motiva Flare Network Project as a Viable Alternative Project for Perez Comes Too Little and Too Late

In an eleventh hour attempt to salvage its case from summary judgment, EEOC has included an "affidavit" by Perez.  This "affidavit" is the subject to a pending Motion to Strike (D.I. 73).  For the present purposes, however, Defendant will assume that the document survives that Motion.

EEOC now alleges that, "sometime after late August 2003," Howe approached Perez about a potential project but that he was never formally assigned to the work.  (D.I. 72 at 27).  EEOC does not, however, assert any more specific time period.  Nor does he provide any indication as to whether the project ever came to fruition or whether the project he is referring to was actually a potential project that was discussed during the bidding process.  BE&K produced all time charges and project data, from which EEOC should have produced more information about this mysterious new project instead of simply choosing not to look at the data and claiming yet another "dispute."

As EEOC succinctly states, "BE&K [is not required to] keep employees who are not billing to a client on the payroll for a significant period of time." (D.I. 72 at 26). At the time of his termination, Perez had been nonbillable for three months. Even if BE&K had assumed that it could assign Perez to the next project, expected to start in January 2004, he would have an even more outrageous amount of nonbillable time. Certainly, BE&K does carry engineers who are billing to general overhead. A nonreimburseable day surely does not trigger instant termination. However, all testimony provided consistently repeated the message that engineers could not charge to general overhead for any substantial period of time without being subject to an increased risk of layoff.

**B.     Eligibility of Rehire Does Not Show Pretext**

EEOC seems to assert that the fact that Perez was eligible for rehire through AllStates is "highly suspicious" and somehow goes to demonstrate pretext. (D.I. 72 at 26-27). BE&K never stated that Perez *would* be assigned to a BE&K project if he applied at AllStates (nor does EEOC cite any testimony to that effect). Instead, BE&K officials testified that Perez *could* be assigned to a BE&K project if he applied at AllStates. (C50-51). In other words, Perez was eligible for recall, but was not guaranteed that he would be rehired. (C49).

His recall through AllStates required that two conditions be met. First, Perez would have had to apply at AllStates, which he did not. (C50-51). Second, as the uncontroverted testimony demonstrates, a recall occurs only where "BE&K has a need," where it has more project work than its current staff can manage or where there is a specific need for an engineer with specialized qualifications, the "right skills, right training and right background," that a project requires. (C49).

Only if there was a specific project to which they could be assigned, (C49), would BE&K "potentially ask [Perez], if [he was] interested, to join us again through AllStates." (C31). BE&K would not hire an AllStates employee without having a specific project to which the contract engineer would be assigned. (C30). As Howe testified, "There's no difference where your employees come from. You would only hire someone, whether it be full time into BE&K or whether through a contract agency, if you had a job to put them on." (C44).

Contrary to the suggestion of EEOC, replacing an employee with a casual worker to save money is not evidence of bias. Bolton v. Scrivner, Inc., 36 F.3d 939 (10th Cir. 1994), cert. denied,

115 S. Ct. 1104 (1995). "Absent some evidence that such concerns mattered to [Defendant] when it decided to institute [its full-time only] policy, . . . a reasonable jury could not infer that cost savings alone indicates an intent to discriminate on the basis of age." Bolton, 836 F.2d at 511-12; see also EEOC v. Sperry Corp., 852 F.2d 503, 511 (10th Cir. 1988). EEOC, however, has offered no evidence, other than the generalized assumptions of Perez, to support that BE&K somehow stood to benefit from laying off its employees at the risk of losing them to its competitors, only to have them potentially be recalled at an unknown later date. Perez's speculations, unsupported by the record, are insufficient to defeat a motion for summary judgment. See Visser v. Packer Eng'g Assoc., 924 F.2d 655, 659 (7th Cir. 1991) ("Discrimination law would be unmanageable if disgruntled employees . . . could defeat summary judgment by . . . . speculating about the defendant's motives. There would be no summary judgments in age discrimination cases.").

### 1.    Gerwig's Voluntary Conversion to AllStates to Preserve her Part-time Status, In No Way, Shows Pretext

EEOC points to the fact that some laid off employees were later recalled through AllStates as evidence that the layoffs were some sort of farce designed to "weed out older workers." (D.I. 72 at 27). Such an inference is patently absurd. Gray v. N.E. Teleph. & Telegraph Co., 792 F.2d 251, 255 (1st Cir. 1986) (rejecting plaintiff's suggestion that discrimination can be inferred from the fact that his replacements were contract, rather than salary employees, and received no benefits).

First EEOC points to Gerwig, whose employment with BE&K ended on June 30, 2004. EEOC states that, "the record shows" that Gerwig was "allegedly terminated for lack of work," "but continued to work on the same project after her termination as an AllStates employee." (D.I. 72 at 27). This statement is fundamentally flawed.

Gerwig was, in fact, not terminated for lack of work, allegedly or otherwise. To support its statement that Gerwig was laid off for lack of work, EEOC cites a chart produced by BE&K titled, "Terminations." (D.I. 72 at 27). Gerwig is listed on the chart as having been terminated on June 30, 2004 and as recalled by AllStates. (C47). The document does not indicate that she was laid off for lack of work. The record cited by the EEOC does not, in any way, support its conclusions.

Instead, the clear and repeated testimony, as well as documents produced during discovery, make clear that Gerwig was converted to an AllStates employee *at her request* because she wanted to work a part-time schedule, which was not permitted under BE&K policy.  During her deposition, Sharon Abrams, the Human Resources Manager, was asked about the very chart that EEOC cites in its brief.[2]  (C48).  She explained that the conversion was not a "layoff," but was done at Gerwig's request "because she wants to raise her children and take lots of time off, so she requested that we move her to AllStates."  (C52-53).  Howe also provided detailed testimony about Gerwig's voluntary conversion:

> A:  Yes.  I think this needs some explanation. . . .  She was not terminated—disappeared and came back.  She was transferred from BE&K to Allstates immediately.  It was a conversion from BE&K to Allstates – her job didn't change, nothing changed, just who she worked for.  (C54-55). . . .
>
> A:  She was, when she was at BE&K she was working reduced hours by her own choice.  BE&K had a tough time dealing with reduced hours. . . . So our HR out of Birmingham had asked if we got part-time employees, that we consider potentially having them as Allstates employees, if it was okay with the employee.  So we asked Andrea would she mind.  She said no problem.

(C48).  Jack Baker, who had also converted to AllStates to preserve his part-time schedule, confirmed that Gerwig would have been subject to the proviso from Birmingham that only full-time employees are eligible for work with BE&K:

> Andrea was always working part time and so this may have been the date that I mentioned where someone has to switch to AllStates because they are working part time. . . .  So if they had been a BE&K employee before, then that was essentially the same thing that happened to me, you know, switched from – **so that was not a termination**.  That was – she could have, I suppose, worked full time, but **she chose to work part time**.  So that's not – **that's something that clearly isn't age discrimination**.  Anybody in that situation, that's just a plain rule that follows.

---

[2] The document cited in EEOC's Appendix at B28 was also admitted as an exhibit during Guttridge's deposition and marked as Guttridge 3.  During Abrams' deposition, the document was referred to as Guttridge 3, found attached at C30  (CC43).

(C52-53).  Shoemaker echoed this testimony when he recalled that Gerwig was "looking for part-time employment.  I am pretty certain of that."  (C55; 54-55).

Indeed, the documents confirm that this is what occurred.  For example, her termination record reflects that she was converted to AllStates because she wanted to retain her part-time employment status.  (C27).  Further, the pages cited by EEOC are misleading.  EEOC cites to a single page of a "Time Sheet Data Report" produced by BE&K during discovery.  (D.I. 72 at 27) (citing 63 ).  This page indicates that Gerwig first charged time as an AllStates employee during the week ending July 9, 2004.  (C63).

What EEOC has failed to include is page 20 of the Time Charge Report, which shows that Gerwig was billing time as a BE&K employee, Badge #1534, through the week ending July 2, 2004, (C62), and that she began billing time as an AllStates employee, Badge #126312, beginning the week ending July 16, 2004.  (C63).

Finally, EEOC points to a letter written by BE&K Deputy General Counsel, Nicholas Bouler, to EEOC, during the EEOC's investigation.  (C24-26).   The letter was written in response to EEOC's request for information, (C28), wherein BE&K was asked whether any of the "laid off/discharged employees" were "recalled or rehired."  (C28)  Mr. Bouler responded that Gerwig had been hired by AllStates "to do [the Relief Device] work on an hourly contract for the duration of this effort."  (C24)

From this, EEOC attempts to infer some evidence of pretext.  However, the record is clear.  There has been no evidence that Gerwig was "allegedly terminated for lack of work," nor that she "returned almost immediately after her termination."  (D.I. 72 at 27).  Instead, the evidence demonstrates that Gerwig was transferred to AllStates because she wanted to keep her part-time status.  Her "termination and recall," was actually a "transfer and conversion."[3]

---

[3] BE&K objects to the submission of and reliance on this document, written by Defendant's legal counsel during an investigation by an administrative agency, where the statements contained therein do not directly contradict its consistent explanations regarding Gerwig's employment status.  See Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 649 n.15 (3d Cir. 1998) (noting in dicta that the court would not bind employer to reason it gives EEOC); see also EEOC v. Gear Petroleum, Inc., 948 F.2d 1542 (10th Cir. 1991) (upholding trial court's decision, in an ADEA case, to exclude two letters written by the defendant's attorney to the EEOC).

### 2. Robbins' Rehire Was For Legitimate Reasons Well Supported by the Record

Robbins was laid off for lack of work and subsequently recalled to work on a BE&K project as an AllStates employee "less than two months later." (D.I. 72 at 27). Without any additional factual support or explanation, EEOC concludes that this single fact is evidence that BE&K actually terminated employees based on their age in an effort to "remove them from [its] employment records as full-time employees, and have them classified as contract workers who do not have guaranteed employment." (D.I. 72 at 27). Again, this assertion is absolutely unsupportable, both at law and by the factual record.

BE&K does not contest that Robbins was laid off for lack of work in May 2004, (C59), and that he returned to BE&K as an AllStates employee in July 2004. (C60). However, by looking at Robbins' time entries for the last two weeks of work in May, (C59), it is clear that he was billing to "Process," which reflects charges to the department's general overhead account. Robbins was laid off when his project ended and there were no other projects to which he could be assigned. (C45).

The time charges demonstrate that the Chambers Works Home Office project concluded in May, (C59), as does the 2003 Project Chart, which has been repeatedly cited by EEOC. (C29). And, as evidenced by the time charges, Robbins charged to general overhead, ("Process"), for two weeks before being laid off. (C59). Billing to overhead, as the EEOC admits, is a legitimate, non-discriminatory reason for layoffs. (D.I. 72 at 26).

And, as for EEOC's creative conspiracy theory, Howe explained that Robbins was recalled to work on a new DuPont project for which he had been specifically requested by DuPont.

> **We got awarded a new job three months later** without – out of the blue, DuPont came and said we have a new project and it is going to start in two weeks' time, we need to staff up. . . .DuPont needed someone with DuPont experience to come in and do some specific work – in fact,. . . almost as a DuPont employee doing some very early front end work, conceptual engineering. And, in fact, his name was mentioned. They requested him . . .

(C45-46). This was also explained in Mr. Bouler's letter to the EEOC, which stated: "Our client needed someone who knew their process and staff to help develop the engineering basis for a new project that was awarded to us after Dick was laid off." (C24).

And, during his deposition, Shoemaker also testified about the conditions under which a BE&K employee would be recalled shortly after being laid off for lack of work. Shoemaker explained, "Another dynamic is the projects stopped and restarted. In other words, no more spending. . . .We've had projects that we've had 25, 30 people on that were, essentially, suspended until some technical studies or whatever could be completed for a three-month period." (C57-58). Shoemaker explained that this "stop-start" experience was common. (C61).

As set forth throughout the record, recall following layoff for lack of work was not uncommon in this industry, where work must be monitored on a weekly basis and where "two months is an eternity." (C54). There is nothing about Robbins' recall two months after his layoff that gives rise to any reasonable inference of pretext.

### C.    EEOC's Alleged Evidence of Discriminatory Animus is Fundamentally Flawed

EEOC makes several piecemeal attempts to demonstrate that Howe and Shoemaker harbored a discriminatory animus towards Perez based on Perez's age. Each of these allegations is flawed—both factually and legally. Even when evaluated together in the light most favorable to EEOC, they fall far short of the level of evidence required to support such a claim of pretext. Such "gauzy generalities, unsupported conclusions, subjective characterizations and problematic suppositions," will not defeat a summary judgment. The Dartmouth Rev. v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).

EEOC's arguments include: (1) factually inaccurate statistical data taken out of context without proper reference to other pertinent data; (2) factually inaccurate claim that Perez was denied training while his younger co-workers were not. Neither argument is evidence capable of supporting an inference of pretext. Perhaps to camouflage this failure, EEOC spends considerable energy pointing out that the "same actor" and "decisionmakers in protected class" inferences are, in fact, inferences, and not irrebuttable presumptions. EEOC does not, however, attempt to proffer any evidence to rebut such inferences.

1.    **Faulty Statistical Data Without Any Meaningful Reference to Context
      is Insufficient to Support a Finding of Pretext**

EEOC offers a seemingly random array of data in an attempt to demonstrate pretext.  First, EEOC identifies the "six individuals in the process department," terminated by Howe "from 2002-2004."  (D.I. 72 at 28).   Yet, the record cited is a list of Process Department engineers, starting with Perez, who were laid off in 2004.  Nowhere does EEOC cite a document that indicates who was laid off, nevertheless terminated for any reason, for the time period asserted, 2002 through 2004.  EEOC then asserts that Howe hired three full-time employees from 2000 through 2004 and points out that all three were outside the protected class at the time they were hired.  (D.I. 72 at 28).  Based on this, EEOC draws the conclusion that it is "arguable" that Defendant was "systemically engaged in the attempt to create a younger department."  (D.I. 72 at 28).

Next, EEOC's whips turn towards Shoemaker.  EEOC states that, in 2003 "33 out of 35 employees who were terminated from BE&K pursuant to a reduction in force were over the age 40" and, in 2004, "all 8" such individuals were over the age of forty.  (D.I. 72 at 30).  As for how to connect Shoemaker to these statistics, EEOC simply states, "Shoemaker presided over the termination of many of these individuals." (D.I. 72 at 30).  EEOC cites nothing in the record to support this proposition.  However, even if considered to be true, no discriminatory animus may be inferred by the vague assertion that Shoemaker "presided" over the termination of "many" of the employees subject to a reduction in force during a two-year period.[4]

Such an assertion is beyond the bounds of the law.  A statistical analysis conducted in the age discrimination context must "focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals."  Vasilescu v. Black & Veatch Pritchard, Inc., 155 F. Supp. 2d 1285 (D.Kan. 2001) (citing Doan v. Seagate Tech., Inc., 82 F.3d 974, 979 (10th Cir. 1996).  In Vasilescu, the plaintiff introduced evidence showing that all but one of the six employees in his department that were terminated in the RIF were over forty years old, as well as the static that five out of six terminated employees were over forty.  Id. at 1291.  The court held that these statistics were insufficient to support a finding of pretext.  Id.  Finding that

---

[4] Curiously, EEOC did not attempt to provide any "statistics" from 2000 or 2002, as it did for Howe.

the statistics were presented in isolation without taking into account "the possibility that most employees in the [] department were over age forty," the court concluded that such evidence could not be considered evidence sufficient to create a genuine issue of pretext for a jury. Id. at 1292.

Similarly, EEOC's statistical evidence, offered without any context or analytical framework, is grossly insufficient to create an inference of discrimination sufficient to carry EEOC's burden. The statistics, which include all employees in the Newark, Delaware office, instead of engineers who can fairly be said to be comparable with Perez, are "contrary to well-established law." Minton v. Am. Bankers Ins. Group, Case No. 00-3376-CIV, 2002 U.S. Dist. LEXIS 7539, at *28 (S.D. Fla. April 24, 2002) (internal citations omitted) (holding that plaintiff's statistical analysis and conclusions were not probative of whether she had been subject to age-based discrimination in a RIF when the statistics included such varied positions as administrative assistants to vice presidents). "The Third Circuit has repeatedly held that evidence of alleged employment discrimination cannot be viewed in a vacuum; a plaintiff is not permitted to pick and choose those comparators who he/she believes were treated more favorably," without explanation for its selection. Madonna v. Conmed Corp., C.A. No. 03-4289, 2005 U.S. Dist. LEXIS 3251, at *26 (E.D. Pa. March 1, 2005) (citing Simpson, 142 F.3d at 646-47).

## 2. Perez Received Training, Whereas His Younger Co-Workers Did Not.

EEOC asserts that "Defendant's decision to treat Perez differently as opposed to his younger peers by denying him training opportunities could be probative of age discrimination." (D.I. 72 at 29). This claim is grounded in neither fact nor law. First, even if it were assumed that, contrary to what is indicated by the clear record, Perez was, indeed "denied training" that his "younger peers" received, this claim is insufficient to infer evidence of pretextual motives.

Second, no part of this claim is supportable by the factual record. BE&K does not dispute that Perez indicated on his annual reviews for the years 2001, (C1-2), and 2002, (C5-6), that he could benefit from training.[5] And, according to EEOC, Wunder, a younger engineer, also requested

---

[5] In its Answering Brief, EEOC indicates that these documents are Perez's reviews for the years 2002 and 2003. (D.I. 72 at 29). Though they are dated February 2002 and March 2003, respectively, they reflect his employment for the prior year. Hence, they are reflective of Perez's employment during the years 2001 and 2002.

training.  (C7-8).  However, EEOC asserts that Perez never received any training but Wunder did, thereby raising an inference of discrimination.  (D.I. 72 at 29).[6]

In support of the claim that Perez was "denied training," EEOC cites Perez's deposition testimony.  (D.I. 72 at 29) (citing C32).  However, in the very same reviews proffered as evidence that Perez requested training, Perez actually writes that he *did* receive training.  On his 2002 review, Perez wrote that one of his accomplishments for the year was "attending a seminar sponsored by DuPont Co."  (C5).  Howe's comments mirrored Perez's and on the supervisor portion of the review, stated that Perez had "attended Relief Device training and learned the DuPont requirements around documenting these calculations."  (C6).

Specifically, EEOC points out that Wunder requested training on his 2003 review.  (D.I. 72 at 29).  EEOC does not mention that Wunder also requested training on his 2002 review.  (C7-8). Nor does it mention that *several* of Perez's younger co-workers requested training on the self-evaluation portions of their annual reviews.  (C13-14; 18-19; 22-23; 20-21).

In fact, in addition to Wunder, Lin, Tweed, Pham and Taylor each requested training on their 2002 and 2003 reviews.  (C7-8; 18-19).   Lin stated on her 2002 review that she felt training could help her reach her goals.  (C13-14).  Tweed expressed his interest in "access to coursework or seminars."  (C3-4).  Similarly, Pham and Taylor also indicated that training would help them succeed.  (C9-10; 11-12; 20-21; 22-23).

There is no evidence that any of these comparators received the requested training, other than the strained evidence proffered by EEOC that Wunder "requested training on his 2003 review to improve his engineering skills and received it."  (D.I. 72 at 29).  EEOC cites Wunder's statement that, "in anticipation of more life-science based work, I think training in fermentation, bioreactor design and/or separations technology would be beneficial."  (C7).

Howe recommended that Wunder attend a technical training class being held in two days in June in Philadelphia.  (C8).  Wunder's 2003 review states that he attended the filtration course.

---

[6] Presumably, EEOC was implying that Perez had not received the training he requested on his 2001 and 2002 reviews and not that Perez had "never received any training," as the

(C18-19).  Of course, there is no evidence to explain the purpose of the class, whether it was needed for a specific project, or even whether a client had requested that Wunder learn an additional technical skill or topic.  See White v. Bank of Am. Corp., C.A. No. 3:99-CV-2329-G, 2000 U.S. Dist. LEXIS 16111, at *15-*16 (N.D. Tex. Nov. 3, 2000).

Even assuming, *arguendo*, that the broad and conclusory allegation that Wunder was given preferential treatment over Perez in being permitted to attend a training class shows, in some way, that Wunder was treated better than Perez, it does not, however, show that such preferential treatment was related to age.  It cannot be shown that Wunder was treated more favorably because of his age where the four other named comparators who, like Perez, requested but not did not receive training.

Certainly, this evidence cannot be said to infer any discriminatory animus harbored by Howe.  Instead, the evidence infers that younger engineers were denied training.  Six of EEOC's proffered comparators requested training.  Of the six, only Perez (the oldest) and Wunder, (over 40) received training, thus disputing any inference of discrimination.

### 3. Perez's Subjective Interpretation of Howe's "Message" Is Insufficient as a Matter of Law to Raise an Inference of Discriminatory Animus

BE&K does not dispute that Perez testified that he questioned Howe as to why a younger engineer had been hired during a slow period.  The convergence, however, comes in how much weight to give Perez's interpretation of Howe's response.  Perez testified that, although he "couldn't recall exactly the words" Howe used, (C33), he understood Howe's message to be that BE&K needed to start "hiring younger people to rejuvenate the working force."  (C15).   Perez communicated this "message" to EEOC when he completed his Charge of Discrimination and indicated that he was "paraphrasing what [he]was told."  (C15).  EEOC now attempts to assert that Howe's "message" to Perez  is sufficient to raise an inference of discrimination.  Such an attempt fails as a matter of law.  See Mills v. First Fed. Savings & Loan Assoc. of Belvidere, 83 F.3d 833, 845 (7th Cir. 1996) (remarks that are not objectively discriminatory will not be transformed into pretext evidence by the mere assertion of the plaintiff that he subjectively believed them  to be so).

The case law is clear, however.  EEOC's evidence relating to the subjective interpretation of Howe's paraphrased statement has no place in a pretext analysis.   In <u>Collins v. Suntrust, Inc.</u>, the Plaintiff admitted that she had "inferred" an ageist undertone from her supervisors' statements that he was looking to hire someone "just out of college" or with "two to three years experience."  C.A. No. 3:04-1031, 2006 U.S. Dist. LEXIS 28813, at *36 (M.D. Tenn. May 4, 2006).  The supervisors, however, testified that they had never discussed the age of any of the candidates.  <u>Id.</u> at *36-*37. The court found that the plaintiff had interpreted these statements to mean that the plaintiff "was too old for a new job," and that her subjective interpretation was insufficient to defeat summary judgment.  <u>Id.</u> at *37.

## CONCLUSION

For the reasons set forth in the brief above, Defendant BE&K Engineering Company respectfully requests that Plaintiff EEOC's Complaint be dismissed in its entirety.

Respectfully submitted,

/s/ Margaret M. DiBianca
Teresa A. Cheek (Bar I.D. 2657)
Margaret M. DiBianca (Bar I.D. 4539)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6676; 571-5008
Facsimile: (302) 576-3286; 576-3476
Email: tcheek@ycst.com; mdibianca@ycst.com
Attorneys for Defendant

DATE:  October 10, 2006

IN THE UNITED STATES DISTRICT COURT IN
AND FOR THE DISTRICT OF DELAWARE

EQUAL EMPLOYMENT                )
OPPORTUNITY COMMISSION,         )
                                )
                    Plaintiff   )    C.A. No. 05-697-KAJ
          v.                    )
                                )
BE&K ENGINEERING COMPANY        )
(subsidiary of BE&K, Inc.),     )
                    Defendant   )

## CERTIFICATE OF SERVICE

I, Margaret M. DiBianca, Esq., hereby certify that on Tuesday, October 10, 2006, I electronically filed a true and correct copy of the foregoing **Defendant BE&K Engineering Company's Reply Brief In Support Of Its Motion For Summary Judgment**, with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the counsel of record, and further certify that I caused a copy of such filing to be served by U.S.P.S. First Class Mail on the following counsel of record:

Woody Anglade
U.S. Equal Employment
Opportunity Commission
21 South 5th Street, Suite 400
Philadelphia, PA 19106-2515

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ Margaret M. DiBianca
Teresa A. Cheek (Bar I.D. 2657)
Margaret M. DiBianca (Bar I.D. 4539)
The Brandywine Building, 17th Floor
1000 West Street,
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6676; 571-5008
Facsimile: (302) 576-3286; 576-3476
Email: tcheek@ycst.com; mdibianca@ycst.com
Attorneys for Defendant