**EXHIBIT 5**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BE&K ENGINEERING COMPANY, (Subsidiary of BE&K, Inc.)<br><br>Defendant. | ) | CIVIL ACTION NO. 05-697 (KAH) |

**SUPPLEMENTAL DECLARATION OF NARAYAN SWAMY**

I, Narayan Swamy, do hereby depose and state as follows:

1. I provided the letter dated June 27, 2006, attached as Exhibit 1, to Equal Employment Opportunity Commission Trial Attorney Woody Anglade in late June 2006.

2. Mr. Anglade recently contacted me and asked me to submit this Supplemental Declaration concerning my letter.

3. I affirm that the text of my June 27, 2006 letter is based on my own personal knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 10/18/06

NARAYAN SWAMY

Subscribed and sworn before me
this 18 day of October 2006

Notary Public

My Commission expires:

Charles J. San Germano
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 1/15/2008

# EXHIBIT 1

Narayan Swamy
7 Tally Road
Hamilton, NJ 08619
6/27/2006

**To whom it may concern**

I joined BE&K in their Newark, Delaware office in October 1994 worked as a Senior Process Engineer. My official title was "Design Specialist". I left BE&K in September 1996 to join Fluor Daniel at their Marlton, NJ office since it was closer to my home. I had very good performance reviews during this period and the Process Manager from DuPont, with whom I worked on the PTFE project during this time, sent an e- mail statement at the time of my departure, praising my technical and process knowledge.

When the Fluor Daniel office in New Jersaey closed in 2000, I rejoined BE&K in their Newark, Delaware office in March 2000 and woked as a Senior Process Engineer. In May 2002, I was told by Mr. Howe, the Process Engineering Manager that my job was being terminated effective immediately. During this period, I had good reviews which pointed out my superior technical knowledge and competence. I was also complemented by the Project Manager for my performance. When I asked Mr. Howe the reason for my termination, I was told that there were too many senior Process Engineers and there was not enough work for them. I was 61 ½ years old at the time of my termination. At the time of my termination, I was working on the design of relief valves for some DuPont projects.

Soon after my termination, BE&K employed 2 or three junior process engineers. I believe that my termination was related to my age. I also believe that this decision was made by the Office Manager and Mr. Howe simply carried out this decision.

Narayan Swamy
(Narayan Swamy)

B 285

EEOC 0000000567

# EXHIBIT 6

**WOODY ANGLADE - Activity in Case 1:05-cv-00697-KAJ Equal Employment Opportunity Commission v. BE&K Engineering Company "Appendix"**

**From:** <ded_nefreply@ded.uscourts.gov>
**To:** <ded_ecf@ded.uscourts.gov>
**Date:** 10/10/2006 5:18 PM
**Subject:** Activity in Case 1:05-cv-00697-KAJ Equal Employment Opportunity Commission v. BE&K Engineering Company "Appendix"

---

*****NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

**U.S. District Court**

**District of Delaware**

Notice of Electronic Filing

The following transaction was received from Anglade, Woody entered on 10/10/2006 at 5:14 PM EDT and filed on 10/10/2006

**Case Name:** Equal Employment Opportunity Commission v. BE&K Engineering Company
**Case Number:** 1:05-cv-697
**Filer:** Equal Employment Opportunity Commission
**Document Number:** 56

**Docket Text:**
APPENDIX re [51] Appendix, *Signed Affidavit of Juan Perez B 286-288* by Equal Employment Opportunity Commission. (Anglade, Woody)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=10/10/2006] [FileNumber=285410-0
] [722891b4079afa894d9b70be40c3eefe0ba75b28fc56b5bfb239c8b2f5c4c67e831
655bfa83cef01dd1c29f8a8cb8beb7e882853dafa9a21b259d3ab64797fc0]]

**1:05-cv-697 Notice will be electronically mailed to:**

Woody Anglade woody.anglade@eeoc.gov

Margaret M. DiBianca mdibianca@ycst.com, bagostini@ycst.com; dcoles@ycst.com; rruggieri@ycst.com; kgeppert@ycst.com; employmentcmecf@ycst.com

Douglas Edward McCann douglas.mccann@usdoj.gov, marie.steel@usdoj.gov; usade.ecf@usdoj.gov

**1:05-cv-697 Notice will be delivered by other means to:**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

v.

BE&K ENGINEERING COMPANY, (Subsidiary of BE&K, Inc.)

Defendant.

CIVIL ACTION NO. 05-697 (SLR)

**AFFADVIT OF JUAN OBED PEREZ**

I, Juan Obed Perez, do hereby depose and state as follows:

1. I am presently employed at Jacobs Engineering Group, Inc. ("Jacobs") as a Lead Process Engineer in Mount Laurel, New Jersey. I started working for Jacobs in August 2006.

2. Previous to working for Jacobs, I worked for Allied Resources Technical Consultants ("Allied") as a Contract Employee from August 2004 to August 2006. Allied had assigned me to work as a Senior Process Engineer at the Delaware City Refinery in Delaware. This Delaware City Refinery used to be owned by Motiva. It was then purchased by Premcor and is now owned by Valero. Many industry people still refer to it as the Delaware City Refinery. I worked at this Delaware City Refinery (Valero) during my entire tenure with Allied.

3. Prior to being employed by Allied, I was employed by BE&K Engineering Company in Newark, Delaware ("BE&K") as a Senior Process Engineer from approximately February 2000 to November 2003. This was the second time I began working for BE&K. On or about November 21, 2003, my supervisor Pete Howe told me that I was laid off because of lack of work.

4. While working for BE&K, I worked on a number of projects. One of the projects I worked on was the Motiva CCR Vent Scrubber project in 2002. The work was done at the Motiva Delaware City Refinery in Delaware. This is the same refinery where I performed work

B 286

work for Valero as an Allied Contract Employee from approximately August 2004 to August 2006. I was the Lead Process Engineer for BE&K on the 2002 CCR Vent Scrubber.

5. This was BE&K's first contract with Motiva. I helped BE&K secure this contract as a result of the contacts I made at Motiva when I had previously worked there earlier in my career.

6. I went over the budget hours for the 2002 Motiva project because I was not consulted on the number of hours needed to complete the work, which is typically done at BE&K. Further, BE&K under budgeted the hours for that project because this was their first contract with Motiva. BE&K wanted to ensure that they got repeat business from the client.

7. No one from Motiva ever told me that they were dissatisfied with my performance on the Motiva 2002 project. Again, I started working at the Delaware City Refinery (Valero) as a Contract Employee in August 2004. This is the same Motiva Refinery that I have mentioned throughout my affidavit. Many of the Motiva people that I worked with in 2002 as an employee for BE&K still worked for that Refinery during my tenure as a Contract Employee for Allied. In fact, these same people gave Jacobs Engineering a positive reference about me which ultimately led to my successful hire with Jacobs.

8. As a BE&K employee, I also worked on a project for Tosco in 2003. I performed the work at the Tosco (Conoco Phillips) Refinery in Linden, New Jersey. Conoco Phillips is now the owner of that Refinery. Many industry officials still refer to the Conoco Phillips Refinery as Tosco. Once the project was over, I returned to BE&K's office in Newark, Delaware for my next assignment in August 2003.

9. At no point upon my return to the office after the Tosco project ended to the time that I was terminated on November 21, 2003, did anyone from either BE&K, including Deke Lincoln and Howe, or Tosco, including Kevin Morris or Mike Berylant, told me that they were dissatisfied with my performance on that project.

10. Tosco also gave my present employer Jacobs a positive reference about my work. In fact, I am presently assigned to a job at the Tosco (Conoco Phillips) refinery in Linden, New Jersey as a Process Lead Engineer.

11. After I returned to the BE&K Newark, Delaware office once the Tosco project ended in August 2003, BE&K Process Department Manager Pete Howe told me that I would be working on the Motiva Flare Network Modeling project. The purpose of this project was to ensure that flare system at the Motiva Delaware City refinery in Delaware City, Delaware was capable of handling the current and future pressure relief loads in the refinery. I was qualified to do that work and had done it previously in my career. Howe actually handed me a large binder of materials to help assist me with the project. However, I never heard from Howe again about the project and did no work for it.

12. As a result of my education, experience and skill, I could do any of the tasks performed by the other BE&K Process Engineers in the Process Department. This includes relief device and process hazard review work, all of which I had done before while employed by BE&K.

13. I recall also working on a Dupont Relief Device project in 2002 for less than a year. The Dupont client liason was Dan Dayton. I do not recall anyone ever telling me that Dayton wanted me removed from that project for alleged poor performance.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 9/25/2006

JUAN OBED PEREZ

Subscribed and sworn before me this 25th day of September 2006

Notary Public

My Commission expires:

LISETTE MORGAN
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires May 10, 2010

B 288

# EXHIBIT 7

relationships with his family and mine.

So again, I don't want to give the impression that because they know me, you know, in general they are going to give the project.

Q. But it helps.

A. But it helps a lot because of my experience with them and my performance with them. So it happens that they allow BE&K to be in the project. BE&K wanted this project very, very much because was going to be the first one, the very first one, and they wanted to prove them self for future, future projects.

And for this particular project, being a lump sum, meaning that BE&K was going to do it for a set cost, set amount of hours, they bid on it. And the way the whole estimate that was done in terms of the man-hours required was not done as the regular way. Somebody in management, could be the project manager, with maybe other experienced people, they came up with the amount of engineering hours.

Q. When you say project manager, you mean at BE&K or Bill Bell?

A. BE&K. Mr. Tony Sinibaldi was in charge of that, that project. He was a manager.

Q. Okay.



A. So they did the negotiations with B and -- with Motiva. We were told, and I'm not the only person, there were other people, that they bid, tried to bid the lowest and they did the one below what normally they had done the project to get in. They thought that, and the philosophy is that then by doing other projects they would recover.

None of the disciplines that got involved with that project as far as mine and as far as the project engineer that was handling the project, they told us, "You're going to work in this project, this is the amount of hours that are allocated." We didn't have any, anything to say about the hours. And I was not the only that was kind of complaining about what it has been done, not what BE&K did in a way, but we know BE&K bid it pretty low.

Being that the case, then we worked with what we were given. And that makes it very difficult, because at the same time they said these are the strict hours. You got to go by that, or then BE&K has to absorb the extra hours that we may go over.

Q. Now, let's look -- just give me one second here. Let's look at what Pete Howell said about that, and let's see if you think that what he said was



A. It was on per diem, yes.

Q. When did you stop working on site at Tosco?

A. Just likely before -- well, maybe around May. Right now that's what I recall, May.

Q. Okay.

A. May 2003.

Q. Okay. And then at that point did you come back to the Newark facility?

A. Correct.

Q. Did you do more follow-up work for Tosco from Newark?

A. Yeah, everything, I was not sent to anyplace after the Tosco job.

Q. And why did you leave the Tosco project?

A. It was completed.

Q. Was it finished early?

A. It was pretty much open. I was basically doing two functions, and one of them was technical support. And that one depended on when they were going to be able to find somebody for that job position.

Q. An in-house person you mean?

A. Yes, to be hired directly for Tosco.

Q. Did they find someone?

A. Yes, they did.

# EXHIBIT 8

Q. Typically, when you were a lead process engineer and a budget was being done for a project, would you be consulted on that project as far as how many hours you think you need to get it completed?

A. Sometimes, yes, sometimes no.

Q. Were you consulted the majority of the time?

A. In terms of the lead process engineers are often asked to develop the work hour estimates and/or to review and approve the work hour estimate.

Q. So they're often asked to do that?

A. Yes.

Q. I just want to show you one -- another exhibit. This is going to be marked as Trexler 3. It's Bates stamped D3284 through D3288. Please review these set of documents and let me know when you're finished. 3?

(Trexler Deposition Exhibit No. 3 was marked for identification.)

BY MR. ANGLADE:

Q. Have you ever seen those pages before?

A. No, I haven't.

Q. Do you understand what any of them mean?

A. I can guess. Basically, I can't say that I have really seen or studied this type of report a lot. So I really don't have familiarity with this document