Slip Copy, 2006 WL 2524249 (N.D.Okla.)
**(Cite as: Slip Copy)**

his age.[FN11] In an ADEA claim, plaintiff must show that she was constructively discharged " because of her age." *Bennett,* 258 F .3d at 1229. There is no evidence to support such a finding in this case and plaintiff may not proceed to a jury on a constructive discharge theory.

> FN11. Plaintiff merely states that Selby was an older worker. Selby was a project manager who was moved into the scheduling department as part of the cross training program initiated by Wiese. Plaintiff admits she does not have any evidence relating to Selby's job performance or that would create an inference that Selby was fired because of his age, other than the fact that Selby was " older."

Plaintiff can not prove a *prima facie* case of employment discrimination, because she did not suffer an adverse employment action. She voluntarily quit her position with no guarantee from Williams that she would be able to find a new job by seeking redeployment. In fact, plaintiff did find a new job within Williams even though the company was downsizing. Although she accepted a position with a lower salary, plaintiff offers no evidence from which the Court could infer the reduced salary was due to plaintiff's age. There is no evidence that the working conditions at Williams were objectively intolerable for older workers, and plaintiff may not seek relief under the ADEA when she elected to leave her job, rather than resolve alleged deficiencies with her job performance. Defendants' motion for summary judgment is granted as to plaintiff's ADEA claim.

### *Gender Discrimination under Title VII-Unequal Pay*

*14 Plaintiff claims that she was paid less than her male co-workers and that Williams failed to promote her because of her gender. Plaintiff asserts that if she produces any evidence that male employees received higher pay than female workers that she is entitled to present her claim for gender

discrimination at trial. *See Miller v. Automobile Club of New Mexico, Inc.,* 420 F.3d 1098, 1115 (10th Cir.2005). Defendants argue that the evidence shows that plaintiff received a salary equivalent, and in some cases, exceeding that of her male counterparts in the independent terminals group. The Court has already held that plaintiff was on notice of her claim well before filing her EEOC charge and may not rely on events before March 28, 2002, essentially barring her claim. However, even if the Court considers acts before March 28, 2002, plaintiff does not have a legitimate claim for gender discrimination under Title VII.

In this type of case, plaintiff can prove a *prima facie* case of discrimination under Title VII by "showing that she occupies a job similar to that of higher paid males." *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1363 (10th Cir.1997) (quoting *Meeks v. Computer Associates International,* 15 F.3d 1013, 1019 (11th Cir.1994)). If plaintiff comes forward with sufficient evidence to prove a *prima facie* case of gender discrimination, the burden shifts to the defendant to state a legitimate, non-discriminatory reason for the disparity in pay. *Id.* If the employer meets this burden, plaintiff must show that the defendant's stated reason is pretextual. *Id.* Plaintiff bears the burden to show that similarly situated male employees received higher pay.

In *Miller,* the case most heavily relied upon by plaintiff to defeat summary judgment, the Tenth Circuit held that the employee did not prove a *prima facie* case of gender discrimination based on unequal pay. 420 F.3d at 1115. The plaintiff in *Miller* alleged that she performed more duties than her male co-workers but received the same pay. The facts showed that the plaintiff worked more hours that male employees but was also compensated at a higher rate. Plaintiff also argued that the person who replaced her was male and that he received a better salary than plaintiff. The court found that the new employee was hired for a newly created position, and focusing on the duties of the two positions, decided that the new employee was not similarly situated. *Id. Miller* shows the fact-intensive analysis required to survive summary judgment when a claimant alleges that she received unequal pay. *See also Sprague,* 129 F.3d at 1363

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                        Page 13

Slip Copy, 2006 WL 2524249 (N.D.Okla.)
**(Cite as: Slip Copy)**

(holding that employee did not prove *prima facie* case of discrimination based on unequal pay, because job duties between employees differed and higher paid workers had more education and experience); *Tidwell v. Fort Howard Corp.*, 989 F.2d 406 (10th Cir.1993) (violation of Equal Pay Act, 29 U.S.C. § 206, did not require finding that employer intentionally discriminated against employees under Title VII because there was no evidence of intent to discriminate based on gender).

**\*15** Based on the evidence in the summary judgment record, plaintiff can not prove a *prima facie* case of gender discrimination based on unequal pay. The evidence submitted by plaintiff shows that employees in her department received a range of salaries, and that plaintiff received pay equal to or greater than some of her male colleagues. As a baseline, the Court will compare plaintiff's salary to other project managers and schedulers in December 2000. On December 12, 2000, plaintiff was receiving $67,906. At the same time, project managers Nelson and Selby were receiving $68,826 and $71,001 respectively. Plaintiff claims she was more qualified and experienced than her coworkers, but fails to cite to evidence that would support this claim. In the scheduling department, where plaintiff was actually working at the time she quit, Potacka was paid $58,968 in December 2000 and Nalley received an annual salary of $54,906.

The initial burden is on plaintiff to come forward with a *prima facie* case, such as to show which other workers were similarly situated to her and to introduce evidence of unequal pay. *Nulf v. International Paper Co.*, 656 F.2d 553, 557 (10th Cir.1981). Plaintiff has failed to do so. The evidence shows that plaintiff received pay equivalent to other project managers and significantly more than other employees in the scheduling department. This evidence does not prove a *prima facie* case for gender discrimination under Title VII and defendants' motion for summary judgment should be granted as to this claim.

### *Retaliation under Title VII and the ADEA*

Plaintiff claims that Willaims blacklisted plaintiff, preventing her from obtaining a desirable job during her period of redeployment, because she complained about management and made allegations that Williams discriminated against her. Defendants argue that plaintiff can not establish a causal connection between any protected behavior and plaintiff's difficulty in finding a new position during redeployment.

It is unlawful for an employer to take any adverse action against an employee for filing a charge or reporting acts of alleged workplace discrimination. 42 U.S.C. § 2000e-3(a). To prove a *prima facie* case of retaliation, plaintiff must show that: (1) she engaged in protected opposition to discrimination; (2) her employer took an adverse employment action against her; and (3) there is a causal connection between the opposition and the adverse action. *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir.2004). The law is clear that reporting workplace discrimination to the EEOC is protected behavior. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir.1999); *McCue v. State of Kansas, Dep't of Human Resources*, 165 F.3d 784, 789 (10th Cir.1999). An employee may establish causation by showing that the adverse employment action occurred soon after the protected activity. *Annett v. University of Kansas*, 371 F.3d 1233, 1239-40 (10th Cir .2004); *Burrus v. United Tel. Co. of Kansas, Inc.*, 683 F.2d 339, 343 (10th Cir.1982). "Unless there is a very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir.2001).

**\*16** The Court has already ruled that plaintiff may not rely on events before March 28, 2002 to support her claim for retaliation, except to provide context for the alleged discriminatory acts after that date. Even if the Court were to consider events before March 28, 2002, there is no evidence that plaintiff complained about discriminatory conduct to management or filed an EEOC charge before she elected to seek redeployment on December 21, 2001. Plaintiff argues that Williams' failure to offer her a suitable position during her redeployment period constitutes retaliation for complaining to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2524249 (N.D.Okla.)
**(Cite as: Slip Copy)**

management. It is true that plaintiff complained about her dissatisfaction with her supervisors and her cross-training rotation in the scheduling department; however, it is not clear that she ever made any allegations that her supervisors discriminated against on the basis of age or gender. *Petersen v. Utah Dep't of Corrections,* 301 F.3d 1182, 1188-89 (10th Cir.2002) (employer can not be found liable for retaliation unless plaintiff shows that employer actually knew plaintiff was engaging in opposition to an unlawful practice under Title VII); *Williams v. Rice,* 983 F.2d 177, 181 (10th Cir.1993) (plaintiff must introduce evidence showing that employer knew of plaintiff's EEOC charge in order to prove *prima facie* case for retaliation).

Plaintiff has not presented any evidence that she engaged in protected opposition, such as complaints about unlawful behavior under Title VII, [FN12] or any evidence to substantiate her theory that she was blacklisted. In order to prevail based on events after March 28, 2002, plaintiff would have to produce evidence showing not only that the independent terminals group knew about her complaints, but essentially that the entire company was on notice that plaintiff had complained about gender and age discrimination. The only adverse employment action that would sustain a claim after March 28, 2002 is a failure to rehire plaintiff during redeployment. Plaintiff makes blanket allegations that she was blacklisted, but she may not rely on the unsubstantiated allegations of her complaint to survive summary judgment. Fed.R.Civ.P. 56(e); *Salehpoor v. Shahinpoor,* 358 F.3d 782, 786 (10th Cir.2004). Plaintiff has not shown that defendants were aware of her complaints, if she made any, or a causal connection between her complaints and defendants' failure to offer a satisfactory position during redeployment. Plaintiff may not proceed to a jury on her claim for retaliation, and defendants' motion for summary judgment should be granted as to this claim.

> FN12. Plaintiff notes that she informed Wiese that her supervisor, Games, came around plaintiff's desk and sat on her lap. Although plaintiff contacted the human

resources department, Wiese asked plaintiff and Games to informally resolve the matter, which they did. Plaintiff never filed a formal human resources complaint.

### Wrongful Discharge in Violation of Public Policy

Defendants claim that plaintiff's common law claim for wrongful discharge is barred because plaintiff has an adequate federal remedy. In *Clinton v. State ex rel. Logan County Election Bd.,* 29 P.3d 543 (Okla.2001), the Oklahoma Supreme Court held that "the existence of federal statutory remedy or a state statutory remedy that is sufficient to protect the identified Oklahoma public policy goal precludes the *Burk* tort." *Id.* at 546. This Court has interpreted *Clinton* to preclude a *Burk* claim when plaintiff also alleges claims under Title VII. *Bolin v. Oklahoma Conference of the United Methodist Church,* 397 F.Supp.2d 1293, 1300 (N.D.Okla.2005).

**\*17** However, the Oklahoma Supreme Court's recent decision in *Saint v. Data Exchange,* 2006 WL1891747 (Okla.2006), allows a plaintiff to pursue a *Burk* claim and an ADEA claim.[FN13] In response to a certified question from the Northern District of Oklahoma, the Oklahoma Supreme Court held that denying age discrimination claimants a common law remedy for wrongful discharge would violate Art. 5, § 46 of the Oklahoma Constitution. *Id.* at 2. The court relied on *Tate v. Browning-Ferris, Inc.,* 833 P.2d 1218 (Okla.1992), which held that denying racial discrimination victims a common law remedy would allow victims of disability discrimination a "more generous remedy." *Id.* The Oklahoma Constitution required the court to treat all employment discrimination victims as part of single class. The same rule applied to victims of age discrimination, who would be denied the more extensive common law remedies available to victims of disability discrimination. Plaintiff was allowed to bring a *Burk* claim for wrongful discharge alleging age discrimination.

> FN13. The defendant, Data Exchange, Inc., has filed a motion for rehearing. The Oklahoma Supreme Court's opinion will

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 15

Slip Copy, 2006 WL 2524249 (N.D.Okla.)
**(Cite as: Slip Copy)**

become binding precedent only if the court denies the motion for rehearing.

Based on *Saint,* plaintiff's claim for wrongful discharge under Oklahoma law is not precluded; however, plaintiff must still prove that she was actually or constructively discharged. There is no evidence that plaintiff was terminated from her position, because she elected to seek redeployment rather than continue as a project manager. In *Collier v. Insignia Financial Group,* 981 P.2d 321 (Okla.1999), the Oklahoma Supreme Court created the following test for constructive discharge in a *Burk* claim:

The test requires the trial court to inquire (1) whether the employer either knew or should have known of the "intolerable" work conditions and (2) if the permitted conditions were so intolerable that a reasonable person subject to them would resign. This imposes upon the trial court the obligation to survey the totality of the circumstances which allegedly prompted the constructive discharge, including (but not limited to) the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." If the employer's behavior is so objectively offensive as to alter the conditions of the plaintiff's employment (causing the employee to resign), a retaliatory constructive discharge can be said to have occurred....

*Id.* at 324. Oklahoma appellate courts have affirmed that *Burk* protects only those employees who have been discharged in violation of public policy. *McCrady v. Oklahoma Dep't of Public Safety,* 112 P.3d 473, 476 (Okla.2005); *Barker v. State Ins. Fund,* 40 P.3d 463, 467-68 (Okla.2001); *Mason v. State ex rel. Bd. of Regents of University of Oklahoma;* 23 P.3d 964, 968 (Okla.Civ .App.2000).

Plaintiff was not constructively discharged because of discrimination based on her age and gender. The evidence shows that plaintiff disagreed with an employment evaluation and refused to participate in a PIP to remedy areas of deficiency pointed out by her supervisors. However, there is no evidence in the summary judgment record that would support a

finding that the workplace was objectively intolerable to a reasonable person.[FN14] Plaintiff points out that Selby, an older male worker, was fired because of his age, but there is no evidence to support an inference that discrimination played a part in Selby's dismissal. Plaintiff's allegations of unequal pay are meritless, and also do not support an inference of workplace discrimination. The timing of plaintiff's decision to seek redeployment strongly suggests that plaintiff's unhappiness with criticism of her interpersonal skills was the motivating factor for her departure from the independent terminals group. This does not mean that a reasonable person would have found the workplace to be intolerable because of age or gender discrimination. No reasonable jury could conclude that plaintiff was discharged or constructively discharged due to discriminatory behavior in violation of public policy and defendants' motion for summary judgment is granted on this claim.

> FN14. Plaintiff complains that sexually explicit jokes and remarks were tolerated in the workplace, and that she informed her superiors that this behavior made her uncomfortable. However, she does not cite this as her basis for quitting the independent terminals group.

### *Intentional Infliction of Emotional Distress*

**\*18** Defendant argues that plaintiff's claim for intentional infliction of emotional distress is barred by the statute of limitations and the facts she has discovered do not rise to the level necessary to proceed to a jury under Oklahoma law. Plaintiff failed to respond to defendants' arguments on this issue. Plaintiff filed her lawsuit in state court on March 19, 2004, but most of the alleged acts of discrimination and harassment occurred before December 2001. The statute of limitations for intentional infliction of emotional distress claims is two years. Okla. Stat. tit. 12, § 95(3); *Green v. Johnson,* 977 F.2d 1383, 1388 (10th Cir.1992); *Williams v. Lee Way Motor Freight, Inc.,* 688 P.2d 1294, 1297 (Okla.1984). Therefore, plaintiff may rely only on events occurring after March 19, 2002

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2524249 (N.D.Okla.)
**(Cite as: Slip Copy)**

to show intentional infliction of emotional distress.

Oklahoma courts have recognized a cause of action for intentional infliction of emotional distress, also known as the tort of outrage. *See, e.g., Gaylord Entertainment Co. v. Thompson,* 958 P.2d 128, 149 (Okla.1998). The action is governed by the narrow standards laid out in the Restatement Second of Torts, § 46. *Id.* In *Breeden v. League Services Corp.,* 575 P.2d 1374 (Okla.1978), the Oklahoma Supreme Court explained,

Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arounse his resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*Id.* at 1376.

A plaintiff alleging intentional infliction of emotional distress must establish the following elements: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the emotional distress was severe. *Trentadue v. United States,* 397 F.3d 840, 856 (10th Cir.2005) (applying Oklahoma law); *Computer Publications, Inc. v. Welton,* 49 P.3d 732, 735 (Okla.2002). Under Oklahoma law, the trial court must assume a " gatekeeper role" and make an initial determination that the defendant's conduct "may be reasonably regarded as sufficiently extreme and outrageous to meet the Restatement § 46 standards." *Trentadue,* 397 F.3d at 856 n. 7. If reasonable persons could reach differing conclusions in the assessment of the disputed facts, the court should submit the claim to the jury to determine whether the defendant's conduct could result in liability. *Id.* The court is to make a similar threshold determination with regard to the fourth prong, the presence of severe emotional distress. *Id.*

*19 Based on the evidence presented by defendants, it is clear that plaintiff has no evidence that would support a claim for intentional infliction of emotional distress. The summary judgment record does not show that defendants engaged in extreme or outrageous behavior, or that plaintiff suffered severe emotional distress. Case law sets a high standard for finding that the workplace is so severely contaminated with hostility that a defendant will be found liable for engaging in extreme and outrageous behavior. *Merrick v. Northern Natural Gas Co.,* 911 F.2d 426, 432-33 (10th Cir.1990) ( "Insubordination, yelling, hostile reactions and the hurt feelings naturally accompanying such conduct do not give rise to a cause for intentional infliction of emotional distress. We hold that Roberts and Merrick were involved in an ordinary employer-employee conflict"); *Anderson v. Oklahoma Temp. Serv., Inc.,* 925 P.2d 574 (Okla.1996) (sexually explicit comments at work were not extreme and outrageous because they were tolerated by plaintiff and other employees within the office setting); *Eddy v. Brown,* 715 P.2d 74 (Okla.1986) (repeated insulting actions by other employees and supervisors that caused emotional harm were not so severe or pervasive in the setting in which they occurred to justify submitting claim to jury). Plaintiff relies on a pattern or practice she claims evidences sex and age discrimination, but there is no indication that this constitutes extreme or outrageous behavior. Plaintiff's employer was also entitled to honestly assess her work performance and her interpersonal skills without incurring liability for emotional distress. Her claim that she was subjected to cross-training because of her age and gender do not create an inference that her employer intended to inflict emotional harm. The record is completely lacking in evidence that plaintiff suffered severe emotional harm because of any actions by her employer. Therefore, defendants' motion for summary judgment should be granted as to plaintiff's claim for intentional infliction of emotional distress.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment and Brief in Support (Dkt.# 59) is **granted;** Defendants' Motion to Strike Affidavit of Vonna Seeber (Dkt.# 86) is **denied;** Plaintiff's Motion to Strike (Dkt.# 89) and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                          Page 17

Slip Copy, 2006 WL 2524249 (N.D.Okla.)
**(Cite as: Slip Copy)**

Defendants' Motion in Limine to Exclude
Testimony and Evidence by Plaintiff's Expert
(Dkt.# 82) are **deemed moot.**

N.D.Okla.,2006.
Seeber v. Williams Companies, Inc.
Slip Copy, 2006 WL 2524249 (N.D.Okla.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 2915159 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Response to Defendants'
Motion in Limine (Oct. 3, 2005) Original Image of
this Document (PDF)
• 2005 WL 2915158 (Trial Motion, Memorandum
and Affidavit) Defendants' Reply to Plaintiff's
Response to Motion for Summary Judgment (Sep.
23, 2005) Original Image of this Document (PDF)
• 2005 WL 2915157 (Trial Motion, Memorandum
and Affidavit) Defendants' Motion in Limine to
Exclude Testimony and Evidence by Plaintiff's
Expert (Sep. 13, 2005) Original Image of this
Document (PDF)
• 2005 WL 3672200 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Response to Defendants'
Motion for Summary Judgment (Sep. 6, 2005)
Original Image of this Document (PDF)
• 2005 WL 2915156 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Response to Defendants'
Motion for Summary Judgment (Sep. 2, 2005)
Original Image of this Document (PDF)
• 2005 WL 2414615 (Trial Motion, Memorandum
and Affidavit) Defendant's Motion for Summary
Judgment and Brief in Support (Aug. 5, 2005)
Original Image of this Document (PDF)
• 2005 WL 3292085 () The Deposition of Terry J.
Westemeir (Jun. 21, 2005) Original Image of this
Document (PDF)
• 2004 WL 3340319 (Trial Pleading) Answer of
Defendant the Williams Companies, Inc. (Jun. 24,
2004) Original Image of this Document (PDF)
• 2004 WL 3341838 (Trial Pleading) Answer Of
Defendant Magellan Midstream Partners, L.P. (Jun.
24, 2004) Original Image of this Document (PDF)
• 4:04cv00451 (Docket) (Jun. 2, 2004)
• 2004 WL 3584293 () Expert Report of Terry J.
Westemeir, C.P.A. (May 18, 2004) Original Image
of this Document (PDF)
• 2004 WL 3584290 () (Report or Affidavit of

Terry J. Westemeir, C.P.A.) (May 17, 2004)
Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## Westlaw.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2006 WL 2805674 (D.Kan.)
**(Cite as: --- F.Supp.2d ----)**

Page 1

**H**
Briefs and Other Related Documents
Wilkins v. Packerware Corp.D.Kan.,2006.Only the
Westlaw citation is currently available.
United States District Court,D. Kansas.
Jackie R. WILKINS, Plaintiff,
v.
PACKERWARE CORPORATION, Defendant.
**No. 04-4024-KGS.**

Sept. 29, 2006.

David O. Alegria, McCullough, Wareheim &
Labunker, P.A., Topeka, KS, for Plaintiff.
Jonathan S. Harbuck, The Kullman Firm,
Birmingham, Al, Bradley Rob Finkeldei, Stevens &
Brand, L.L.P., Lawrence, KS, for Defendant.

### *MEMORANDUM AND ORDER*
K. GARY SEBELIUS, Magistrate Judge.
*1 This matter comes before the court on plaintiff's
two post-trial motions: (1) plaintiff's Motion to
Alter, Amend the Judgment, for Judgment
Notwithstanding the Verdict, and/or Motion to
Resubmit the Case to the Jury (Doc. 88); and (2)
plaintiff's Motion for Renewed Judgment as a
Matter of Law or in the Alternative for a New Trial
(Doc. 105). Defendant Packerware filed responses
to plaintiff's motions (Docs. 104 and 106). Plaintiff
did not file a reply to his Motion to Alter, Amend
the Judgment; however, plaintiff did file a Reply
(Doc. 107) to his Motion for New Trial. The court
has reviewed the motions. While plaintiff has
requested oral arguments on these motions, the
court finds oral arguments are not necessary and is
now prepared to rule.

### I. Relevant Factual Background

In this action, plaintiff claims that his termination
from employment with defendant Packerware
Corporation ("Packerware") was in violation the

Family and Medical Leave Act ("FMLA"), 29 U.S
.C. § 2601 *et seq.,* and Kansas common law
prohibiting retaliation for his exercise of protected
rights under the Kansas Workers Compensation
Act, K.S.A. § 44-501 *et seq.* The following facts
were undisputed or, if disputed, are viewed in a
light most favorable to the non-moving party.[FN1]

> FN1. *See Acker v. Burlington N. & Sante
> Fe Ry. Co.,* 388 F.Supp.2d 1299, 1301
> (2005)(citing *Sanjuan v. IBP, Inc.,* 275
> F.3d 1290, 1293 (10th Cir.2002) and *Veile
> v. Martinson,* 258 F.3d 1180, 1188 (10th
> Cir.2001)).

Plaintiff, Jackie Wilkins, was employed as a print
operator in the defendant's printing department from
1989 until his discharge in 2002. At the time of the
incident giving rise to this suit, plaintiff was
working the evening shift. During the entire tenure
of plaintiff's employment, defendant maintained a
written attendance policy outlined in its Employee
Handbook, distributed to all employees. Under the
attendance policy, various unexcused absences are
charged a certain number of points. Successive
point totals within a one-year period can lead to
progressive discipline, and the accumulation of
more than nine points subjects an employee to
discharge. While in defendant's employ, plaintiff
received numerous "write-ups" for accumulated
points. During most of plaintiff's employment,
defendant also maintained a leave of absence
policy, including a policy for leave under the
FMLA. Prior to the incidents that gave rise to the
instant lawsuit, plaintiff took periods of FMLA
leave for his own medical conditions and care for
his ailing wife. During his employment tenure,
plaintiff also availed himself of workers'
compensation benefits, reporting various minor
job-related injuries. Following all such past
instances of leave, plaintiff was returned to his
regular job duties.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----, 2006 WL 2805674 (D.Kan.)
**(Cite as: --- F.Supp.2d ----)**

During his evening shift on March 4, 2002, plaintiff reported that wrist pain from which he suffered for some time had become acute. He believed this was a work-related injury and sought treatment for it that very evening at the Lawrence Memorial Hospital. The following day, plaintiff saw Doctor Fevurly. After examining the plaintiff, Dr. Fevurly prescribed restrictions to his right arm activities and scheduled him for a follow up appointment within two weeks. Plaintiff then met with Ms. Deanna Hemming ("Hemming"), defendant's Benefits Coordinator, who determined that plaintiff's restrictions were not consistent with his regular job duties in the printing department. Hemming offered plaintiff the choice of accepting a light duty position in the Quality Assurance ("QA") department or staying home without pay until he was able to return to his regular job. Plaintiff indicated that he would like to work the light duty shift. All QA work is done during the morning shift, which begins at 7 a.m., when the QA supervisor, Mark Quackenbush ("Quackenbush"), is on duty to oversee the employees.

**\*2** On March 7, 2002, plaintiff called Hemming around 8:00 a.m.-an hour after his starting time-and left a phone message informing her that he was not coming to work. In his message plaintiff indicated that he would begin his work on Monday, March 11, 2002. Plaintiff did not show up for work on March 8, and did not call in. On March 11, plaintiff once again telephoned around 8 a.m. and left Hemming another message stating that he was not coming to work. Plaintiff did not explain the reason behind his absence on any of these occasions.

Plaintiff did report to work on Tuesday, March 12, at 7 a.m. That day plaintiff worked until 12:15 p.m., at which time he clocked out and never returned. At 3:45 p.m. that afternoon plaintiff was scheduled for another doctor's appointment in Shawnee Mission, KS. Defendant does not maintain a written policy regarding the amount of time its employees may take off to attend medical appointments. Defendant specifically informed the plaintiff that he needed to arrive at his doctor's appointment fifteen minutes early to complete the necessary paperwork. Plaintiff used the time between his departure from work and the appointment to eat lunch at his house, shower,

change his clothes and drive to the doctor's office.

Under the defendant's attendance policy, missing a scheduled shift calls for the assessment of one attendance point. Failure to report an absence prior to the beginning of the shift that is missed is assessed a total of three attendance points. Early departure during any shift is assessed one-half attendance point. Accordingly, plaintiff was assessed three attendance points each for the March 7 and March 11 absences and a one-half attendance point for leaving early on March 12. Plaintiff was not assessed any points for his absence on March 8.

On March 13, 2002, the day after his doctor's appointment, defendant suspended the plaintiff until March 15, on which date the plaintiff was terminated. The decision to terminate the plaintiff was made by Mr. Kevin Woods ("Woods"), defendant's Human Resources Director. At the time of his termination, plaintiff had 14.5 attendance points. Accumulation of more than 9 attendance points was grounds for discharge under defendant's policies. On March 19, 2002, the plaintiff participated in a termination review arranged by the defendant and conducted by two of the defendant's managers-David Yates ("Yates") and Ross Freese ("Freese"). Yates and Freese upheld the termination, concluding that the plaintiff was properly assessed points for the days he missed, that the overall circumstances of his termination were fair, and that policy had been followed.

The case was tried to a jury beginning on Monday, November 14, 2005. The trial concluded on the morning of November 18, 2005. That same day, at approximately 2:25 p.m., the jury returned its verdict for defendant on all claims. Upon the verdict being read, neither party made any objection. The court then directed the Clerk of the Court to enter judgment, and dismissed the jury.

**\*3** Later that day, at approximately 3:38 p.m., plaintiff's counsel, David Alegria, e-mailed the court and defense counsel, stating that:
"A review of the jury verdict demonstrates that it is internally inconsistent. Therefore, plaintiff wants to interpose a contemporaneous objection to entry of judgment in this case. Plaintiff believes that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                          Page 3

--- F.Supp.2d ----, 2006 WL 2805674 (D.Kan.)
**(Cite as: --- F.Supp.2d ----)**

Court ought to fashion a remedy to resolve the inconsistencies of the verdict. Thank you. David O. Alegria."

This was the sole content of the e-mail. Plaintiff did not file any type of motion at this time, nor did plaintiff's counsel explain to the court which portion(s) of the jury verdict he believed were " internally inconsistent." At 5:11 p.m., defense counsel replied via e-mail, stating:"Responding to Mr[.] Alegria's challenge to the jury's verdict responses, we are aware of no inconsistencies. Whatever inconsistencies Mr[.] Alegria believes to exist he should be required to spell out. J.S. Harbuck ''

Later that evening, at approximately 5:44 p.m., plaintiff's counsel e-mailed chambers and defense counsel again:"In addition to plaintiff's objection to the jury verdict, plaintiff has filed a motion that briefly and succinctly attempts to set forth the issues identified by plaintiff so far. The motion was filed at 4:56 p.m. today. Thank you. David O. Alegria."

Plaintiff filed his "Motion to Alter, Amend the Judgment, for Judgment Notwithstanding the Verdict and/or Motion to Resubmit the Case to the Jury" (Doc. 88) shortly before close of business on November 18, 2005.

Then, at approximately 6:14 p.m., still on November 18, 2005, plaintiff's counsel e-mailed the court and opposing counsel one last time, stating: "My previous email failed to mention that we believe that the verdict was the result of confusion by the jury since the parties did not dispute Mr. Wilkins' work injury. Thank you. David O. Alegria."

On Monday, November 21, 2005, the Clerk filed a Judgment in Favor of Defendant with Respect to All Claims Filed by Plaintiff (Doc. 103). On December 6, 2005, plaintiff filed a timely Motion for Renewed Judgment as a Matter of Law or in the Alternative for a New Trial (Doc. 105). Defendant Packerware filed responses to plaintiff's motions (Docs. 104 and 106). Plaintiff did not file a reply to his Motion to Alter, Amend the Judgment; however, plaintiff did

file a Reply to his Motion for New Trial (Doc. 107). The court has reviewed the motions and the parties' memoranda and is prepared to rule.

## II. Discussion

### A. Plaintiff's Motion to Alter, Amend the Judgment, for Judgment Notwithstanding the Verdict, and/or Motion to Resubmit the Case to the Jury (Doc. 88).

In his first motion (Doc. 88), plaintiff moved to alter or amend the judgment, for judgment notwithstanding the verdict, and to resubmit the case to the jury. Plaintiff raised three grounds in this motion: (1) that the jury's answer to Question 1 of Section III of the Verdict Form is inconsistent with its answer to Question 4 of Section I; (2) that the jury's answer to Question 2 in Section III of the Verdict Form is inconsistent with its answer to Question 2 of Section I; and (3) that the court incorrectly instructed the jury on the definition of " serious health condition." The court shall analyze each of these arguments in the context of a motion to resubmit to the jury, motion for judgment notwithstanding the verdict, and a motion to alter or amend the judgment, respectively.

### 1. Plaintiff's Motion to Resubmit the Case to the Jury

*4 As an initial matter, the court notes that plaintiff made no motions to resubmit any of the special verdict questions to the jury at the time the verdict was read. Second, the court notes that the jury had been discharged in this matter.[FN2] Finally, Fed.R.Civ.P. 49(a) does not provide for resubmission to the jury.[FN3] Based upon these circumstances, and based on the lack of specific direction in the rule, the court concludes that it lacks authority to resubmit a special verdict at this time.[FN4] Therefore, the court will deny Plaintiff's Motion to Resubmit the Case to the Jury.

FN2. The jury returned its verdict at 2:25

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2006 WL 2805674 (D.Kan.)
(Cite as: --- F.Supp.2d ----)

Page 4

p.m. on November 18, 2005, and was discharged shortly thereafter. *See* (Doc. 94). Plaintiff did not submit his motion to resubmit the case to the jury until 4:56 p.m. on November 18, 2005-nearly two and a half hours later.

FN3. *Johnson v. ABLT Trucking Co,* 412 F.3d 1138, 1141-42 (10th Cir.2005).

FN4. *See Id.*

### 2. Plaintiff's Motion for Judgment Notwithstanding the Verdict

The court notes that plaintiff's Motion for Judgment Notwithstanding the Verdict does not exist in these explicit terms in the federal courts. However, Fed.R.Civ.P. 50(b) provides for renewal of motion for judgment after trial.

Fed.R.Civ.P. 50(b) provides:
The court can enter judgment that is inconsistent with the jury's verdict if it determines that the verdict was not supported by the evidence. However, a prerequisite to a motion for judgment after trial is a motion for judgment as a matter of law at the close of the record.[FN5]

FN5. Fed.R.Civ.P. 50(b).

Additionally, a motion for judgment after trial must state the grounds for relief,[FN6] and may include only those grounds raised in the motion for judgment as a matter of law.[FN7]

FN6. *Andreas v. Volkswagen of America, In.c,* 336 F.3d 789, 794 (8th Cir.2003).

FN7. *See Staley v. Bridgestone/Firestone, Inc.,* 106 F.3d 1504, 1508 (10th Cir.1997); *Ross v. Rhodes Furniture, Inc.,* 146 F.3d 1286, 1289-90 (11th Cir.1998)(grounds for Rule 50(b) motion must be clear from the record so that the court can ensure that setting aside the verdict would not be a

surprise to the non-movant); *See also* Advisory Committee Notes on Fed.R.Civ.P. 50(a)("The second sentence of paragraph (a)(2) does impose a requirement that the moving party articulate the basis on which a judgment as a matter of law might be rendered."); *Freund v. Nycomed Amersham,* 347 F.3d 752, 761 (9th Cir.2003).

While plaintiff titles this motion in part as a " motion for judgment notwithstanding the verdict," plaintiff's three arguments in this motion deal primarily with the verdict form and jury instructions, and not with the evidence presented. The court notes that the standard for a Rule 50 motion is whether or not a verdict is supported by the *evidence* and not whether a verdict form or jury instructions were erroneous or inconsistent. Furthermore, while plaintiff's counsel moved for judgment as a matter of law at trial, that motion did not cite jury verdict form inconsistencies or error in the "serious health condition" instruction. As such, the court finds that plaintiff's motion as it pertains to Rule 50 should be denied as to these issues and finds that plaintiff's motion is more appropriately characterized as a motion to alter or amend the judgment, which the court shall discuss below.

### 3. Plaintiff's Motion to Alter or Amend the Judgment

Plaintiff also has moved to alter or amend the judgment.[FN8] A motion to alter or amend a judgment pursuant to Fed.R.Civ.P. 59(e) may be granted only if the moving party can establish (1) an intervening change in controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice.[FN9] Additionally, such a motion does not permit a losing party to rehash or restate arguments previously addressed or to present new legal theories that could have been raised earlier. [FN10]

FN8. In plaintiff's Motion for Renewed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2006 WL 2805674 (D.Kan.)
(Cite as: --- F.Supp.2d ----)

Page 5

Judgment as a Matter of Law or in the Alternative for New Trial (Doc. 105), plaintiff "incorporates by reference" the arguments about to be discussed pertaining to the verdict form. *See* Doc. 105 at 8. In the interests of judicial efficiency, the court will address plaintiff's arguments both as a motion to alter or amend the judgment or in the alternative motion for new trial.

FN9. *See Brumark Corp. v. Samson Res. Corp.,* 57 F.3d 941, 948 (10th Cir.1995). *See also Campbell v. Meredith Corp.,* 2003 U.S. Dist LEXIS 9409 at *2–*3 (D. Kan. June 3, 2003) (citing *Brumark* ).

FN10. *Brown v. Presbyterian Healthcare Servs.,* 101 F.3d 1324, 1332 (10th Cir.1996).

*5 Upon careful review of plaintiff's motion, it does not appear that plaintiff is contending that there is an intervening change in law or new evidence available. Therefore, the only issue that remains is whether the court must alter or amend the judgment to correct clear error or prevent manifest injustice.[FN11]

FN11. *Brumark,* 57 F.3d at 948.

The jury returned its verdict at 2:25 p.m. on November 18, 2005, and was discharged shortly thereafter.[FN12] Plaintiff failed to object at the time the jury was discharged, and did not file his motion to alter or amend the judgment (Doc. 88) until 4:56 p.m. The fact that plaintiff failed to make any objection prior to discharge of the jury, however, does not constitute a waiver of his right to object. In the Tenth Circuit, a party challenging an alleged inconsistency in a special verdict under Fed.R.Civ.P. 49(a) is not required to object to the inconsistency before the jury is discharged in order to preserve that issue for a subsequent motion before the district court.[FN13] Accordingly, the court will proceed to the determination of whether the jury's findings in the verdict form are clear error or work a manifest injustice.

FN12. *See* Minute Entry (Doc. 94).

FN13. *Heno,* 208 F.3d at 851-52; *Johnson v. ABLT Trucking Co., and Ted Tammen,* 412 F.3d 1138, 1142 (10th Cir.2005)("The members of this panel believe that Rule 49 should be amended ... to require parties to object to an inconsistent special verdict before the jury has been discharged. In this case we adhere, as we must, to circuit precedent.").

When presented with an argument that a special verdict under Fed.R.Civ.P. 49(a) is inconsistent, the court has a duty to evaluate the jury verdict and try to reconcile the answers to avoid retrial.[FN14] The court's duty includes reconciling the jury's answers, rather than looking for inconsistencies, and the jury's responses are to be reconciled not merely one to another, but to the entire case as a whole.[FN15] When considering claims of inconsistency, the court must accept any reasonable view of the case that makes the jury's answers consistent.[FN16]

FN14. *See Harvey By and Through Harvey v. General Motors Corp,* 873 F.2d 1343, 1346 (10th Cir.1989).

FN15. *Id.* at 1347-48.

FN16. *Heno v. Sprint/United Management Co.,* 208 F.3d 847, 851-52 (10th Cir.2000) (citing *Patton v. TIC United Corp.,* 77 F.3d 1235, 1241 (10th Cir.1996)); *Jarvis v. Commercial Union Assur. Cos.,* 823 F.2d 392, 395-96 (10th Cir.1987)(court must harmonize inconsistent verdict and set them aside "only when cacophony reigns").

**a. Whether the jury's answer to Question 1 of Section III of the Verdict Form is inconsistent with its answer to Question 4 of Section I.**

Plaintiff contends that the jury's answer to Question 1 of Section III (the Kansas worker's compensation retaliation claim) of the Verdict Form is irreconcilably inconsistent with its answer to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                          Page 6

--- F.Supp.2d ----, 2006 WL 2805674 (D.Kan.)
**(Cite as: --- F.Supp.2d ----)**

Question 4 of Section I (the FMLA retaliation claim) of the Verdict Form.

Question 1 of Section III (i.e. plaintiff's Kansas worker's compensation retaliation claim) asked the jury:
"Did you find by a preponderance of the evidence that is clear and convincing in nature that: The plaintiff sustained an injury on the job for which he could assert a future claim for worker's compensation benefits?" [FN17]

FN17. *See* Verdict Form (Doc. 102) at 4.

The jury answered, "No," to this question.[FN18]

FN18. *Id.*

Question 4 of Section I (i.e. plaintiff's FMLA retaliation claim) asked:
"Did you find from a preponderance of the evidence that: The plaintiff's absence from work was a substantial or motivating factor that prompted the defendant to discharge the plaintiff?" [FN19]

FN19. *Id.* at 1.

The jury answered, "Yes," to this question.[FN20]

FN20. *Id.*

Plaintiff contends that these answers are irreconcilably inconsistent. Specifically, plaintiff states:
"With respect to Mr. Wilkins' [Kansas worker's compensation] retaliatory discharge claim, since the jury did not find that Mr. Wilkins sustained an injury on the job, it could not have found a causal connection between his exercise of statutory right and his termination [in his FMLA retaliation claim]. " [FN21]

FN21. Plaintiff's Motion to Alter, Amend the Judgement (Doc. 88) at 1.

*6 The court disagrees with plaintiff's argument. First, plaintiff is comparing answers from two separate and distinct causes of action-the FMLA retaliatory discharge claim and the Kansas worker's compensation retaliatory discharge claim. Second, plaintiff contends that "the jury did not find that Mr. Wilkins sustained an injury on the job" for purposes of his Kansas worker's compensation retaliatory discharge claim.[FN22] This is not entirely correct. On the Verdict Form, Question 1 of Section III (i.e. the Kansas worker's compensation retaliation claim), was in fact a two-part question that asked:

FN22. *See* Plaintiff's Motion to Alter, Amend the Judgement, for Judgment Notwithstanding the Verdict and/or Motion to Resubmit the Case to the Jury (Doc. 88) at 1.

"Did you find by a preponderance of the evidence that is clear and convincing in nature that: The plaintiff sustained an injury on the job *for which he could assert a future claim for worker's compensation benefits?* " [FN23]

FN23. Verdict Form (Doc. 102) at 4 (emphasis added).

The court finds that while the jury could have believed that plaintiff sustained an injury, the jury may *not* have found that the plaintiff proved that he sustained an injury on the job *for which he could assert a claim for worker's compensation benefits.*

Moreover, even assuming *arguendo* that Question 1 of the Kansas worker's compensation retaliation claim only asked whether plaintiff sustained an injury on the job, the court does not find that the jury's answer of "No" to this question is irreconcilably inconsistent with its answer to Question 4 of the FMLA retaliation claim in the Verdict Form, as plaintiff contends. Question 4 asked the jury whether:
"The plaintiff's absence from work was a substantial

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2006 WL 2805674 (D.Kan.)
(Cite as: --- F.Supp.2d ----)

or motivating factor that prompted the defendant to discharge the plaintiff?" [FN24]

FN24. *Id.* at 1.

The jury answered, "Yes." Plaintiff contends that if he did not suffer an injury on the job, then the jury could not have answered, "Yes," to this question. The court disagrees. During trial, defendant presented evidence that after plaintiff accepted light duty work consistent with Dr. Fevurly's restrictions, plaintiff failed to show up for that light duty work. Further, defendant presented evidence plaintiff never alerted his supervisors that his absences from the light duty he accepted were due to any type of work injury. Finally, defendant presented evidence that the company assessed plaintiff points for these and prior unexcused absences, in accordance with its company policy, and that plaintiff was terminated after he had accumulated points well in excess of defendant's company policy limits. In other words, defendant presented evidence at trial that the real reason plaintiff was discharged was because he had accumulated excessive unexcused absences in excess of company policy. Under these circumstances, the court finds that the jury could have reasonably believed defendant's witnesses, and found that plaintiff's unexcused and unexplained absences from work were the motivating factor behind defendant's decision to terminate the plaintiff. Therefore, the court finds that the jury's answers to these questions are reasonable under the circumstances, are not inconsistent, are not clear error, and otherwise do not work a manifest injustice.

**b. Whether the jury's answer to Question 2 of Section III of the Verdict Form is inconsistent with its answer to Question 2 of Section I.**

*7 Plaintiff next contends that the jury's answer to Question 2 of Section III of the Verdict Form is irreconcilably inconsistent with its answer to Question 2 of Section I and therefore works a manifest injustice. Question 2 of Section III stated: "Did you find by a preponderance of the evidence

that is clear and convincing in nature that [t]he defendant had knowledge of the plaintiff's injury?" [FN25]

FN25. Jury Verdict Form (Doc. 102) at 4.

The jury answered "Yes" to this question. [FN26] Question 2 of Section I stated:

FN26. *Id.*

"Did you find from a preponderance of the evidence that [t]he plaintiff gave the defendant the proper 'notice' of the need to be absent from work as defined in Jury Instruction No. 16?" [FN27]

FN27. Jury Verdict Form (Doc. 102) at 1.

The jury answered "No" to this question. [FN28] Plaintiff argues that the answers to these two questions are irreconcilably inconsistent. [FN29] The court disagrees.

FN28. *Id.*

FN29. Plaintiff's Motion to Alter, Amend the Judgement (Doc. 88) at 2.

Once again, plaintiff attempts to compare answer from the separate and distinct causes of action. The court fails to find the jury's answers are irreconcilably inconsistent. As to the jury's finding that the defendant "had knowledge of the plaintiff's injury," the court notes that it was essentially undisputed that plaintiff initially notified his supervisor of wrist pain on March 4, 2002. However, what *was* disputed was whether defendant had adequate "notice" under the FMLA that plaintiff's absences on March 7, 8, and 11, after accepting light duty, were a result of a work injury preventing him from performing his job functions.

The court construes plaintiff's argument as attempting to equate "knowledge" of an injury for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2006 WL 2805674 (D.Kan.)
**(Cite as: — F.Supp.2d —-)**

Page 8

purposes of a Kansas worker's compensation retaliation claim with "notice" of the need to be absent from work under the FMLA. This is a flawed argument. The court finds it entirely plausible that while the jury could have found that defendant knew plaintiff sustained *an* injury (i.e. plaintiff's wrist pain that he reported on March 4, 2002), the jury may *not* have found that defendant had adequate "notice" under the FMLA of plaintiff's subsequent need to be absent from light duty work on March 7, 8 and 11.

As already discussed, the court has a duty to reconcile the answers, rather than to look for inconsistencies, and the jury responses are to be reconciled not merely to one another, but to the entire case as a whole.[FN30] Further, when considering claims of inconsistency, the court must accept any reasonable view of the case that makes the jury's answers consistent.[FN31] Therefore, the court finds that the jury's answers are reasonable under the circumstances, are not inconsistent, are not clear error, and do not otherwise work a manifest injustice.

> FN30. *Id.* at 1347-48.

> FN31. *Heno v. Sprint/United Management Co.,* 208 F.3d 847, 851-52 (10th Cir.2000) (citing *Patton v. TIC United Corp.,* 77 F.3d 1235, 1241 (10th Cir.1996)); *Jarvis v. Commercial Union Assur. Cos.,* 823 F.2d 392, 395-96 (10th Cir.1987)(court must harmonize inconsistent verdict and set them aside "only when cacophony reigns").

**c. Whether the court's instruction of "serious health condition" amounts to clear error or manifest injustice.**

In his Motion to Amend or Alter Judgment (Doc. 88), plaintiff contends that the court incorrectly instructed the jury on the definition of "serious health condition." As support for his contention, plaintiff states in his motion that he "incorporates by reference herein, Plaintiff's Motion for Reconsideration filed on November 17, 2005."

[FN32] Plaintiff provides no other basis for his motion as to the instruction of "serious health condition." As already discussed, motions to alter or amend judgement do not permit a losing party to rehash or restate arguments previously addressed or to present new legal theories that could have been raised earlier.[FN33] The court finds that plaintiff is essentially rehashing his previous argument on this issue and, without more, the court cannot say that clear error or manifest injustice exists. Plaintiff's motion on this issue should be denied.

> FN32. Plaintiff's Motion to Alter, Amend the Judgement (Doc. 88) at 2.

> FN33. *Brown v. Presbyterian Healthcare Servs.,* 101 F.3d 1324, 1332 (10th Cir.1996).

**\*8** The ultimate problem with plaintiff's arguments in this motion is that they require the court to do the impossible-"to read the collective mind of the jury and determine why it answered the special verdict form in the way that it did." [FN34] This is something that the court simply cannot do. Therefore, after careful review of the record, the court finds that the jury's answers to the special verdict can be reconciled and further, that there does not appear to be clear error or manifest injustice in the jury's findings.

> FN34. *Heno,* 208 F.3d at 853.

Therefore, plaintiff's Motion to Alter, Amend the Judgment, for Judgment Notwithstanding the Verdict and/or Motion to Resubmit the Case to a Jury (Doc. 88) will be denied.

**B. Plaintiff's Motion for Renewed Judgment as a Matter of Law or in the Alternative for a New Trial (Doc. 105).**

Plaintiff has titled this motion, "Motion for Renewed Judgment as a Matter of Law or in the Alternative for a New Trial." As previously noted, motions for renewed judgment as a matter of law

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----, 2006 WL 2805674 (D.Kan.)
**(Cite as: --- F.Supp.2d ----)**

pursuant to Fed.R.Civ.P. 50 are limited to the issues raised in the pre-verdict motion.[FN35] Upon reviewing plaintiff's current motion, it does not appear that plaintiff is advancing the same arguments or issues previously presented in his motion for judgment as a matter of law at trial. Rather, plaintiff's current arguments appear to be based on alleged procedural deficiencies in the court's Jury Instructions and Verdict Form. The court therefore construes the grounds for plaintiff's current motion as grounds for a Motion for New Trial pursuant to Fed.R.Civ.P. 59, and *not* grounds for a Motion for Renewed Judgment as a Matter of Law after trial pursuant to Fed.R.Civ.P. 50.

> FN35. *See Staley v. Bridgestone/Firestone, Inc.,* 106 F.3d 1504, 1508 (10th Cir.1997); *Ross v. Rhodes Furniture, Inc.,* 146 F.3d 1286, 1289-90 (11th Cir.1998)(grounds for Rule 50(b) motion must be clear from the record so that the court can ensure that setting aside the verdict would not be a surprise to the non-movant); *See also* Advisory Committee Notes on Fed.R.Civ.P. 50(a)("The second sentence of paragraph (a)(2) does impose a requirement that the moving party articulate the basis on which a judgment as a matter of law might be rendered."); *Freund v. Nycomed Amersham,* 347 F.3d 752, 761 (9th Cir.2003).

Fed.R.Civ.P. 59(a) provides that a new trial may be granted on all or part of the issues "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." However, motions for new trial are generally regarded with disfavor and "should only be granted with caution." [FN36]

> FN36. *United Phosphorus, Ltd. v. Midland Fumigant, Inc.,* 21 F.Supp.2d 1247, 1250 (D.Kan.1998)(quoting *United States v. Thornbrugh,* 962 F.2d 1438, 1443 (10th Cir.1992)).

Plaintiff raises several grounds for this motion: (1)

that the court erroneously instructed the jury on the definition of "serious health condition" under the FMLA; [FN37] (2) that the court erroneously instructed the jury on the definition of "notice" under the FMLA; [FN38] (3) that the court's instructions on the elements of the Kansas worker's compensation retaliatory discharge claim were erroneous; [FN39] (4) that the Verdict Form "asked the jury to decide a different case than the case that was tried by plaintiff" on the FMLA retaliation and Kansas worker's compensation retaliatory discharge claims; [FN40] (5) that the jury "was not properly instructed and/or was confused" on the issue of damages; [FN41] and (6) that the court's decision to allow Mr. Yates's testimony improperly invaded the province of the jury. [FN42] The court will now address each of these issues.

> FN37. Plaintiff's Motion for Renewed Judgment as a Matter of Law or in the Alternative for a New Trial (Doc. 105) at 2-5.

> FN38. Plaintiff's Motion for Renewed Judgment as a Matter of Law or in the Alternative for a New Trial (Doc. 105) at 2-5.

> FN39. *Id.* at 5-7.

> FN40. *Id.* at 7-8.

> FN41. *Id.* at 8.

> FN42. *Id.* at 8. In his motion for new trial, plaintiff also incorporated by reference his motion regarding alleged verdict form inconsistencies; however, the court has already addressed those arguments in its ruling on plaintiff's Motion to Alter or Amend the Judgment and will therefore not address them again in this section.

**1. Whether the court erroneously instructed the jury on the definition of "serious health condition" under the FMLA.**

**\*9** In evaluating criticisms of jury instructions, the "

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2006 WL 2805674 (D.Kan.)
(Cite as: --- F.Supp.2d ----)

Page 10

harmless error" analysis applies in civil cases.[FN43] Thus, an alleged faulty jury instruction is harmless error if it does not affect the substantial rights of the parties or does not defeat substantial justice.[FN44] In other words, the error is harmless if it could not have changed the result of the case or affected the essential fairness of the trial.[FN45] Further, instructional errors require reversal "only if the error is determined to have been prejudicial, based upon a review of the record as a whole." [FN46] Conversely, an instructional error will not be discounted as harmless if the court is left with a grave doubt as to whether the error had a substantial influence in the ultimate verdict.[FN47]

FN43. Fed.R.Civ.P. 61.

FN44. *See Lusby. T.G. & Y Stores, Inc. et al,* 796 F.2d 1307, 1310 (10th Cir.1986).

FN45. *Id. See also Connel v. Hallmark Cards, Inc.,* 2002 U.S. Dist. LEXIS 12409 at *3 (D. Kan. June 19, 2002).

FN46. *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.,* 175 F.3d 1221, 1236 (10th Cir.1999).

FN47. *Id.*

With this guidance, the court finds that the serious health condition instruction contained in Jury Instruction No. 16 was, at most, harmless error. As already discussed, an error is harmless if it could not have changed the result of the case or affected the essential fairness of the trial.[FN48] On the Verdict Form for plaintiff's FMLA retaliation claim, the jury not only failed to find a "serious health condition," but also failed to find that plaintiff gave defendant proper "notice" of the need to be absent from work. [FN49] In other words, the jury found that plaintiff failed to prove two elements of his FMLA retaliation claim. Any error on the "serious health condition" instruction did not affect the ultimate outcome of this claim since the jury also failed to find proper "notice," and therefore is harmless error. [FN50]

FN48. *See Lusby. T.G. & Y Stores, Inc. et al,* 796 F.2d 1307, 1310 (10th Cir.1986); *See also Connel v. Hallmark Cards, Inc.,* 2002 U.S. Dist. LEXIS 12409 at *3 (D. Kan. June 19, 2002).

FN49. *See* Jury Verdict (Doc. 102) at 1.

FN50. *See Lusby. T.G. & Y Stores, Inc. et al,* 796 F.2d 1307, 1310 (10th Cir.1986).

Notwithstanding this finding, the court fails to find any error in the "serious health condition" instruction. Under the FMLA, eligible employees may take up to twelve work weeks of leave within a twelve month period in the event that the employee suffers from a "serious health condition" that makes the employee unable to perform the functions of the positions of such employee. [FN51] A "serious health condition" is defined as an "illness, injury, impairment, or physical or mental condition that involves-(A) inpatient care in a hospital, hospice or residential medical care facility; or (B) continuing treatment by a health care provider." [FN52]

FN51. 29 U.S.C. § 2612(a)(1)(D).

FN52. *Id.* § 2611(11).

In accordance with the FMLA, the U.S. Department of Labor has issued regulations that define and govern the rights and responsibilities of the parties. [FN53] The regulations provide that a "serious health condition" entitling an employee FMLA leave means an illness, injury, impairment, or physical or mental condition that involves continuing treatment by a health care provider.[FN54] The regulations further provide that a serious health condition requires continuing treatment when it causes "[a] period of incapacity (i.e. inability to work, attend school or perform other regular activities due to the serious health condition, treatment therefore, or recovery therefrom) of more than three consecutive calendar days[.]" [FN55] Finally, this court has found in *Wessel v. Enersys* that a plaintiff's sole testimony that he was incapacitated for more than three consecutive days alone is not enough to establish that he was suffering from a serious health

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                 Page 11

--- F.Supp.2d ----, 2006 WL 2805674 (D.Kan.)
**(Cite as: --- F.Supp.2d ----)**

condition protected under the FMLA.[FN56]

    FN53. *Id.* § 2654.

    FN54. 29 C.F.R. § 825.114(a)(2).

    FN55. 29 C.F.R. § 825.114(a)(2)(i).

    FN56. 2005 U.S. Dist. LEXIS 3103 *18 (D.Kan. February 17, 2005).

**\*10** With these guidelines in mind, the court's jury instruction on "serious health condition" read:
"The plaintiff must present specific evidence that he suffers from a serious health condition. Plaintiff cannot solely rely on his own assessment of his health. The serious health condition must have resulted in plaintiff having an inability to perform assigned work for a period of more than three consecutive calendar days. The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves either inpatient care in a hospital, hospice, or residential medical facility or continuing treatment by a healthcare provider. Ordinarily, unless complication arise, the common cold, flu, ear aches, upset stomach, minor ulcers, headaches other than migraine, routine dental or orthodontia problems, periodontal disease, etc. are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave." [FN57]

    FN57. Jury Instruction No. 16 (Doc. 101) at 18.

The court arrived at the instruction based on numerous factors, including but not limited to the parties' proposed instructions, guidance from the FMLA statute and its regulations, and the unique circumstances of the instant case. Based on these factors, as well as the arguments advanced during the jury instruction conference, the court sought to incorporate the parties' submissions with relevant case law, as well as the FMLA and regulation definitions of "serious health condition." The court

did just that in its instruction.

Plaintiff contends that this instruction was erroneous and was "contrary to the language of the statute, contrary to the language of case law from the 10th Circuit ... [and] made it impossible for the jury to find that plaintiff was possessed of a serious health condition." [FN58] Plaintiff takes particular issue with the court's decision to instruct that a " serious health condition" must prevent plaintiff from performing "assigned work" rather than "the functions of the employee's own position." [FN59] The court fails to find error. The court finds that " the functions of the employees own position" and " assigned work" are similar, if not synonymous, terms. Moreover, whether the instruction read, "the functions of the employee's own position," or " assigned work," the essence of "serious health condition" under the FMLA is that a plaintiff be unable to perform his current job functions, as evidenced by the FMLA statute stating that a " serious health condition ... makes the employee unable to perform the functions of the position of such employee." [FN60] Therefore, the court finds that the instruction on "serious health condition" is in harmony with the FMLA statutes, regulations, and case law, and is therefore not erroneous.

    FN58. Plaintiff's Motion for Renewed Judgment as a Matter of Law or in the Alternative for a New Trial (Doc. 105) at 3.

    FN59. *Id.* at 3.

    FN60. 29 U.S.C. § 2612(a)(1)(D).

Plaintiff contends the court's instruction on "serious health condition" made it "impossible" for the jury to find that plaintiff was possessed of a serious health condition. Specifically, plaintiff argues that the court's instruction "would allow employers to eviscerate the provisions of the FMLA by denying leave to all employees with serious health conditions by claiming to have sedentary work." [FN61] The court disagrees.

    FN61. Plaintiff's Motion for Renewed

--- F.Supp.2d ----                                                    Page 12

--- F.Supp.2d ----, 2006 WL 2805674 (D.Kan.)
(Cite as: --- F.Supp.2d ----)

Judgment as a Matter of Law or in Alternative for a New Trial (Doc. 105) at 3.

**\*11** In this case, evidence was presented to establish that plaintiff's treating physician released him to return to light duty. It is undisputed that defendant offered plaintiff a *choice* between accepting a light duty position consistent with Dr. Fevurly's restrictions or staying home without pay. Plaintiff accepted the offered work and he admitted he was able to perform the work without difficulty. At no point did the evidence show that defendant unilaterally denied plaintiff FMLA leave by " claiming to have sedentary work." Defendant offered plaintiff a choice, and plaintiff accepted a light duty shift. Further, at no point did the court instruct the jury that an employer could deny an employee FMLA leave by claiming to have sedentary work. Therefore, the court disagrees with plaintiff's contention that the court's instruction made it "impossible" for the jury to find a "serious health condition."

As a result, the court finds that the jury instruction on "serious health condition" was not erroneous and was not error under the facts of this case.

**2. Whether the court erroneously instructed the jury on the definition of "notice" under the FMLA.**

Unless objection to a faulty jury instruction is made before the jury retires, error may not be found later. [FN62] In his Motion for New Trial (Doc. 105), plaintiff raises two issues with regard to notice: (1) that the court failed to instruct the jury on proper notice for unanticipated leave; and (2) that defendant did not dispute that notice was proper in this case.

FN62. Fed.R.Civ.P. 51.

Upon reviewing the record, the court fails to find a proper objection on the record as to the two issues raised by plaintiff. The relevant instruction at issue is Jury Instruction No. 16-the FMLA definitions' instruction. During the jury instruction conference

with the parties, the court specifically asked plaintiff's counsel if he had any objection to Instruction No. 16.[FN63] plaintiff's counsel stated, " No objection to the definitions, Your Honor." [FN64] Upon reviewing the record, the court fails to otherwise find a proper objection on the record as to the instruction on the definition of "notice." Therefore, the court will overrule plaintiff's objections as to this issue.[FN65]

FN63. Partial Transcript of Jury Trial Consisting of Motions and Jury Instruction Conference (Doc. 111) at 45. The court stated, "Let me go to Mr. Alegria first. Let's see if he has any objection to 16." Mr Alegria stated, "No objection to the definitions, Your Honor."

FN64. *Id.*

FN65. *See* Fed.R.Civ.P. 51.

Notwithstanding this ruling, the court fails to find error. Plaintiff contends that the court "incorrectly instructed the jury on the issue of notice." [FN66] Specifically, plaintiff contends that the court *failed* to instruct the jury "that notice within a day or two following the need for leave when the need is not anticipated constitutes proper notice." [FN67]

FN66. Plaintiff's Motion for Renewed Judgment as a Matter of Law or in Alternative for a New Trial (Doc. 105) at 3.

FN67. *Id.*

The court disagrees and finds this argument to be without merit. In the court's Jury Instruction No. 16, the court specifically charged the jury that, "Should the circumstances require leave to begin in less than thirty days, *the [p]laintiff is required to provide such notice as practicable.*" [FN68] This "as practicable" language of Jury Instruction No. 16 is in fact *more* liberal than plaintiff's current contention that "notice within a day or two ... constitutes proper notice." Therefore, the court finds plaintiff's contention that the court failed to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                    Page 13

--- F.Supp.2d ----, 2006 WL 2805674 (D.Kan.)
**(Cite as: --- F.Supp.2d ----)**

instruct the jury on notice for unanticipated leave is without merit.

> FN68. Jury Instruction No. 16 (Doc. 101) at 18-19 (emphasis added).

**\*12** As to plaintiff's second argument with regard to notice-that proper notice was not disputed by defendant-the court again finds the argument to be without merit. Defendant points out, and the court agrees, that notice was in fact highly contested at trial.[FN69] Both Ms. Hemming and plaintiff gave conflicting testimony as to the nature and extent of the voicemail messages plaintiff left with defendant on the days of his absences from light duty work. As a result, the court finds that "notice" under the FMLA was clearly disputed at trial.

> FN69. Defendant's Response in Opposition to Plaintiff's Amended Post-Trial Motions (Doc. 106) at 3. ("The [p]laintiff testified that his telephone messages to Ms. Hemming on March 7 and 11 gave proper notice; [plaintiff] then embellished his testimony by claiming that he called on March 8 and gave proper notice on that date as well. Ms. Hemming denied any notice whatsoever on any dates, and the jury obviously believed her.").

Therefore, upon a review of the record, the court finds that plaintiff failed to raise a proper objection preserving plaintiff's contentions with regard to the " notice" instruction, finds that plaintiff's arguments are otherwise without merit on this issue, and will deny plaintiff's motion on these grounds.

### 3. Whether the court erroneously instructed the jury on the Kansas worker's compensation retaliatory discharge claim.

Plaintiff contends the court erroneously instructed the jury that plaintiff must prove the prima facie elements of the Kansas worker's compensation retaliation claim. Specifically, plaintiff contends defendant "conceded all elements of the prima face

case of retaliation" and "the only issue for resolution by the jury was whether the facts and circumstances of plaintiff's firing amounted to retaliatory discharge." [FN70] In its response, defendant denies that it "conceded" all the elements of the prima facie case and further explains that the only thing defendant "conceded" was "that the timing of the discharge decision standing alone was enough to create a genuine issue of material fact for resolution by the jury." [FN71]

> FN70. Plaintiff's Motion for Renewed Judgment as a Matter of Law or in the Alternative for a New Trial (Doc. 105) at 5.

> FN71. Defendant's Response in Opposition to Plaintiff's Amended Post-Trial Motions (Doc. 106) at 4.

As previously discussed, unless objection to a faulty jury instruction is made before the jury retires, error may not be found later.[FN72]

> FN72. Fed.R.Civ.P. 51.

Upon a review of the record, the court fails to find a proper objection on the record as to these contentions. The court further finds that plaintiff's argument is disingenuous at this stage of the litigation. During the jury instruction conference with the court, held on November 17, 2005, the court provided the parties with the court's proposed instructions, gave counsel ample time to review the court's proposed instructions, and then reconvened with the parties and asked the parties if they had any objections to or additions to the court's proposed instructions.

Specifically, the court reviewed Jury Instruction No. 19 with the parties. Jury Instruction No. 19 contained the prima facie elements for the Kansas worker's compensation retaliation claim.[FN73] The court's instruction stated that the plaintiff must prove each of the elements by a preponderance of the evidence. Furthermore, if plaintiff *failed* to prove any of the elements, then the jury's verdict must be for defendant and the jury should not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2006 WL 2805674 (D.Kan.)
(Cite as: --- F.Supp.2d ----)

proceed further with that claim.[FN74] At no point during the jury instruction conference did plaintiff raise this particular issue-that defendant did not dispute the prima facie elements-with the court. [FN75] Further, in the plaintiff's own proposed jury instructions (Doc. 81), plaintiff provided an instruction which stated in pertinent part:

> FN73. Jury Instruction No. 19 (Doc. 101) at 23-24.

> FN74. *Id.*

> FN75. *See* Partial Transcript of Jury Trial Consisting of Motions and Jury Instruction Conference (Doc. 111) at 65 (November 17, 2005). Upon plaintiff informing the court that he hadn't "articulated [his] objection to 19," the court said, "Oh, okay. Go ahead." Plaintiff then stated, "We object to the entire last paragraph of that instruction." *Id.* Specifically, plaintiff objected to the last sentence on clear and convincing evidence, and made no mention to the court about the elements of the Kansas worker's compensation retaliation claim. *See Id.* at 66-70.

**\*13** "To recover on his claim, plaintiff must prove the following:
1. The plaintiff exercised statutory rights under the Kansas Worker's Compensation Act;
2. The employer had knowledge of the plaintiff's protected activity or injury;
3. The employer terminated the plaintiff's employment; and
4. A causal connection existed between the protected activity or injury and the termination." [FN76]

> FN76. Plaintiff's Proposed Instruction No. 12 (Doc. 81) at 14.

Nowhere in plaintiff's proposed jury instructions did plaintiff provide the court with a proposed instruction that defendant did not dispute the prima

facie elements of the Kansas worker's compensation retaliation claim. These facts, taken as a whole, makes plaintiff's current contention that the elements of the Kansas worker's compensation retaliation claim were "undisputed" or "conceded" particularly disingenuous. During the oral argument of his Rule 50 motion, plaintiff's counsel argued that plaintiff had, through presenting his evidence, " [met] all the of required elements of plaintiff's claims, both of the FMLA claims and the [Kansas worker's compensation] retaliatory discharge claim." [FN77] At no point in the record can the court find plaintiff arguing that elements of entire claims were conceded or undisputed. Therefore, the court finds plaintiff's current contentions without merit, and therefore will deny plaintiff's motion for new trial on these grounds.

> FN77. Partial Transcript of Jury Trial Consisting of Motions and Jury Instruction Conference (Doc. 111) at 2 (November 17, 2005).

**4. Whether the court erroneously asked the jury to decide a different case than the case that was tried by the plaintiff on the FMLA retaliation claim and the Kansas worker's compensation retaliatory discharge claim.**

Plaintiff contends that the court erroneously "asked the jury to decide a different case than the case that was tried by plaintiff." [FN78] Specifically, plaintiff takes issue with the Verdict Form and contends that, "[I]n plaintiff's FMLA claims, defendant only disputed whether plaintiff was possessed of a serious [health] condition. On plaintiff's worker's compensation retaliation claim, defendant did not dispute the four elements of the prima facie claim ." [FN79] Finally, plaintiff states, "As the Court may recall, plaintiff's counsel was shocked and befuddled by the court's decision to require the jury to decide each element [of plaintiff's claims]." [FN80]

> FN78. Plaintiff's Motion for Renewed Judgment as a Matter of Law or in the Alternative for a New Trial (Doc. 105) at 7.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2006 WL 2805674 (D.Kan.)
(Cite as: --- F.Supp.2d ----)

Page 15

FN79. *Id.*

FN80. Plaintiff's Motion for Renewed Judgment as a Matter of Law or in the Alternative for New Trial (Doc. 105) at 7.

In response to plaintiff's contentions, the court is similarly "shocked and befuddled"-as this is the first time that the court has been made aware of a contention that there were undisputed elements in plaintiff's claims. As previously discussed, plaintiff's counsel repeatedly stated during oral argument of plaintiff's Rule 50 motion that plaintiff had "[met] all the of required elements of plaintiff's claims, both of the FMLA claims and the [Kansas worker's compensation] retaliatory discharge claim," [FN81] and that, "[D]uring this trial, plaintiff has more than presented sufficient evidence that meets all of the elements of the ... claims to satisfy the Court that *plaintiff* has sustained the burden of proof." [FN82] At no point in the record can the court find plaintiff arguing that elements of entire claims were conceded or undisputed or that plaintiff's counsel was in fact "shocked and befuddled" by any of the court's rulings. Therefore, the court finds plaintiff's current contentions contrary to the record and without merit.

FN81. Partial Transcript of Jury Trial Consisting of Motions and Jury Instruction Conference (Doc. 111) at 2.

FN82. *Id.* at 3 (emphasis added).

*14 The court provided counsel for plaintiff and defendant with the court's proposed Verdict Form and gave the parties an opportunity to voice any objections. At no point did plaintiff's counsel inform the court that certain elements were undisputed or conceded or that plaintiff's counsel was "shocked and befuddled." In fact, in discussing the Verdict Form, the court specifically asked plaintiff's counsel:
Are any of the questions [contained the Verdict Form] a misstatement of what the law is regarding what the jury should consider, *whether you might want to have it collapsed into maybe one or two questions as opposed to the number we provided*

*here?* [FN83]

FN83. Partial Transcript of Jury Trial Consisting of Verdict Form Conference (Doc. 110) at 3 (November 17, 2005).

Plaintiff's counsel responded:
I don't see any misstatements of the law. It's just the difference between the general verdict form and the one the Court has proposed. [FN84]

FN84. *Id.*

The court hardly finds the above response from plaintiff's counsel to be one of shock or befuddlement. Moreover, the court finds several disputed elements in plaintiff's claims. "Serious health condition" on plaintiff's FMLA retaliation claim was clearly disputed from a review of the record. "Notice" under the FMLA retaliation claim was also disputed, as evidenced from both Ms. Hemming's and plaintiff's conflicting testimony regarding plaintiff's phone messages to defendant regarding his absences from light duty on March 7, 8, and 11. Accordingly, the court finds at least two elements of the FMLA retaliation claim that were disputed at trial. Additionally, the court rejects plaintiff's renewed contention that the prima facie elements of the Kansas worker's compensation retaliation claim were undisputed. As previously discussed, plaintiff never raised this issue to the court, even after the court provided plaintiff with its proposed instructions and Verdict Form. Additionally, plaintiff submitted proposed instructions prior to trial, and included an instruction outlining each element of the Kansas worker's compensation retaliation claim. Finally, plaintiff failed to submit any instruction that the prima facie elements were undisputed. [FN85] These facts lead the court to reject plaintiff's contentions on this issue.

FN85. *See* notes 77-79 and accompanying text. 29

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                Page 16

--- F.Supp.2d ----, 2006 WL 2805674 (D.Kan.)
**(Cite as: — F.Supp.2d —-)**

#### 5. Whether the jury "was not properly instructed and/or was confused" on the issue of damages.

Plaintiff contends that the jury's finding of zero damages on the verdict form was "clearly contrary to the evidence." [FN86] Plaintiff states that "[b]oth parties presented economists," with defendant's expert presenting plaintiff's damages, if any, to be approximately $26,890.00 and plaintiff's expert presenting plaintiff's damages at $170,000.00. [FN87] Therefore, plaintiff reasons, "the only evidence before the jury was either figure or a range between both figures," and the jury's finding of zero damages on the verdict form is clearly contrary to the evidence. [FN88]

> FN86. Plaintiff's Motion for Renewed Judgment as a Matter of Law or in Alternative for New Trial (Doc. 105) at 8.
>
> FN87. *Id.*
>
> FN88. *Id.*

On the Verdict Form provided to the jury, the section on Damages asked, "What amount, if any, do you find will compensate the plaintiff for any damages he sustained as a result of the termination?" [FN89]

> FN89. Jury Verdict Form (Doc. 102) at 6.

**\*15** The court fails to find error with the jury's finding of zero damages. Rather, it appears that the jury was simply following the general instructions of the court. In Jury Instruction No. 21, the court specifically charged the jury, "*If you find in favor of plaintiff on his claims,* you must award him such amounts as you find by a preponderance of the evidence will fairly and justly compensate him for the damages[.]" [FN90] Therefore, in the court's view, because the jury had not found for the plaintiff on any of his claims, the jury simply indicated zero damages as a reflection of their verdict in favor of defendant on all claims.

> FN90. Jury Instruction No. 21 (Doc. 101) at 25 (emphasis added).

As a result, the court fails to find error or confusion in the jury's finding of zero damages on the Verdict Form.

#### 6. Whether the court erred in allowing the testimony of Mr. Yates.

Finally, plaintiff "incorporates by reference herein, plaintiff's arguments regarding the court's ruling allowing the testimony of witness Yates as improper and invading the province of the jury." [FN91] As the court previously outlined in its order on plaintiff's motion in limine (Doc. 79), it is well established that opinion testimony from decisionmakers may be admissible under Fed.R.Evid. 701, even if it bears on the ultimate issue in the case.

> FN91. Plaintiff's Motion for Renewed Judgment as a Matter of Law or in the Alternative for a New Trial (Doc. 105) at 8.

Under Fed.R.Evid. 701, the testimony of a lay witness "in the form of opinions or inferences" is admissible if those opinions or inferences "are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Courts generally hold admissible under Rule 701 evidence in the form of law opinion testimony in discrimination cases when given by a person whose position with the defendant entity provides the opportunity to personally observe and experience the defendant's policies and practices. Thus, "[l]ay opinion testimony may be helpful even if it bears on the ultimate issue in the case." [FN92]

> FN92. Order on plaintiff's Motion in Limine (Doc. 79) at 12 (citing *Brooks v. Barnhart,* 78 Fed. Appx. 52, \*59, 2003 WL 22293796, \*7 (10th Cir.2003)(internal citations omitted)).

Upon a review of the record and Mr. Yates's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                    Page 17

--- F.Supp.2d ----, 2006 WL 2805674 (D.Kan.)
**(Cite as: --- F.Supp.2d ----)**

testimony, the court concludes that his testimony properly falls within the province of Fed.R.Evid. 701, and plaintiff's motion therefore will be denied on this issue.

### III. Conclusion

Upon a thorough review of the record and plaintiff's post-trial motions, the court fails to find sufficient grounds to grant either of plaintiff's motions. Accordingly,

**IT IS THEREFORE ORDERED** that plaintiff's Motion to Alter, Amend the Judgment, for Judgment Notwithstanding the Verdict and/or Motion to Resubmit the Case to the Jury (Doc. 88) is hereby denied.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Renewed Judgment as a Matter of Law or in Alternative for a New Trial (Doc. 105) is hereby denied.

**IT IS SO ORDERED.**

D.Kan.,2006.
Wilkins v. Packerware Corp.
--- F.Supp.2d ----, 2006 WL 2805674 (D.Kan.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1372944 (Trial Transcript) Partial Transcript of Jury Trial Consisting of Plaintiff's Motion for Judgment as A Matter of Law Before Honorable K. Gary Sebelius (2006) Original Image of this Document (PDF)
• 2006 WL 1372945 (Trial Transcript) Partial Transcript of Jury Trial Consisting of Verdict form Conference Before Honorable K. Gary Sebelius (2006) Original Image of this Document (PDF)
• 2006 WL 1372946 (Trial Transcript) Partial Transcript of Jury Trial Consisting of Motions and jury Instruction Conference Before Honorable K. Gary Sebelius (2006) Original Image of this Document (PDF)
• 2005 WL 3622988 (Verdict, Agreement and Settlement) Verdict Form (Nov. 18, 2005) Original Image of this Document (PDF)

• 2005 WL 4050101 (Verdict and Settlement Summary) (Nov. 18, 2005)
• 2005 WL 3623260 (Trial Motion, Memorandum and Affidavit) Defendant Packerware's Motion and Brief Argument in Support of an in Camera Admissibility Hearing (Nov. 8, 2005) Original Image of this Document (PDF)
• 2005 WL 4020529 (Verdict, Agreement and Settlement) Verdict Form (Nov. 4, 2005) Original Image of this Document (PDF)
• 2005 WL 4020376 (Trial Transcript) Transcript of Defendant'S Opening Statement By Mr. Harbuck Before Honorable K. Gary Sebelius (Nov. 2005) Original Image of this Document (PDF)
• 2005 WL 4020346 (Trial Motion, Memorandum and Affidavit) Response in Opposition to Plaintiff's Motion in Limine (Jul. 28, 2005) Original Image of this Document (PDF)
• 2005 WL 4020345 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Plaintiff'S Motion in Limine (Jun. 21, 2005) Original Image of this Document (PDF)
• 2005 WL 4020344 (Trial Motion, Memorandum and Affidavit) Packerware's Reply in Support of Its Motion for Summary Judgment (May 2, 2005) Original Image of this Document (PDF)
• 2005 WL 4020343 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply in Further Support of His Motion for Summary Judgment (Apr. 13, 2005) Original Image of this Document (PDF)
• 2005 WL 4020342 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Apr. 8, 2005) Original Image of this Document (PDF)
• 2005 WL 4020341 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Mar. 14, 2005) Original Image of this Document (PDF)
• 2005 WL 4020340 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Packerware's Motion for Summary Judgment (Feb. 14, 2005) Original Image of this Document (PDF)
• 2004 WL 3807230 (Trial Pleading) Amended Complaint (Aug. 9, 2004) Original Image of this Document (PDF)
• 2004 WL 2078998 (Trial Pleading) Amended Complaint (Aug. 2004) Original Image of this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                      Page 18

--- F.Supp.2d ----, 2006 WL 2805674 (D.Kan.)
**(Cite as: --- F.Supp.2d ----)**


Document (PDF)
• 2004 WL 2078994 (Trial Pleading) Answer of
Defendant (Jun. 11, 2004) Original Image of this
Document (PDF)
• 2004 WL 2078988 (Trial Pleading) Complaint
(Mar. 15, 2004) Original Image of this Document
(PDF)
• 5:04cv04024 (Docket) (Mar. 15, 2004)
• 2004 WL 3807212 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Motion for Renewed
Judgment As A Matter of Law or in the Alternative
for A New Trial. (2004) Original Image of this
Document (PDF)
• 2004 WL 3807213 (Trial Motion, Memorandum
and Affidavit) Defendant's Response in Opposition
to Plaintiff's Amended Post-Trial Motions (2004)
Original Image of this Document (PDF)
• 2004 WL 3807214 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Reply in Further Support
of Pos-Trial Motions (2004) Original Image of this
Document (PDF)
• 2004 WL 3807215 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Memorandum in Support
of Motion for Summary Judgment (2004) Original
Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.