**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : : : : | |
| Plaintiff, | : : | |
| v. | : : | Civil Action No. 05-697-MPT |
| BE&K ENGINEERING COMPANY (subsidiary of BE&K, Inc.), | : : : : | |
| Defendant. | : | |

**MEMORANDUM ORDER**

**1. INTRODUCTION**

This is an employment discrimination case brought by the Equal Employment Opportunity Commission ("EEOC") on behalf of Juan Obed Perez ("Perez"). The EEOC alleges age discrimination pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"). The EEOC claims that Perez was wrongfully discharged by the BE&K Engineering Company ("BE&K") on November 21, 2003. BE&K moves for summary judgment and argues that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. BE&K also moves to strike several pages of EEOC's appendix to its response in opposition to BE&K's motion. This opinion addresses BE&K's motions.

**2. BACKGROUND**

BE&K competes in a service-based industry that supplies contract engineers to

companies unwilling to expand their permanent workforce.[1] BE&K matches an engineer's specific background, area of expertise, prior experience and skill set with project requirements. Economic considerations are a factor in project placement.[2] BE&K hires full-time engineers when it is awarded projects, and releases them, if they are not billable to another project and none are foreseeable. Between projects, BE&K would frequently find temporary work to keep the engineers employed on "general overhead" status for which they were paid their regular salaries even though they were not assigned to long-term projects. BE&K often hired senior engineers for projects. Perez worked for the Process Department at BE&K where seventy-five percent of the engineers were over forty years old. In one instance, the department sought out a college graduate, Chris Guttridge, to fill an position for an entry-level engineer in April 2003. He started work on the Dupont Titanium Technologies ("DTT") project in July 2003.

At the time of his lay-off from BE&K, Perez was fifty-four years old and had worked as a chemical engineer in the chemical and petroleum industries for over thirty years. He worked as a permanent salaried employee, or as a contractor for companies like BE&K both before and after his lay-off. Perez was forty-two years old when initially hired at BE&K in 1993. He worked for nine months, then was laid-off at the end a project. He was rehired by the Process Department at BE&K in March 2000 when he was fifty-one years old. Perez's performance evaluations indicate that he is a

---

[1] BE&K hires salaried engineers for short and long term projects.

[2] Customers request engineers be billed at a rate consistent with their experience based on project needs.

2

technically qualified engineer, but he admits, and his evaluations support that he lacks project management skills.[3] Annual evaluations indicate that his performance declined over the three years prior to his termination. Perez was removed from the DTT project at the request of the client for poor performance in 2002.[4] In July 2003, Perez asked to be removed from a project at the Tosco refinery because of the long commute from Delaware to central New Jersey. The Tosco project concluded at the end of August, and until his last day with BE&K on November 21, 2003, approximately fifty percent of his salary was charged to general overhead. Perez's employee termination record indicates that a reduction in force ("RIF") was the reason for his termination. It also notes that he was eligible to be re-hired.

For projects that require a short-term flexible solution, BE&K formed a subsidiary, AllStates Technical Services Inc. ("AllStates"). AllStates fills temporary spots with hourly employees when the forecasted projects do not require permanent, full-time employees. AllStates serves as a resource for BE&K employees interested in part-time or temporary assignments after being laid off from BE&K. AllState's engineers receive higher salaries, but fewer benefits compared to BE&K employees. Between 2000 and 2003, BE&K experienced a down-turn in business which resulted in a significant reduction in long-term projects that led to a layoff of approximately one-half of its 600 full-time employees. Of the five engineers (Perez was one of the five) laid off in the Process Department, three that re-applied, were re-hired by AllStates. Perez did

---

[3] D.I. 47 at A-24 and A-133.

[4] D.I. 47 at A-331 (Daniel Dayton deposition).

3

not re-apply to AllStates because he thought it was unfair that BE&K let him go.[5] On April 2, 2004, Perez filed a charge of discrimination with the EEOC. The EEOC filed the current action on September 23, 2005.

## 3. LEGAL STANDARD

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[6] The moving party bears the burden of proving that no genuine issue of material fact exists.[7] "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[8]

If the moving party has demonstrated an absence of material fact, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'"[9] The court will "view the underlying facts and all reasonable inferences

---

[5] D.I. 47 at A-142 (Perez states that BE&K forced older workers to work for AllStates and replaced them with younger, less expensive employees. He understands that economic factors influence its decision, but disagrees with the way that BE&K moved employees from one business operation to the other).

[6] Fed. R. Civ. P. 56(c).

[7] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986).

[8] *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

[9] *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).

4

therefrom in the light most favorable to the party opposing the motion."[10] The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.[11] If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.[12]

With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff."[13]

## 4. POSITION OF THE PARTIES

BE&K argues that the EEOC cannot make a *prima facie* case of age discrimination because Perez was not qualified for any positions available at the time of his lay-off and he was not replaced by a younger employee. BE&K contends that it had a legitimate business reason to terminate Perez's employment, and the reason is not a pretext for age discrimination. As a result, it concludes, summary judgment must be

[10] *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995).

[11] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[12] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[13] *Revis v. Slocomb Indus., Inc.*, 814 F. Supp. 1209, 1215 (D. Del. 1993) (quoting *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987)).

5

granted in its favor.

BE&K points out that Perez was not qualified as a senior engineer, because of his below-average performance reviews and the fact that he was removed from the DTT project. Even if he was considered generally qualified, BE&K contends that it did not have a project that fit Perez's qualifications at the time of his lay-off. BE&K states that Perez was laid off because he was an average employee who was non-reimbursable, with no expected projects on the horizon. It suggests that the EEOC has not provided evidence of a specific project for which Perez was qualified at the time of his dismissal and cannot satisfy its *prima facie* burden.

The EEOC responds that if Perez is alleged to be an average engineer, he cannot be considered unqualified because he was told that his lay-off was not due to poor performance. It argues that Perez received a salary increase every year which suggests he did not perform poorly. In addition, the EEOC states that Perez's removal from the DTT project does not support that he was not qualified since it did not result in his termination and he was immediately assigned another position by BE&K. Finally, it contends that Perez was qualified because he was hired by both Motiva and Tosco as a contractor after working for BE&K.

BE&K argues that it had a legitimate and non-discriminatory reason for Perez's termination. It contends that the department's low utilization rate and lack of anticipated projects led to a RIF. It states that Perez was simply terminated for lack of reimbursable work and age was not a factor. It suggests that the EEOC must produce evidence that infers that "*each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment

6

action."[14] BE&K suggests that the ADEA permits an employer to discharge an employee deemed to be poor or marginal when the company faces financial difficulties.[15] It concludes that the EEOC has not offered any evidence to contradict or suggest that its reason is pretextual.

BE&K posits that discrimination was not the cause of Perez's termination because the his supervisor ("Howe") was in the protected class, as were the other two managers who determined his dismissal. According to BE&K, no ageist comments were made to Perez, nor could he recall any specific comments that would imply that discrimination was a factor in his dismissal. It challenges Perez's belief that BE&K hired "young people" for "entry level positions"[16] as a practice to displace older employees. BE&K admits that Perez's boss did hire a recent college graduate, Guttridge, for a position on the DTT project, but reasons that is not evidence of age discrimination. Instead, BE&K contends that it needed to bring costs down and balance the workload on that project, based on the client's requirements.

EEOC responds that several significantly younger similarly-situated process engineers were retained by BE&K, when Perez was laid-off. It contends that it need not prove that Perez was replaced by someone outside of the protected class. It states that each and every engineer in his department is a comparator because he was told by his supervisor that they were all considered for termination at the time. In particular, it argues that three engineers had projects that ended between December 2003 and

[14] *Marione v. Metropolitan Life Ins. Co.*, 188 Fed. Appx. 141, 144 (3d Cir. 2006).

[15] *See Healy v. NY Life Ins. Co.*, 860 F.2d 1209 (3d Cir. 1988).

[16] D.I. 45 at A-139.

7

February 2004, and these engineers were reassigned to new projects, while he was laid-off.

BE&K contends that the EEOC has failed to produce any evidence that it hired an entry-level engineer as pretext for discrimination. It insists that no senior engineers were hired for more than one year prior to Perez's layoff and none were hired for nearly two years thereafter. BE&K contends that its decisions were consistent with its business needs. It reasons that Guttridge did not replace Perez, because Perez was employed at Tosco on a long-term contract at the time. It adds that Guttridge was hired to work on the DTT project, and even if available, Perez could not have been rehired on that project because of his dismissal in 2002.

The EEOC maintains that BE&K's non-discriminatory reasons for Perez's termination are not worthy of belief. It states that there were available projects for Perez at the time of his termination. The EEOC contends that Perez was capable of filling other lower-level positions. It also argues that he should have been retained because he brought in new business for BE&K. The EEOC claims that Guttridge's employment is pretextual and questions why he was hired at a time when BE&K laid off other engineers for lack of work. It contends that there was no need to hire Guttridge for the DTT project because other engineers could have been transferred to that project. The EEOC questions BE&K's motivation when it terminated older employees and argues that the work slow-down was really just pretext to move older engineers off BE&K's employment list and onto AllStates' registry. It contends that in 2003, thirty-three out of thirty-five employees who were terminated from BE&K pursuant to the RIF were over the age of forty. It also argues that in 2004, all eight individuals who were terminated pursuant to

8

the RIF were over forty.

BE&K replies that the EEOC's statistics are conclusory and presented out of context. It contends that the EEOC fails to connect the lay-off of thirty-five employees at BE&K with Perez's termination. In addition, it argues that the EEOC quotes statistics in isolation, and fails to take into account the average age of all engineers at BE&K. It concludes that evidence of alleged employment discrimination cannot be viewed in a vacuum and that the EEOC cannot pick and choose those comparators it contends were treated more favorably.[17]

## 5. DISCUSSION

The EEOC fails to make a *prima facie* case that age discrimination was a factor in Perez's termination because he was not replaced by a younger person, or a person outside of the protected age group. Even if the EEOC proved a *prima facie* case, it presents no evidence that BE&K's legitimate business decisions to terminate workers was pretextual. An age discrimination case cannot succeed unless the employee's age actually played a role in the disparate treatment and had a determinative influence on the outcome.[18]

Under the ADEA, it is unlawful for an employer "to discharge any individual . . . because of such individual's age."[19] To establish a *prima facie* case, the EEOC must prove that Perez: was within the protected age group; was qualified for the position; was discharged or otherwise suffered an adverse employment action; and, in the case of

---

[17] *See Madonna v. Conmend Corp.*, 2005 WL 486609, *9 (E.D. Pa. Mar. 01, 2005).

[18] *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

[19] 29 U.S.C. § 623(a)(1) (1994).

9

demotion or discharge, was replaced by a younger person or by a person outside the protected age group.[20] If the plaintiff is able to establish a *prima facie* case, a presumption of age discrimination arises, which the employer must rebut by providing a legitimate non-discriminatory reason for the adverse employment action.[21] "To defeat a summary judgment motion based on a defendant's proffer of a nondiscriminatory reason, a plaintiff who has made a prima facie showing of discrimination need only point to evidence establishing a reasonable inference that the employer's proffered explanation is unworthy of credence."[22]

Perez was fifty-four years old when he was terminated, and therefore, a member of the protected class and was subject to an adverse employment action. Perez has a degree in chemical engineering and has worked for many years as a senior engineer. His termination document notes that he was available for re-hire at AllStates or when BE&K's needs changed. BE&K claims that Perez was not qualified because of his poor management skills and performance on the DTT project. Poor job performance does not equate to "non-qualified" under a *prima facie* analysis. The question of whether "'an employee possesses a subjective quality, such as leadership or management skill, is better left to' consideration of whether the employer's nondiscriminatory reason for discharge is pretext."[23] Objectively, Perez has the experience and education necessary to qualify as a viable candidate for the positions he held. Thus, his qualifications satisfy

---

[20] 19 *Del. C.* § 711 (2006).

[21] *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995).

[22] *Id.*

[23] *Id.* (quoting *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir.1990)).

10

the second prong of the *prima facie* case.[24]

The EEOC fails to satisfy the fourth prong of the *prima facie* case because it provides no evidence that Perez was replaced by either someone outside the protected group or significantly younger. A *prima facie* case under the *McDonnell Douglas-Burdine* pretext framework is not intended to be onerous.[25] The *prima facie* case merely "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."[26] Courts have determined that where there is a RIF, the fourth factor can "be relaxed in certain circumstances."[27] The EEOC argues that this matter involves a RIF and therefore, all it must show is that several significantly younger similarly-situated process engineers were retained at the time Perez was terminated.[28]

---

[24] *Id.* at 729.

[25] *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[26] *Furnco Construction Co. v. Waters*, 438 U.S. 567, 577 (1978).

[27] *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 356 (3d Cir. 1999). EEOC cites *Pivirotto* and *Maxfield v. Sinclair, Int'l*, 766 F.2d 788 (3d Cir. 1985) for the proposition that it need not show Perez was replaced, only that BE&K failed to terminate younger employees during the RIF. Neither factual circumstances of those cases are on point. *Pivirotto* is a sex discrimination case where the plaintiff's responsibilities were absorbed by another employee, and therefore, the court relaxed the replacement restriction to include situations where firing did not lead to the hiring of a new employee with the same title and responsibility. *Maxfield* is a forced retirement case in which the court affirmed a clear case of age discrimination.

[28] The EEOC contends that in a similar case, *Peterson v. Knight Architects, Engineers*, 1999 WL 1313696, *16 (N.D. Ill. Nov. 4, 1999), a court denied summary judgment where a plaintiff, who was terminated for alleged lack of work, was able to show that there were several younger employees retained by the defendant. In that case, the court used a different standard for establishing a *prima facie* case. Specifically, the wrongful termination required: "(1) he was a member of the ADEA protected class (age 40 or over); (2) he met his employer's legitimate expectations; (3) in spite of his performance, he was discharged; and (4) younger employees were treated more favorably." *Id.* at *11. In addition, the *Peterson* court held that the plaintiff carried his burden *only* when he showed that his employer "treated him less favorably than the substantially younger employees *who absorbed his work* and that these employees were similarly situated to himself." *Id.* at *15 (emphasis added). The plaintiff in *Peterson* offered unrefuted evidence that younger employees carried on his project after he was terminated. The

The analysis is not that simple. "When considering whether the employer gave preferential treatment to younger employees during a RIF, courts must consider the terminated employee's 'fungibility' or usefulness to the employer in comparison to other employees."[29] Out of a department of nineteen engineers,[30] the EEOC lists six employees as younger comparators. None of the comparators listed were on overhead status at the time that Perez was terminated. All were employed at long-term projects that were renewed months after Perez was laid-off. The EEOC suggests that all process engineers are expected to perform the same type of tasks and work on the same projects, regardless of size and complexity and BE&K could have swapped engineers easily from project to project. This argument fails to address the adverse business costs and impact on future projects when senior engineers are placed on jobs that require only entry-level qualifications.

BE&K relies on *Watkins v. Sverdrup Tech., Inc.*[31] to refute that the EEOC has sufficient evidence to prove the alleged discrimination has any connection to its decision to terminate Perez as a result of a RIF. In *Watkins*, an employer discharged eight engineers aged, forty-three to sixty-seven, and replaced them with nine engineers, aged twenty-four to thirty-five with expertise in a different field. The defendant articulated three

---

facts presented here do not support a similar conclusion.

[29] *Id. at* *16.

[30] The Process Department employed nineteen engineers, of which fifteen were in the protected class and four were older than Perez. After the RIF, thirteen engineers remained with one older than Perez.

[31] 153 F.3d 1308 (11th Cir. 1998).

12

reasons to include employees in the RIF.[32] The court concluded that the defendant proffered legitimate, non-discriminatory and undisputed reasons for including the employees in the RIF and that there was insufficient evidence for a reasonable jury to find that the RIF was a pretext for intentional age discrimination. Similarly, BE&K argues that overhead costs, lack of long-term work and poor performance as legitimate factors impacting the decision to terminate Perez.

EEOC contends that BE&K hired Guttridge to replace Perez, but nothing points to a nexus between the two events. In fact, the EEOC offers no evidence to show that Perez was replaced at all. Guttridge was hired as an *entry-level* engineer for a specific long-term client contract. Guttridge started seven months prior to Perez's termination date, while Perez was fully employed on another long-term contact. Perez was terminated only after the contract at Tosco expired and he was on overhead status for three months.

Even if the EEOC could establish a *prima facie* case of discrimination, it has not shown that BE&K's legitimate, nondiscriminatory reasons to terminate Perez are pretextual. To defeat summary judgment "when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or

---

[32] *Watkins*, 153 F.3d at 1317 (The court reasoned that: 1) excessive amounts of overhead time; 2) no long-term projected work; and 3) poor performance were legitimate, non-discriminatory reasons for including employees in a RIF).

13

determinative cause of the employer's action."[33]

BE&K's reasons to lay off Perez are believable and there is no evidence of discriminatory intent or age bias on its part. Perez was hired at fifty-one years old, a fact that supports a lack of age bias by BE&K. Howe, who is also in the protected class, both hired and terminated Perez.[34] Due to customer demands, BE&K maintained experienced engineers on staff. In fact, over seventy-five percent of the Process Department engineers were in the protected class. Between 2000 and 2003 BE&K laid-off over fifty percent of its workforce due to an economic downturn. In 2003, BE&K terminated sixty-four employees, thirty-four were Perez's age or younger. At that time, the Process Department hired a single entry level engineer who could be billed at a rate substantially lower than Perez. It would be unreasonable to conclude that single event constituted a general trend in the department to replace older workers with younger ones.

There were legitimate business reasons to terminate Perez. Perez's evaluations showed that his performance declined and clients complained about his work. Perez was at fifty percent utilization over three months when the Process Department standard was ninety-six percent for full-time engineers. The evidence shows that BE&K experienced a downward shift in the amount of long-term projects under contract. As a result, its need for full-time salaried employees declined, and its reliance on hourly

---

[33] *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995).

[34] The EEOC's case is weakened by the fact that his supervisor is in the protected class. Courts have held that "a plaintiff's ability to raise an inference of discrimination is hampered when the decision maker is a member of the plaintiff's protected class." *Elwell v. PP&L, Inc.*, 47 Fed. Appx. 183, 189 (3d Cir. 2002).

14

workers from AllStates increased.  Despite Perez's feelings to the contrary, there is no justification that the move of engineering support from one company to another was motivated by age bias.  Moreover, employees who were laid-off and reapplied were rehired by AllStates.  Therefore, BE&K has articulated legitimate business reasons to terminate Perez.

The EEOC argues that Guttridge is an appropriate comparator and his retention is a pretext for age discrimination because he was hired directly out of college when he was twenty-three years old.  Guttridge's position, filled seven months prior to Perez's termination, was made at the request of a particular client who wanted a junior, and therefore a less costly, engineer.  The EEOC contends that a single phrase "younger engineer," made by Howe during Guttridge's interview, is sufficient to justify a claim of discrimination.  In the interview, neither Guttridge nor Howe confirmed the term "younger" was used; Howe communicated to Guttridge that he was interested in new graduates for *entry-level* positions.  The EEOC presented no evidence that BE&K or Howe acted improperly, let alone with discriminatory animus.

The EEOC fails to provide evidence that age discrimination was a factor in Perez's termination.  Perez was not replaced by a younger person, or a person outside of the protected age group.  Even if it established a *prima facie* case, it fails to cast doubt upon or show as pretext, BE&K's legitimate, non-discriminatory reasons to terminate Perez.  Therefore, viewing the underlying facts and making all reasonable inferences in favor the EEOC, a reasonable jury could not find that Perez was subject to discrimination because of his age.

15

## 6. CONCLUSION

For the reasons contained herein, BE&K's' motion for summary judgment (D.I. 43) on age discrimination under 19 *Del. C.* § 710 *et seq.* (2006) is GRANTED. BE&K's motion (D.I. 54) to strike portions of EEOC's response to the summary judgment motion is denied as MOOT.

March 5, 2008

U. S. Magistrate Judge Mary Pat Thynge

16